**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA** RECEIVED
**NORTHERN DIVISION**

WHITNEY NATIONAL BANK, )
)                          2007 SEP 11   A 11: 08
Plaintiff,          )
)                          DEBRA P. HACKETT, CLK
)                          U.S. DISTRICT COURT
v.                               )          Case No. 2:07-CV-00415-ID          MIDDLE DISTRICT ALA
)
HIGHWAY SOLUTIONS, LLC, et al., )
)
Defendant.          )

**MOTION FOR SUMMARY JUDGMENT
AS TO DEFENDANT HIGHWAY SOLUTIONS, LLC**

Comes now Whitney National Bank ("Whitney Bank"), pursuant to Rule 56 of the

Federal Rules of Civil Procedure, and moves this Honorable Court for an order granting

summary judgment in its favor and against defendant Highway Solutions, LLC ("Highway

Solutions"). As grounds therefore, Whitney Bank states that there are no genuine issues of

material fact and that it is entitled to judgment as a matter of law. Whitney Bank further relies

upon the affidavit of Louis Dubos which is attached hereto as **Exhibit "A"**[1] (the "Dubos

Affidavit"), the affidavit of Gregory C. Cook which is attached hereto as **Exhibit "B"** (the

"Cook Affidavit"), the affidavit of Dennis R. Bailey which is attached hereto as **Exhibit "C"**

(the "Bailey Affidavit"), and states as follows:

**INTRODUCTION**

This is a simple breach of contract lawsuit in which the facts are undisputed. Highway

Solutions executed credit card agreements, a deposit account agreement and promissory notes in

favor of Whitney Bank. Despite multiple requests, Highway Solutions has failed and/or refused

to fulfill its obligations to Whitney Bank. As a result, Highway Solutions is in default of the

---

[1] All Exhibits attached to this Motion are incorporated herein by reference.

agreements made the subject of this lawsuit. Whitney Bank requests that this Court grant summary judgment in its favor and against Highway Solutions based upon the substantial evidence offered by Whitney Bank and the lack of evidence offered by Highway Solutions.

### STATEMENT OF UNDISPUTED FACTS

1. On January 5, 2005, Highway Solutions executed and delivered to Whitney Bank a Commercial Business Loan Agreement for Term Loans and Lines of Credit (the "Loan Agreement"), for a line of credit of up to $500,000.00 with Whitney Bank. A true and correct copy of the Loan Agreement, as amended, is attached as **Exhibit "1"** to the Dubos Affidavit.

2. On January 5, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $500,000.00 ("Note 81267"). Also on January 5, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 81267") granting Whitney Bank a security interest in, without limitation, all Inventory, Chattel Paper, Accounts and General Intangibles of Highway Solutions, whether owned at the time of execution or thereafter acquired (the "Accounts Receivables Collateral"). True and correct copies of Note 81267, as amended, and Security Agreement 81267 are attached collectively as **Exhibit "2"** to the Dubos Affidavit. Note 81267, as amended, matured on March 1, 2007, pursuant to its terms. As of June 10, 2007, the amount owed pursuant to Note 81267 was

| | |
|---|---|
| Principal: | $891,086.83 |
| Interest: | $25,744.24 |
| TOTAL: | $916,831.07 |
| Per Diem after June 10, 2007: | $204.21 |

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

3.     On January 5, 2005, Michael C. Marcato executed and delivered to Whitney Bank a commercial guaranty (the "Michael Marcato Guaranty"), unconditionally guaranteeing payment to Whitney Bank of all amounts owing by Highway Solutions, whether owed at the time of execution or arising thereafter. A true and correct copy of the Michael Marcato Guaranty is attached as **Exhibit "3"** to the Dubos Affidavit.

4.     On January 5, 2005, Anne S. Marcato (together with Michael C. Marcato, the "Marcatos") executed and delivered to Whitney Bank a commercial guaranty (the "Anne Marcato Guaranty" and together with the Michael Marcato Guaranty, the "Guaranties"), unconditionally guaranteeing payment to Whitney Bank of all amounts owing by Highway Solutions, whether owed at the time of execution or arising thereafter. A true and correct copy of the Anne Marcato Guaranty is attached as **Exhibit "4"** to the Dubos Affidavit.

5.     On January 7, 2005, Highway Solutions executed and delivered to Whitney Bank a depositor account agreement (the "Depositor Agreement") and opened a checking account with Whitney Bank (the "Deposit Account"). A true and correct copy of the Depositor Agreement and statements of the Deposit Account for the year 2007 are attached collectively as **Exhibit "5"** to the Dubos Affidavit. As of June 10, 2007, the Deposit Account was overdrawn in the amount of $149,699.23. Costs of collection, including, without limitation, attorneys' fees continue to accrue.

6.     On January 19, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $22,166.12 ("Note 1848-01"). Also on January 19, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank,

Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-01") granting Whitney Bank a security interest in, without limitation, a 2000 Freightliner FL70, VIN 1FV6HJBA1YHG63600 (the "Freightliner"). True and correct copies of Note 1848-01 and Security Agreement 1848-01 are attached collectively as **Exhibit "6"** to the Dubos Affidavit. Since March 19, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-01 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 1848-01 was

| Principal: | $14,399.55 |
|---|---|
| Interest: | $366.90 |
| Late Fees: | $43.19 |
| TOTAL: | $14,809.64 |

Per Diem after June 10, 2007:    $3.30

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

7.    On January 19, 2005, Highway Solutions executed and delivered to Whitney Bank Visa Credit Card Applications (the "Credit Card Applications") and opened Visa Credit Card accounts with Whitney Bank (the "Credit Card Accounts"). The Credit Card Applications contained continuing guaranties executed by the Marcatos (the "Credit Card Guaranties"), personally guaranteeing payment to Whitney Bank of all amounts owing by Highway Solutions pursuant to the Credit Card Accounts, whether owed at the time of execution or arising thereafter. True and correct copies of the Credit Card Applications and statements of the Credit Card Accounts are attached collectively as **Exhibit "7"** to the Dubos Affidavit. Amounts owed to Whitney Bank by Highway Solutions pursuant to the Credit Card Accounts are past due and

owing.  As of June 10, 2007, the amount owed pursuant to the Credit Card Accounts was

$54,839.61.    Interest, late charges and costs of collection, including, without limitation,

attorneys' fees continue to accrue.

8.    On January 24, 2005, Highway Solutions executed and delivered to Whitney

Bank a promissory note in the original principal amount of $29,995.72 ("Note 1848-02").  Also

on January 24, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank,

Highway Solutions executed and delivered, without limitation, a commercial security agreement

("Security Agreement 1848-02") granting Whitney Bank a security interest in, without

limitation, global positioning survey software and equipment (the "GPS Radios").    True and

correct copies of Note 1848-02 and Security Agreement 1848-02 are attached collectively as

**Exhibit "8"** to the Dubos Affidavit.  Since February 24, 2007, amounts owed to Whitney Bank

by Highway Solutions pursuant to Note 1848-02 are past due and owing.  As of June 10, 2007,

the amount owed pursuant to Note 1848-02 was

| | |
|---|---|
| Principal: | $19,879.59 |
| Interest: | $627.44 |
| Late Fees: | $170.88 |
| TOTAL: | $20,677.91 |

Per Diem Interest after June 10, 2007:        $4.56

Interest, late charges and costs of collection, including, without limitation, attorneys' fees

continue to accrue.

9.    On February 7, 2005, Highway Solutions executed and delivered to Whitney

Bank a promissory note in the original principal amount of $42,949.76 ("Note 1848-03").  Also

on February 7, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank,

Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-03") granting Whitney Bank a security interest in, without limitation, a universal forestry mulcher (the "Mulcher"). True and correct copies of Note 1848-03 and Security Agreement 1848-03 are attached collectively as **Exhibit "9"** to the Dubos Affidavit. Since February 7, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-03 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 1848-03 was

| | |
|---|---|
| Principal: | $27,655.12 |
| Interest: | $780.42 |
| Late Fees: | $166.37 |
| TOTAL: | $28,601.91 |

Per Diem Interest after June 10, 2007:    $6.34

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

10.    On August 22, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $53,089.12 ("Note 1848-04"). Also on August 22, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-04") granting Whitney Bank a security interest in, without limitation, a Trimble GCS900 GPS (the "Trimble GPS"). True and correct copies of Note 1848-04 and Security Agreement 1848-04 are attached collectively as **Exhibit "10"** to the Dubos Affidavit. Since February 22, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note

1848-04 are past due and owing.  As of June 10, 2007, the amount owed pursuant to Note 1848-04 was

| | |
|---|---|
| Principal: | $39,890.65 |
| Interest: | $1,045.10 |
| Late Fees: | $411.10 |
| TOTAL: | $41,346.85 |

Per Diem Interest after June 10, 2007:       $7.38

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

11.    On October 18, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $50,956.82 ("Note 1848-05").  Also on October 18, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-05") granting Whitney Bank a security interest in, without limitation, a GPS machine cab kit (the "First GPS Cab Kit").  True and correct copies of Note 1848-05 and Security Agreement 1848-05 are attached collectively as **Exhibit "11"** to the Dubos Affidavit. Since February 18, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-05 are past due and owing.  As of June 10, 2007, the amount owed pursuant to Note 1848-05 was

| | |
|---|---|
| Principal: | $39,961.37 |
| Interest: | $1,156.95 |
| Late Fees: | $501.07 |
| TOTAL: | $41,619.39 |

Per Diem Interest after June 10, 2007:        $7.94

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

12.    On October 18, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $55,750.42 ("Note 1848-06"). Also on October 18, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-06") granting Whitney Bank a security interest in, without limitation, a GPS machine cab kit (the "Second GPS Cab Kit", and collectively with the GPS Radios, the Trimble GPS and the First GPS Cab Kit, the "GPS Equipment"). True and correct copies of Note 1848-06 and Security Agreement 1848-06 are attached collectively as **Exhibit "12"** to the Dubos Affidavit. Since February 18, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-06 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 1848-06 was

| | |
|---|---|
| Principal: | $43,720.61 |
| Interest: | $1,265.79 |
| Late Fees: | $548.25 |
| TOTAL: | $45,534.65 |

Per Diem Interest after June 10, 2007:        $8.68

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

13.    On June 19, 2006, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $200,000.00 ("Note 83467"). The

obligations of Highway Solutions pursuant to Note 83467 are secured by, without limitation, the security interest granted to Whitney Bank in the Accounts Receivable Collateral pursuant to Security Agreement 81267. A true and correct copy of Note 83467, as amended, is attached as **Exhibit "13"** to the Dubos Affidavit. Note 83467, as amended, matured on March 1, 2007, pursuant to its terms. As of June 10, 2007, the amount owed pursuant to Note 83467 was

| | |
|---|---|
| Principal: | $200,000.00 |
| Interest: | $5,958.32 |
| TOTAL: | $205,958.32 |

Per Diem Interest after June 10, 2007:    $45.83

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

14.    On September 8, 2006, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $97,702.00 ("Note 3498"). Also on September 8, 2006, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 3498") granting Whitney Bank a security interest in, without limitation, a Volvo excavator (the "Excavator"). True and correct copies of Note 3498 and Security Agreement 3498 are attached collectively as **Exhibit "14"** to the Dubos Affidavit. Since February 7, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 3498 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 3498 was

|        |             |
|--------|-------------|
| Principal: | $91,216.84 |
| Interest: | $2,651.10 |
| Late Fees: | $507.42 |
| TOTAL: | $94,375.36 |

Per Diem Interest after June 10, 2007:     $21.54

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

15.     On September 8, 2006, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $64,676.00 ("Note 3499" and collectively with Note 81267, Note 1848-01, Note 1848-02, Note 1848-03, Note 1848-04, Note 1848-05, Note 1848-06, Note 83467 and Note 3498, the "Notes"). Also on September 8, 2006, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 3499", and collectively with Security Agreement 81267, Security Agreement 1848-01, Security Agreement 1848-02, Security Agreement 1848-03, Security Agreement 1848-04, Security Agreement 1848-05, Security Agreement 1848-06 and Security Agreement 3498, the "Security Agreements") granting Whitney Bank a security interest in, without limitation, a T-330 hydroseeder and truck, VIN C545-00367 (the "Hydroseeder and Truck", and collectively with the Freightliner, the GPS Equipment, the Mulcher and the Excavator, the "Equipment Collateral"). True and correct copies of Note 3499 and Security Agreement 3499 are attached collectively as **Exhibit "15"** to the Dubos Affidavit. Since February 7, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 3499 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 3499 was

| Principal: | $60,382.97 |
|---|---|
| Interest: | $1,754.95 |
| Late Fees: | $465.57 |
| TOTAL: | $62,603.49 |

Per Diem Interest after June 10, 2007:      $14.26

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

16.     As of June 10, 2007, the amount owed to Whitney Bank by Highway Solutions pursuant to the Notes, the overdrawn Deposit Account and the Credit Card Accounts was

| Amount owed Pursuant to the Notes: | $1,472,358.59 |
|---|---|
| Amount owed Pursuant to the overdrawn Deposit Account: | $149,699.23 |
| Amount owed Pursuant to the Credit Card Accounts: | $54,839.61 |
| TOTAL: | $1,676,897.43 |

17.     Pursuant to the Notes and the Credit Card Applications, Highway Solutions agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by Whitney Bank in the enforcement of the Notes and the Credit Card Accounts.  As of September 1, 2007, Whitney Bank has incurred attorneys' fees in excess of $21,448.00 and costs and expenses in excess of $1,306.38 in Whitney Bank's enforcement of the Notes and the Credit Card Accounts. (*See* page 11, ¶ 18 of the Dubose Affidavit attached hereto as Exhibit "A"; page 2, ¶ 3 of the Cook Affidavit attached hereto as Exhibit "B"; and page 2, ¶ 3 of the Bailey Affidavit attached hereto as Exhibit "C".)

18.     Despite repeated demands, Highway Solutions has failed and/or refused to satisfy its debt to Whitney Bank.

### SUMMARY JUDGMENT STANDARD

As the United States Supreme Court has explained:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quoting FED. R. CIV. P. 56(c)). Once the moving party has met its burden, Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(c)).

The United States District Court for the Middle District of Alabama has explained that "[t]o avoid summary judgment, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Pioneer Servs., Inc. v. Auto-Owners Ins. Co., Inc.*, No. 2:06-cv-377-WKW, 2007 WL 2059109, at \*4 (M.D. Ala. July 12, 2007) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

An issue is "material" if it is a legal element of a claim under applicable substantive law that might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986);

*see also Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646.

**LEGAL ARGUMENT**

Under Alabama law, the elements of a breach of contract claim are: (1) the existence of a valid contract binding upon the parties; (2) the plaintiff's own performance; (3) the defendant's nonperformance or breach; and (4) damages to the plaintiff. *Pioneer Servs., Inc. v. Auto-Owners Ins. Co., Inc.*, No. 2:06-cv-377-WKW, 2007 WL 2059109, at *4 (M.D. Ala. July 12, 2007) (quoting *State Farm Fire & Cas. Co. v. Williams*, 926 So. 2d 1008, 1013 (Ala. 2005)); *see also Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001).

### A.     The Notes and the Credit Card Accounts

It is undisputed that Highway Solutions executed the Notes and the Credit Card Applications. The Notes and Credit Card Accounts have matured and/or are in default and Highway Solutions has failed to satisfy its debt to Whitney Bank. Consequently, as of June 10, 2007, Whitney Bank has suffered damages in the amount of

| | |
|---|---|
| Amount owed Pursuant to the Notes and the Credit Card Accounts: | $1,527,198.20 |
| Attorneys' fees and costs and expenses: | $22,754.38 |
| TOTAL: | $1,549,952.58 |

Whitney Bank continues to suffer damages as interest, late charges and costs of collection, including without limitation, attorneys' fees continue to accrue.

As evidenced by the relevant pleadings and exhibits attached hereto, Whitney Bank is entitled to judgment as a matter of law due to Whitney Bank's performance, the non-performance of Highway Solutions, and the resulting damages to Whitney Bank. In addition, the Notes and the Credit Card Application are unambiguous, the damages are certain and the facts

are undisputed. Accordingly, Whitney Bank's Motion for Summary Judgment is due to be granted as to Count I of the Complaint.

## B.    The Deposit Account

It is undisputed that Highway Solutions executed the Depositor Agreement. The Deposit Account is overdrawn and Highway Solutions has failed to satisfy its debt to Whitney Bank. Consequently, as of June 10, 2007, Whitney Bank has suffered damages in the principal amount of One Hundred Forty Nine Thousand Six Hundred Ninety Nine and 23/100 Dollars ($149,699.23). Whitney Bank continues to suffer damages as costs of collection, including without limitation, attorneys' fees continue to accrue.

As evidenced by the relevant pleadings and exhibits attached hereto, Whitney Bank is entitled to judgment as a matter of law due to Whitney Bank's performance, the non-performance of Highway Solutions, and the resulting damages to Whitney Bank. In addition, the Depositor Agreement is unambiguous, the damages are certain and the facts are undisputed. Accordingly, Whitney Bank's Motion for Summary Judgment is due to be granted as to Count II of the Complaint.

### CONCLUSION

As evidenced by the exhibits attached hereto as well as other relevant pleadings, Whitney Bank shows it is entitled to judgment as a matter of law. The plain meaning of the Notes, the Credit Card Applications, and the Depositor Agreement, as well as the Dubos Affidavit establish, as a matter of law, that Whitney Bank is entitled to summary judgment on its breach of contract claims against Highway Solutions as set out in Counts I and II of the Complaint. *See Bank of Brewton, Inc. v. Int'l Fid. Ins. Co.*, 827 So. 2d 747, 752 (Ala. 2002) (holding that under Alabama law, where the contract is unambiguous and the facts are undisputed, summary judgment is properly entered). The burden therefore shifts to Highway Solutions to prove, with admissible

evidence, the existence of a disputed material fact. If Highway Solutions fails to do so, the Court should grant summary judgment in favor of Whitney Bank pursuant to Rule 56 of the Federal Rules of Civil Procedure.

WHEREFORE, PREMISES CONSIDERED, Whitney Bank requests that this Honorable Court enter summary judgment on Counts I and II of the Complaint in favor of Whitney Bank and against Highway Solutions in the amount of One Million Six Hundred Ninety Nine Thousand Six Hundred Fifty One and 81/100 Dollars ($1,699,651.81) plus accrued and accruing interest, late charges and costs of collection, including, without limitation, attorneys' fees.

Respectfully submitted, this _____ day of September, 2007.

Gregory Carl Cook
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Post Office Box 306
Birmingham, Alabama 35203-2014
Telephone (205) 226-3426
Facsimile (205) 488-5870

*Attorney for Whitney National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing Motion for Summary Judgment via Federal Express this the 10th day of September, 2007.

Robert David Segall, Esq.
James David Martin, Esq.
Copeland Franco Screws & Gill
Post Office Box 347
Montgomery, Alabama 36101-0347



OF COUNSEL

926478.2                                     16

# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| WHITNEY NATIONAL BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:07-CV-00415-ID |
| ) | |
| HIGHWAY SOLUTIONS, LLC, et al., ) | |
| ) | |
| Defendant. ) | |

### AFFIDAVIT OF LOUIS DUBOS

| | |
|---|---|
| STATE OF LOUISIANA ) | |
| ) | |
| ORLEANS PARISH ) | |

Comes now the Affiant, Louis Dubos, being duly sworn, deposes and states as follows:

1.    My name is Louis Dubos and I am above the age of 19 years. I am employed by Whitney National Bank ("Whitney Bank"), as its Vice President in New Orleans, Louisiana. The statements set forth in this affidavit are true and correct and are made upon my personal knowledge or my review of the records related to this matter which are kept in the ordinary course of business and over which I maintain possession and control. I am familiar with the circumstances giving rise to Whitney Bank's claims against Highway Solutions, LLC ("Highway Solutions").

2.    On January 5, 2005, Highway Solutions executed and delivered to Whitney Bank a Commercial Business Loan Agreement for Term Loans and Lines of Credit (the "Loan Agreement"), for a line of credit of up to $500,000.00 with Whitney Bank. A true and correct copy of the Loan Agreement, as amended, is attached hereto as **Exhibit "1"**[1].

---

[1] All Exhibits attached to this Affidavit are incorporated herein by reference.

627146.1

3.    On January 5, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $500,000.00 ("Note 81267"). Also on January 5, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 81267") granting Whitney Bank a security interest in, without limitation, all Inventory, Chattel Paper, Accounts and General Intangibles of Highway Solutions, whether owned at the time of execution or thereafter acquired (the "Accounts Receivables Collateral"). True and correct copies of Note 81267, as amended, and Security Agreement 81267 are attached hereto collectively as **Exhibit "2"**. Note 81267, as amended, matured on March 1, 2007, pursuant to its terms. As of June 10, 2007, the amount owed pursuant to Note 81267 was

| | |
|---|---|
| Principal: | $891,086.83 |
| Interest: | $25,744.24 |
| TOTAL: | $916,831.07 |

Per Diem after June 10, 2007:    $204.21

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

4.    On January 5, 2005, Michael C. Marcato executed and delivered to Whitney Bank a commercial guaranty (the "Michael Marcato Guaranty"), unconditionally guaranteeing payment to Whitney Bank of all amounts owing by Highway Solutions, whether owed at the time of execution or arising thereafter. A true and correct copy of the Michael Marcato Guaranty is attached hereto as **Exhibit "3"**.

5.    On January 5, 2005, Anne S. Marcato (together with Michael C. Marcato, the "Marcatos") executed and delivered to Whitney Bank a commercial guaranty (the "Anne

927146 1

2

Marcato Guaranty" and together with the Michael Marcato Guaranty, the "Guaranties"), unconditionally guaranteeing payment to Whitney Bank of all amounts owing by Highway Solutions, whether owed at the time of execution or arising thereafter. A true and correct copy of the Anne Marcato Guaranty is attached hereto as **Exhibit "4"**.

6.     On January 7, 2005, Highway Solutions executed and delivered to Whitney Bank a depositor account agreement (the "Depositor Agreement") and opened a checking account with Whitney Bank (the "Deposit Account"). A true and correct copy of the Depositor Agreement and statements of the Deposit Account for the year 2007 are attached hereto collectively as **Exhibit "5"**. As of June 10, 2007, the Deposit Account was overdrawn in the amount of $149,699.23. Costs of collection, including, without limitation, attorneys' fees continue to accrue.

7.     On January 19, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $22,166.12 ("Note 1848-01"). Also on January 19, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-01") granting Whitney Bank a security interest in, without limitation, a 2000 Freightliner FL70, VIN 1FV6HJBA1YHG63600 (the "Freightliner"). True and correct copies of Note 1848-01 and Security Agreement 1848-01 are attached hereto collectively as **Exhibit "6"**. Since March 19, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-01 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 1848-01 was

3

| Principal: | $14,399.55 |
| Interest: | $366.90 |
| Late Fees: | $43.19 |
| TOTAL: | $14,809.64 |

Per Diem after June 10, 2007:       $3.30

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

8.      On January 19, 2005. Highway Solutions executed and delivered to Whitney Bank Visa Credit Card Applications (the "Credit Card Applications") and opened Visa Credit Card accounts with Whitney Bank (the "Credit Card Accounts"). The Credit Card Applications contained continuing guaranties executed by the Marcatos (the "Credit Card Guaranties"), personally guaranteeing payment to Whitney Bank of all amounts owing by Highway Solutions pursuant to the Credit Card Accounts, whether owed at the time of execution or arising thereafter. True and correct copies of the Credit Card Applications and statements of the Credit Card Accounts are attached hereto collectively as **Exhibit "7"**. Amounts owed to Whitney Bank by Highway Solutions pursuant to the Credit Card Accounts are past due and owing. As of June 10, 2007, the amount owed pursuant to the Credit Card Accounts was $54,839.61. Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

9.      On January 24, 2005. Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $29,995.72 ("Note 1848-02"). Also on January 24, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed and delivered, without limitation, a commercial security agreement ("Security Agreement 1848-02") granting Whitney Bank a security interest in, without

927146.1                                            4

limitation, global positioning survey software and equipment (the "GPS Radios"). True and correct copies of Note 1848-02 and Security Agreement 1848-02 are attached hereto collectively as **Exhibit "8"**. Since February 24, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-02 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 1848-02 was

| | |
|---|---|
| Principal: | $19,879.59 |
| Interest: | $627.44 |
| Late Fees: | $170.88 |
| TOTAL: | $20,677.91 |

Per Diem Interest after June 10, 2007:     $4.56

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

10.    On February 7, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $42,949.76 ("Note 1848-03"). Also on February 7, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-03") granting Whitney Bank a security interest in, without limitation, a universal forestry mulcher (the "Mulcher"). True and correct copies of Note 1848-03 and Security Agreement 1848-03 are attached hereto collectively as **Exhibit "9"**. Since February 7, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-03 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 1848-03 was

| Principal: | S27.655.12 |
| Interest: | S780.42 |
| Late Fees: | $166.37 |
| TOTAL: | S28.601.91 |

Per Diem Interest after June 10, 2007:    $6.34

Interest. late charges and costs of collection. including. without limitation, attorneys' fees continue to accrue.

11.    On August 22. 2005. Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $53,089.12 ("Note 1848-04"). Also on August 22. 2005. in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation. a commercial security agreement ("Security Agreement 1848-04") granting Whitney Bank a security interest in, without limitation, a Trimble GCS900 GPS (the "Trimble GPS"). True and correct copies of Note 1848-04 and Security Agreement 1848-04 are attached hereto collectively as **Exhibit "10"**. Since February 22, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-04 are past due and owing. As of June 10. 2007, the amount owed pursuant to Note 1848-04 was

| Principal: | $39,890.65 |
| Interest: | $1,045.10 |
| Late Fees: | $411.10 |
| TOTAL: | $41,346.85 |

Per Diem Interest after June 10, 2007:    $7.38

Interest. late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

527149 1

6

12.    On October 18, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $50,956.82 ("Note 1848-05"). Also on October 18, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-05") granting Whitney Bank a security interest in, without limitation, a GPS machine cab kit (the "First GPS Cab Kit"). True and correct copies of Note 1848-05 and Security Agreement 1848-05 are attached hereto collectively as **Exhibit "11"**. Since February 18, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-05 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 1848-05 was

| Principal: | $39,961.37 |
| Interest: | $1,156.95 |
| Late Fees: | $501.07 |
| TOTAL: | $41,619.39 |

Per Diem Interest after June 10, 2007:    $7.94

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

13.    On October 18, 2005, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $55,750.42 ("Note 1848-06"). Also on October 18, 2005, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 1848-06") granting Whitney Bank a security interest in, without limitation, a GPS machine cab kit (the "Second GPS Cab Kit", and collectively with the GPS Radios, the Trimble GPS and the First GPS Cab Kit, the "GPS Equipment"). True and correct copies of Note 1848-

927146    7

06 and Security Agreement 1848-06 are attached hereto collectively as **Exhibit "12"**. Since February 18, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 1848-06 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 1848-06 was

| | |
|---|---|
| Principal: | $43,720.61 |
| Interest: | $1,265.79 |
| Late Fees: | $548.25 |
| TOTAL: | $45,534.65 |

Per Diem Interest after June 10, 2007:     $8.68

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

14.     On June 19, 2006, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $200,000.00 ("Note 83467"). The obligations of Highway Solutions pursuant to Note 83467 are secured by, without limitation, the security interest granted to Whitney Bank in the Accounts Receivable Collateral pursuant to Security Agreement 81267. A true and correct copy of Note 83467, as amended, is attached hereto as **Exhibit "13"**. Note 83467, as amended, matured on March 1, 2007, pursuant to its terms. As of June 10, 2007, the amount owed pursuant to Note 83467 was

| | |
|---|---|
| Principal: | $200,000.00 |
| Interest: | $5,958.32 |
| TOTAL: | $205,958.32 |

Per Diem Interest after June 10, 2007:     $45.83

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

15.     On September 8, 2006, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $97,702.00 ("Note 3498"). Also on September 8, 2006, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions executed, without limitation, a commercial security agreement ("Security Agreement 3498") granting Whitney Bank a security interest in, without limitation, a Volvo excavator (the "Excavator"). True and correct copies of Note 3498 and Security Agreement 3498 are attached hereto collectively as **Exhibit "14"**. Since February 7, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 3498 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 3498 was

| | |
|---|---|
| Principal: | $91,216.84 |
| Interest: | $2,651.10 |
| Late Fees: | $507.42 |
| TOTAL: | $94,375.36 |

Per Diem Interest after June 10, 2007:     $21.54

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

16.     On September 8, 2006, Highway Solutions executed and delivered to Whitney Bank a promissory note in the original principal amount of $64,676.00 ("Note 3499" and collectively with Note 81267, Note 1848-01, Note 1848-02, Note 1848-03, Note 1848-04, Note 1848-05, Note 1848-06, Note 83467 and Note 3498, the "Notes"). Also on September 8, 2006, in order to secure the obligations of Highway Solutions to Whitney Bank, Highway Solutions

executed. without limitation, a commercial security agreement ("Security Agreement 3499", and collectively with Security Agreement 81267, Security Agreement 1848-01, Security Agreement 1848-02, Security Agreement 1848-03, Security Agreement 1848-04, Security Agreement 1848-05, Security Agreement 1848-06 and Security Agreement 3498, the "Security Agreements") granting Whitney Bank a security interest in, without limitation, a T-330 hydroseeder and truck, VIN C545-00367 (the "Hydroseeder and Truck", and collectively with the Freightliner, the GPS Equipment, the Mulcher and the Excavator, the "Equipment Collateral"). True and correct copies of Note 3499 and Security Agreement 3499 are attached hereto collectively as **Exhibit "15"**. Since February 7, 2007, amounts owed to Whitney Bank by Highway Solutions pursuant to Note 3499 are past due and owing. As of June 10, 2007, the amount owed pursuant to Note 3499 was

| | |
|---|---|
| Principal: | $60,382.97 |
| Interest: | $1,754.95 |
| Late Fees: | $465.57 |
| TOTAL: | $62,603.49 |

Per Diem Interest after June 10, 2007:     $14.26

Interest, late charges and costs of collection, including, without limitation, attorneys' fees continue to accrue.

17.     As of June 10, 2007, the amount owed to Whitney Bank by Highway Solutions pursuant to the Notes, the overdrawn Deposit Account and the Credit Card Accounts was

927-46 v                                                          10

| | |
|---|---|
| Amount owed Pursuant to the Notes: | $1,472,358.59 |
| Amount owed Pursuant to the overdrawn Deposit Account: | $149,699.23 |
| Amount owed Pursuant to the Credit Card Accounts: | $54,839.61 |
| TOTAL: | $1,676,897.43 |

18.     Pursuant to the Notes and the Credit Card Applications, Highway Solutions agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by Highway Solutions in the enforcement of the Notes and the Credit Card Accounts.  As of September 1, 2007, Whitney Bank has paid to the law firm of Rushton, Stakely, Johnston & Garrett, P.A. in excess of $11,000.00 in attorneys' fees and costs and expenses, and has paid to the law firm of Balch & Bingham LLP in excess of $11,754.38 in Whitney Bank's enforcement of the Notes and the Credit Card Accounts.

19.     Despite repeated demands, Highway Solutions has failed and/or refused to satisfy its debt to Whitney Bank.

Further Affiant sayeth not.

Dated this   7   day of September, 2007.

_____
Affiant
Louis Dubos

STATE OF LOUISIANA )
                   )
ORLEANS PARISH     )

I, the undersigned notary public in and for said parish in said state, hereby certify that Louis Dubos, on behalf of Whitney National Bank, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Vice President and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this $7$ day of September, 2007.

[NOTORIAL SEAL]

Notary Public
My Commission Expires:

WAYNE B. PITTMAN, JR.
NOTARY PUBLIC
PARISH OF ORLEANS, STATE OF LOUISIANA
MY COMMISSION ISSUED FOR LIFE.
NOTARY NUMBER: 51116

# EXHIBIT "1"

WHITNEY

### Commercial Business Loan Agreement for
### Term Loans and Lines of Credit

This Agreement is dated January 5, 2005 and is between Whitney National Bank ("Whitney") and Highway Solutions, L.L.C. (hereinafter referred to as "Borrower", which term means individually, collectively, and interchangeably any, each and/or all of them) and Anne S. Marcato and Michael C. Marcato (hereinafter referred to as "Guarantor", which term means individually, collectively, and interchangeably any, each and/or all of them). Borrower and Guarantor, if any, and any other person who may be liable now or in the future for any portion of any Loan are referred to as "Obligor", which term means individually, collectively, and interchangeably any, each and/or all of them).

**A.     THE LOAN OR LOANS.** Subject to the terms and conditions of this Agreement and provided Obligor timely and completely performs all obligations in favor of Whitney contained in this Agreement and in any other agreement, whether now existing or hereafter arising, Whitney will make or has made:

a **LINE OF CREDIT LOAN** to Borrower in the total aggregate principal amount of Five Hundred Thousand and 00/100 ($500,000.00) Dollars, which loan shall be evidenced by and payable according to Whitney's form of promissory note, a copy of which is attached as Exhibit A(2).

Whitney will fund the Line of Credit Loan, in amounts equal to .75 percent of Eligible Accounts and 60 percent of Eligible Inventory, but in no event shall the total aggregate principal amount due on the Line of Credit Loan exceed at any one time the amount of $500,000.00. "Eligible Inventory" shall mean inventory owned by Borrower which is subject to a first security interest in favor of Whitney and is held for sale to customers in the ordinary course of business and shall be valued at the lower of (i) the cost of each item consisting of inventory or (ii) its market value, less any outstanding debt incurred in connection with the purchase of such inventory and less the cost of any supplies and any work in progress. "Eligible Accounts" shall mean accounts owned by Borrower subject to a first security interest in favor of Whitney that are acceptable and approved by Whitney from time to time as accounts eligible to be used as a basis for an advance to Borrower under the Line of Credit. Without limiting Whitney's discretion to deem an account unacceptable, the following shall not be an Eligible Account: (i) any account which has remained unpaid for more than 90 days from the date of invoice, (ii) any account subject to a set off or disputed by the account debtor of the account, (iii) any account which Borrower has extended the time for payment without the consent of Whitney, (iv) any account owed by an account debtor which does not maintain its chief executive office in the United States or which is not organized under the laws of the United

States, unless secured by an acceptable letter of credit subject to a first security interest in favor of Whitney, (v) any account which is owed by any parent, subsidiary, affiliate, related company or shareholder of Borrower, (vi) any account due from the United States or any agency thereof, (vii) any account in which Borrower owes or will owe any obligation to the account debtor of such account, (viii) any account which separately or aggregated with other account(s) represents a relatively large concentration to one company, typically higher than 15% of total accounts; (ix) any account due on consigned goods, and (x) any account arising from retainage(s) against billing(s). Upon the request of Whitney and each time that Borrower requests and advance on the Line of Credit Loan, Borrower shall furnish Whitney a certificate in such form as Whitney may require along with a current aging of accounts evidencing the amounts owed thereon and the parties liable thereon and a current listing of inventory.

**B.      EFFECT OF AGREEMENT AND DEFINITIONS .**  The promissory note or notes referenced in Section A above are incorporated by reference.  Such note(s) and any renewals, modifications or replacements for such note(s) are subject to the terms of this Agreement.  "Loan" shall collectively mean any and all loans made available to Borrower under Section A of this Agreement.  "Loan Documents" shall mean this Agreement, the promissory note(s) evidencing the Loan, any continuing guaranty(ies) by Obligor, any security document(s) provided for in this Agreement and any and all other documents evidencing or securing the obligations of Borrower to Whitney.  The Loan and all other obligations of Borrower to Whitney, direct or contingent, due or to become due, now existing or hereafter arising, shall be secured by any security documents provided for in this Agreement, any collateral set forth in any promissory note executed by Borrower, and any other Loan Documents.

**C.      USE OF PROCEEDS.**  The proceeds from the Loan will be used for the following purpose(s): Working Capital

**D.      REPRESENTATIONS, WARRANTIES AND COVENANTS.**  Borrower represents, warrants and covenants to Whitney that:

**(1)      Organization and Authorization**.  Obligor (other than an individual) is an entity which is duly organized, validly existing and, if a corporation, in good standing under applicable laws.  Obligor's execution, delivery and performance of this Agreement and all other documents delivered to Whitney have been duly authorized and does not violate Obligor's articles of incorporation (or other governing documents), material contracts or any applicable law or regulations.  All documents delivered to Whitney are legal and binding obligations of Obligor who executed same.

**(2)      Compliance with Tax and other Laws.**  Obligor shall comply (to the extent necessary so that any failure to do so will not materially and adversely affect the business or property of Obligor) with all laws that are applicable to Obligor's business activities, including, without limitation, all laws regarding (i) the collection, payment and deposit of employees' income, unemployment, Social Security, sales and excise taxes; (ii) the filing of returns and payment of taxes; (iii) pension liabilities including ERISA requirements; (iv) environmental protection; and (v) occupational safety and health.

**(3)     Financial Information.**

    (a)     Obligor (other than an individual) shall furnish to Whitney:

        (i)     within 90 days after the close of Obligor's fiscal year, a copy of the annual compiled financial statements of Obligor, prepared in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding fiscal year, and certified by an independent certified public accounting firm acceptable to Whitney consisting of a balance sheet, a statement of earnings and surplus, and a statement of cash flow; and

        (ii)     within 45 days after the close of each quarter of the fiscal year of Obligor unaudited financial statements as of the end of such quarter consisting of a balance sheet as of the end of such quarter, a statement of earnings and surplus for such quarter and a statement of cash flow for such quarter, all certified by an appropriate executive officer of Obligor.

    (b)     Annually, Obligor who is an individual shall deliver to Whitney a personal financial statement acceptable to Whitney.

    (c)     Obligor shall furnish to Whitney such additional information that Whitney may require.

**(4)     Mergers, etc.** Without the prior written consent of Whitney, Obligor shall not (a) be a party to a merger or consolidation, (b) acquire all or substantially all of the assets of another entity, or (c) sell, lease or transfer all, or substantially all, of Obligor's assets. Obligor shall not permit any material change to be made in the character of Obligor's business as carried on at the original date of this Agreement. Obligor shall not purchase, retire or redeem any shares of its capital stock without the prior written consent of Whitney.

**(5)     Indebtedness and Liens.** Other than obligations incurred in the ordinary course of business, Borrower shall not create any additional obligations for borrowed money. Borrower shall not mortgage or encumber any of Borrower's assets or suffer any liens to exist on any of Borrower's assets without the prior written consent of Whitney.

**(6)     Other Liabilities.** (a) Obligor shall not lend to or guarantee, endorse or otherwise become contingently liable in connection with the obligations, stock or dividends of any person, firm or corporation, except as currently exists and as reflected in the financial statements of Obligor as previously submitted to Whitney; (b) Obligor shall not default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any indenture, agreement or other instrument to which Obligor is a party (the effect of which would materially adversely effect the business or properties of Obligor); and (c) Except as disclosed or referred to in the financial statements furnished to Whitney, there is no litigation, legal or administrative proceeding, investigation or other action of any nature pending or, to the knowledge of Obligor, threatened against or affecting

Obligor which involves the possibility of any judgment or liability not fully covered by insurance, and which may materially and adversely affect the business or assets of Obligor or Obligor's ability to carry on business as now conducted.

**(7)    Documentation.**  The Loan Documents shall be on Whitney's standard forms, with such modifications as may be required by Whitney. Upon the written request of Whitney, Obligor shall promptly and duly execute and deliver all such further instruments and documents and take such further action as Whitney may deem necessary to obtain the full benefits of the Loan Documents.

**(8)    Collateral.**  As security for payment and performance of the Loan and any and all other obligations of Borrower to Whitney, direct or contingent, due or to become due, now existing or hereafter arising, Borrower shall execute and deliver to Whitney, or cause others to execute and deliver to Whitney, the following described security documents: A security agreement and financing statement by Highway Solutions, L.L.C. granting Whitney a first lien and security interest in Accounts, Chattel Paper, General Intangibles and Inventory, and subject to no other lien or encumbrance.

**(9)    Guaranties.**  The Loan shall be guaranteed by Michael C. Marcato and Anne S. Marcato.

**E.    CONDITIONS PRECEDENT TO LOANS.**  Whitney shall be obligated to make the Loan only so long as: (i) all of the Loan Documents required by this Agreement have been delivered to Whitney, (ii) Obligor is current in the performance of all of the other obligations of Obligor contained in the Loan Documents, (iii) no Default has occurred, and (iv) no adverse material change in the financial condition of Obligor has occurred.

**F.    DEFAULT.**  The occurrence of (i) the failure of Borrower to make any payment on any Loan when due, (ii) the failure of Obligor to observe or perform promptly when due any covenant, agreement or obligation under this Agreement or under any of the other Loan Documents, or (iii) the material inaccuracy at any time of any warranty, representation or statement made to Whitney by Obligor under this Agreement or otherwise, shall constitute a default ("Default") under this Agreement. In the event of a Default, Whitney, at its option, shall have the right to exercise any and all of its rights under the Loan Documents.

**G.    MISCELLANEOUS PROVISIONS.**  Borrower agrees to pay all of the costs, expenses and fees incurred in connection with the Loan, including attorneys fees and appraisal fees. This Agreement is not assignable by Obligor and no party other than Obligor is entitled to rely on this Agreement. In no event shall Obligor or Whitney be liable to the other for indirect, special or consequential damages, including the loss of anticipated profits, that may arise out of or are in any way connected with this Agreement. No condition or other term of this Agreement may be waived or modified except by a writing signed by Borrower and Whitney. This Agreement shall supersede and replace any commitment letter between Whitney and Obligor relating to any Loan.   If any provision of this Agreement shall be held to be legally invalid or unenforceable by any court of competent jurisdiction, all remaining provisions of this Agreement shall remain in full force and effect. This Agreement shall be governed by and construed in accordance with the laws of State of Alabama.

WHITNEY NATIONAL BANK

By: _____
Eugene C. Crane, Vice President

OBLIGOR: HIGHWAY SOLUTIONS, L.L.C.

By: Annes. Marcato, Managing Member
Anne S. Marcato, Sole Member/Manager

X  Anne S. Marcato
Anne S. Marcato

X _____
Michael C. Marcato

I:\GULF STATES REGIONAL DOCUMENTS\LOAN AGREEMENT MODIFICATION AGREEMENTS\AL LOAN AGREEMENTS\HIGHWAY SOLUTIONS, LLC LOAN AGREEMENT 1-5-05.DOC

REDACTED

Prepared by:
Adrienne Pelitire
Whitney National Bank
P.O. Box 61260
New Orleans, LA 70161

LOAN NUMBER ~~~~~~~-81267

MBH

## LOAN AGREEMENT MODIFICATION AGREEMENT

THIS AGREEMENT made and entered into by and between Highway Solutions, L.L.C. an Alabama corporation, (hereinafter referred to as "Borrower"), and Whitney National Bank, (hereinafter referred to as "Lender");

WITNESSETH:

This Agreement is dated March 28, 2006, and is between Whitney National Bank ("Whitney") and Highway Solutions, L.L.C., an Alabama corporation (hereinafter referred to as "Borrower", which term means individually, c ollectively, and interchangeably any, each and/or all of them). Borrower and Guarantor, if any, and any other person who may be liable now or in the future for any portion of any Loan are referred to as "Obligor", which term means individually, collectively, and interchangeably any, each and/or all of them). This Agreement is a modification of that Commercial Business Loan Agreement for Term Loans and Lines of Credit dated January 5, 2005, executed by Borrower and Whitney National Bank, as modified by that Loan Agreement Modification Agreement of even date hereof, said Loan Agreement was made to set forth the terms and conditions of a certain credit facility given to Borrower from Whitney represented in part by that Promissory Note dated January 5, 2005, in the original amount of $500,000.00, which was renewed and modified by that Change in Terms Agreement dated January 9, 2006 with interest and also such further sums as may be advanced or loaned by Lender to Borrower;

NOW, THEREFORE, in consideration of the premises, the promises and agreements between the said parties hereinafter contained, and the mutual benefits accruing to the undersigned parties, the parties hereto for themselves and their respective successors and assigns do hereby agree as follows:

Obligor and Whitney do hereby amend and modify the Loan Agreement to amend the following:

A. THE LOAN OR LOANS. Subject to the terms and conditions of this Agreement and provided Obligor timely and completely performs all obligations in favor of Whitney contained in this Agreement and in any other agreement, whether now existing or hereafter arising, Whitney will make or has made:

an increase to that Line of Credit Loan to Borrower up to the total aggregate principal amount of Eight Hundred Thousand and NO/I00 ($800,000.00) Dollars. This loan will be evidenced by Lender's form of master note containing additional terms and conditions, including the interest rate and repayment schedule.

That, except insofar as herein expressly changed, all terms, covenants and provisions of said Loan Agreement and the obligation represented thereby shall remain in full force and effect and are hereby expressly ratified and confirmed by the parties hereto. This Agreement, together with all other related documents, supersedes all oral negotiations and prior and other writings with respect to their subject matter and are intended by the parties as the complete and exclusive statement of the terms agreed to by the parties. If there is any conflict between the terms, conditions and provisions of this Agreement and those of any other agreement or instrument, including any of the other loan documents, the terms, conditions and provisions of this Agreement shall prevail.

In witness whereof, executed this 28th day of March 2006.

BORROWER:

HIGHWAY SOLUTIONS, L.L.C.

BY: _Anne S Marcato_

ANNE S. MARCATO, SOLE MEMBER/MANAGER

LENDER:

WHITNEY NATIONAL BANK

BY: _Mark R Hope_

MARK R. HOPE

ITS: ASSISTANT VICE PRESIDENT

I:\GULF STATES REGIONAL DOCUMENTS\LOAN AGREEMENT MODIFICATION AGREEMENTS\HIGHWAY SOLUTIONS, L.L.C. 3-28-06 #81267-INCREASE LOC.DOC

# EXHIBIT "2"

**WHITNEY**

AC-849

**PROMISSORY NOTE**    0N1267 001 1999

REDACTED

| Borrower: | HIGHWAY SOLUTIONS, L.L.C. (TIN: ▓▓▓▓▓▓) P.O. BOX 210445 MONTGOMERY, AL 36121 | Lender: | Whitney National Bank Mobile Business / Commercial Lending - Carmichael P. O. Box 230714 Montgomery, AL 36123-0714 |
|---|---|---|---|

**Principal Amount: $500,000.00**      **Initial Rate: 5.250%**      **Date of Note: January 5, 2005**

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Thousand & 00/100 Dollars ($500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on January 5, 2006. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning February 5, 2005, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 5.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the index, resulting in an initial rate of 5.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts,

**PROMISSORY NOTE**
**(Continued)**

Page 2

and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a pledge and/or security agreement of even date.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and pledge's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party to this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: ‌⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ (Seal)
ANNE S. MARCATO, Manager of HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 4.25.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - AL  y:\CFN\PL\D06.FC  TR-25784  PR-164



**WHITNEY**

**REDACTED**

## CHANGE IN TERMS AGREEMENT

| Borrower: | HIGHWAY SOLUTIONS, L.L.C. (~~SN: ~~) <br> P.O. BOX 210445 <br> MONTGOMERY, AL 36121 | Lender: | Whitney National Bank <br> Mobile Business / Commercial Lending - Carmichael <br> P. O. Box 230714 <br> Montgomery, AL 36123-0714 |
|---|---|---|---|

---

**Principal Amount: $500,000.00          Initial Rate: 7.250%          Date of Agreement: January 9, 2006**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** LOAN NO. 8340287/81267 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JANUARY 5, 2005, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $500,000.00. THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $433,082.94.

**DESCRIPTION OF COLLATERAL.** IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JANUARY 5, 2005, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

**DESCRIPTION OF CHANGE IN TERMS.** THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM JANUARY 5, 2006 TO MARCH 9, 2006. THE PAYMENT SCHEDULE SHALL NOW BE AS IS FULLY DESCRIBED IN THE "PAYMENT" PROVISION BELOW.

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Thousand & 00/100 Dollars ($500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 9, 2006. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning February 9, 2006, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 7.250% per annum. The interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the Index, resulting in an initial rate of 7.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9768, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default In Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or

**_CHANGE IN TERMS AGREEMEN_**
(Continued)

injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by TWO COMMERCIAL SECURITY AGREEMENTS DATED JANUARY 5, 2005 AND OCTOBER 7, 2005. RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL ARE STATED IN THE SECURITY DOCUMENTS AND IN THAT COMMERCIAL BUSINESS LOAN AGREEMENT FOR TERM LOANS AND LINES OF CREDIT DATED JANUARY 5, 2005.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles now and previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party for any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**HIGHWAY SOLUTIONS, L.L.C.**

By:_____(Seal)
ANNE MARCATO, Manager of HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 5.25.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - AL c:\CFI\LPL\D20.FC TR-51448 PR-152

**WHITNEY**

*REDACTED*

**CHANGE IN TERMS AGREEMENT**

Borrower: **HIGHWAY SOLUTIONS, L.L.C. (TIN: ████████)**
P.O. BOX 210445
MONTGOMERY, AL 36121

Lender: **Whitney National Bank**
Mobile Business / Commercial Lending - Carmichael
P. O. Box 230714
Montgomery, AL 36123-0714

---

| Principal Amount: $800,000.00 | Initial Rate: 7.500% | Date of Agreement: March 28, 2006 |
| --- | --- | --- |

**DESCRIPTION OF EXISTING INDEBTEDNESS.** LOAN NO. ████-81267 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JANUARY 5, 2005, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $500,000.00, AS RENEWED AND MODIFIED BY THAT CHANGE IN TERMS AGREEMENT DATED JANUARY 9, 2006.

THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $500,000.00.

**DESCRIPTION OF COLLATERAL.** IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JANUARY 5, 2005, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

**DESCRIPTION OF CHANGE IN TERMS.** THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM MARCH 9, 2006 TO MAY 1, 2006.

ADDITIONALLY THIS AGREEMENT INCREASES THE TOTAL AGGREGATE PRINCIPAL AMOUNT AVAILABLE UNDER THIS LINE OF CREDIT FROM $500,000.00 TO $800,000.00. THE PAYMENT SCHEDULE SHALL NOW BE AS IS FULLY DESCRIBED IN THE "PAYMENT" PROVISION BELOW.

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Thousand & 00/100 Dollars ($800,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 1, 2006. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 28, 2006, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 7.500% per annum. The interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the Index, resulting in an initial rate of 7.500% per annum. NOTICE: Under no circumstances will the interest rate on the Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9769, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued interest immediately due, without notice, and then Borrower will pay that amount.

## CHANGE IN TERMS AGREEMENT
### (Continued)

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Commercial Security Agreement dated January 5, 2005,executed by Borrower to Lender. Rights and obligations with respect to the collateral are stated in the security documents and by that Commercial Business Loan Agreement for Term Loans and Lines of Credit dated January 5, 2005 and by that Loan Agreement Modification Agreement of even date.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**EFFECTIVE INITIAL RATE OF INTEREST ON THIS NOTE.** Borrower acknowledges that the interest rate on this Note is subject to increases and decreases from time to time based on changes in the Index. Borrower further acknowledges that this Note has been prepared for a future date (the "Date of Note" as indicated on the front of this Note), and, that the Initial Rate and value of the Index effective on the actual Date of Note may differ from the Index and Initial Rate that are shown in this Note due to changes in the Index that have occurred since this Note was prepared. Consequently, Borrower agrees that the Initial Rate on this Note shall not be as reflected on the face hereof, but shall be determined by the value of the Index that is in effect on the actual "Date of Note".

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

CONTINUED ON NEXT PAGE

# HANGE IN TERMS AGREEMEN
## (Continued)

Page 3

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

HIGHWAY SOLUTIONS, L.L.C.

By: _____ (Seal)
    ANNE   MARCATO,   Manager   of   HIGHWAY
    SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 5.35.00.008  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - AL  p\CFI\LPL\D20C.FC  TR-8114  PR-162

*ML*

*RC847*

*001-499*

Prepared by:                                        Loan No. ▇▇▇▇▇-81267
Suzette Hupin
Whitney National Bank
P. O. Box 61260
New Orleans, LA 70161

*REDACTED*

### NOTE MODIFICATION AGREEMENT

The undersigned, Maker (hereinafter referred to as "Borrower") of a Promissory Note dated

January 5, 2005, and Whitney National Bank, (hereinafter referred to as "Lender"), in the original

principal amount of Five Hundred Thousand and 00/100 ·($500,000.00), plus interest, and was

renewed and modified by those Change of Terms Agreements dated January 9, 2006, and March

28, 2006, (hereinafter collectively referred to as "Note"), hereby agree that the said Note shall be

revised as follows:

1.  Effective May 1, 2006 the current maturity date is hereby extended to June 30, 2006 .

2.  Principal and all accrued unpaid interest shall be payable on June 30, 2006. In
    addition, Borrower will pay regular monthly payments of all accrued unpaid interest
    due as of each payment date, beginning June 1, 2006, with all subsequent interest
    payments to be due on the day of each month after that.

3.  The outstanding principal balance as of the date hereof is $800,000.00, and interest is
    paid to march 27, 2006

4.  The Note together with all renewals of, modifications of or, refinancing of,
    consolidations of and substitutions for the note or credit agreement are secured by two
    Commercial Security Agreement, dated January 5, 2005, and October 7, 2005.

That except insofar as herein expressly changed, all terms, covenants and provisions of

Note, and the obligations evidenced and secured thereby shall remain in full force and effect and

are hereby expressly ratified and confirmed.

In witness whereof, executed this __18th__ day of May, 2006.

BORROWER:
Highway Solutions, L.L.C.

BY: *Anne S. Marcato*
    Anne S. Marcato
ITS:  Manger

LENDER:
WHITNEY NATIONAL BANK

BY: _____
    Gene C. Crane
ITS: Sr .Vice President

I:\GULF STATES REGIONAL DOCUMENTS\NOTE MODIFICATION AGREEMENTS\HIGHWAY SOLUTIONS LLC\112606\DAY EXTEND MATURITY5-15-2006



## WHITNEY

# CHANGE IN TERMS AGREEMENT

| Borrower: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000<br>MONTGOMERY, AL 36191 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|

**Principal Amount: $800,000.00        Initial Rate: 8.250%        Date of Agreement: July 28, 2006**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** LOAN NO. ▓▓▓▓▓▓▓81257 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JANUARY 5, 2005, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $500,000.00, AS RENEWED AND MODIFIED BY THAT CHANGE IN TERMS AGREEMENT DATED JANUARY 9, 2006 AND MARCH 28, 2006, AND THAT NOTE MODIFICATION AGREEMENT DATED MAY 16, 2006. THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $800,000.00.

**DESCRIPTION OF COLLATERAL.** IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JANUARY 5, 2005, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

**DESCRIPTION OF CHANGE IN TERMS.** THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM JUNE 30, 2006 TO AUGUST 31, 2006.

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Thousand & 00/100 Dollars ($800,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 31, 2006. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the Index, resulting in an initial rate of 8.250% per annum. NOTICE: Under no circumstances will the interest rate on the Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9768, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 6.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clause, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

## CHANGE IN TERMS AGREEMENT
### (Continued)

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Commercial Security Agreement dated January 5, 2005,executed by Borrower to Lender. Rights and obligations with respect to the collateral are stated in the security documents and by that Commercial Business Loan Agreement for Term Loans and Lines of Credit dated January 5, 2005 and by that Loan Agreement Modification Agreement dated March 28, 2006.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party for any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____(Seal)
ANNE  MARCATO,  Manager  of  HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 5.26.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - AL  g:\CFI\LPL\D20C.FC  TR-40296  PR-182



**WHITNEY**

RC#849

## CHANGE IN TERMS AGREEMENT 81267 001/999

REDACTED

| Borrower: | HIGHWAY SOLUTIONS, L.L.C. | Lender: | Whitney National Bank |
| | P.O. BOX 11000 | | Middle Business / Commercial Lending - Carmichael |
| | MONTGOMERY, AL 36191 | | P. O. Box 230714 |
| | | | Montgomery, AL 36123-0714 |

**Principal Amount: $800,000.00        Initial Rate: 8.250%        Date of Agreement: September 29, 2006**

DESCRIPTION OF EXISTING INDEBTEDNESS. LOAN NO. ⬛⬛⬛-81267 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JANUARY 5, 2005, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $800,000.00, AS RENEWED AND MODIFIED BY THAT CHANGE IN TERMS AGREEMENT DATED JANUARY 9, 2006 AND MARCH 28, 2006, AND THAT NOTE MODIFICATION AGREEMENT DATED MAY 15, 2006 AND BY THAT CHANGE IN TERMS AGREEMENT DATED JULY 28, 2006. THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $800,000.00.

DESCRIPTION OF COLLATERAL.    IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JANUARY 5, 2005, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

DESCRIPTION OF CHANGE IN TERMS.   THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM AUGUST 31, 2006 TO NOVEMBER 30, 2006.

PROMISE TO PAY.   HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Thousand & 00/100 Dollars ($800,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT.   Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on November 30, 2006. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 30, 2006, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.  Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE.  The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, while the rate of interest on this Note is changed when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the Index, resulting in an initial rate of 8.250% per annum. NOTICE:  Under no circumstances will the interest rate on the Note be more than the maximum rate allowed by applicable law.

PREPAYMENT.  Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

LATE CHARGE.  If a payment is 10 days or more late, Borrower will be upon final maturity, the total sum due under this Agreement will bear interest from or $1,000.00, whichever is less.

INTEREST AFTER DEFAULT.  Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement.  The interest rate will not exceed the maximum rate permitted by applicable law.

DEFAULT.  Each of the following shall constitute an Event of Default under this Agreement:

Payment Default.  Borrower fails to make any payment when due under the Indebtedness.

Other Defaults.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties.  Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency.  The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor.  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

Adverse Change.  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity.  Lender in good faith believes itself insecure.

LENDER'S RIGHTS.  Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount.  Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES.  Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not

# CHANGE IN TERMS AGREEMENT
## (Continued)

Page 2

there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Commercial Security Agreement dated January 5, 2005,executed by Borrower to Lender. Rights and obligations with respect to the collateral are stated in the security documents and by that Commercial Business Loan Agreement for Term Loans and Lines of Credit dated January 5, 2005 and by that Loan Agreement Modification Agreement dated March 28, 2006.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information in such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**CONTINUED ON NEXT PAGE**

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

HIGHWAY SOLUTIONS, L.L.C.

By:_____(Seal)
ANNE  MARCATO,  Manager  of  HIGHWAY
SOLUTIONS, L.L.C.



**WHITNEY**

BC#849    **CHANGE IN TERMS AGREEMENT**    81267    001/999

REDACTED

| Borrower: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000<br>MONTGOMERY, AL 36191 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|

**Principal Amount: $800,000.00    Initial Rate: 8.250%    Date of Agreement: December 22, 2006**

DESCRIPTION OF EXISTING INDEBTEDNESS. LOAN NO. ███████-81267 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JANUARY 5, 2005, EXECUTED BY BORROWER TO LENDER IN THE ORIGINAL PRINCIPAL AMOUNT OF $500,000.00, AS RENEWED AND MODIFIED BY THAT CHANGE IN TERMS AGREEMENT DATED JANUARY 9, 2006 AND MARCH 28, 2006, AND THAT NOTE MODIFICATION AGREEMENT DATED MAY 15, 2006 AND BY THAT CHANGE IN TERMS AGREEMENT DATED JULY 28, 2006 AND SEPTEMBER 29, 2006. THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $800,000.00.

DESCRIPTION OF COLLATERAL.   IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JANUARY 5, 2005, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

DESCRIPTION OF CHANGE IN TERMS.   THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM NOVEMBER 30, 2006 TO JANUARY 31, 2007.

PROMISE TO PAY.   HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Thousand & 00/100 Dollars ($800,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT.   Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on January 31, 2007.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 22, 2007, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.   Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE.   The interest rate on this Agreement is subject to change from time to time based on changes in an independent Index which is the J. P. Morgan Chase Prime rate.  This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notice to Borrower.  Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each day.  Borrower understands that Lender may make loans based on other rates as well.  The Index currently is 8.250% per annum.  The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the Index, resulting in an initial rate of 8.250% per annum.  NOTICE:  Under no circumstances will the interest rate on the Note be more than the maximum rate allowed by applicable law.

PREPAYMENT.   Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9768, MOBILE, AL 36691.

LATE CHARGE.   If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

INTEREST AFTER DEFAULT.   Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement.  The interest rate will not exceed the maximum rate permitted by applicable law.

DEFAULT.   Each of the following shall constitute an Event of Default under this Agreement:

Payment Default.   Borrower fails to make any payment when due under the Indebtedness.

Other Defaults.   Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties.   Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

False Statements.   Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency.   The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings.   Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness.  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor.   Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

Adverse Change.   A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity.   Lender in good faith believes itself insecure.

LENDER'S RIGHTS.   Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount.  Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES.   Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not

## CHANGE IN TERMS AGREEMENT
### (Continued)

there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other accounts). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Commercial Security Agreement dated January 5, 2005,executed by Borrower to Lender. Rights and obligations with respect to the collateral are stated in the security documents and by that Commercial Business Loan Agreement for Term Loans and Lines of Credit dated January 5, 2005 and by that Loan Agreement Modification Agreement dated  March 28, 2005.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either:  (A)  advanced in accordance with the instructions of an authorized person or  (B)  credited to any of Borrower's accounts with Lender.  The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs.  Lender will have no obligation to advance funds under this Agreement if:  (A)  Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement;  (B)  Borrower or any guarantor ceases doing business or is insolvent;  (C)  any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender;  (D)  Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or  (E)  Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further additional security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificate of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accomodation party (or any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

### CONTINUED ON NEXT PAGE

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____(Seal)
ANNE  MARCATO,  Manager  of  HIGHWAY
SOLUTIONS, L.L.C.

ITNEY

## CHANGE IN TERMS AGREEMENT
-8126?

001/999

REDACTED

| Borrower: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 14000  210 445<br>MONTGOMERY, AL 38101<br>86/21 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|

**Principal Amount: $800,000.00**          **Initial Rate: 8.250%**          **Date of Agreement: January 31, 2007**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** LOAN NO. ▆▆▆▆-81267 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JANUARY 5, 2005, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $500,000.00, AS RENEWED AND MODIFIED BY THOSE CHANGE IN TERMS AGREEMENTS DATED JANUARY 9, 2006 AND MARCH 28, 2006, AND THAT NOTE MODIFICATION AGREEMENT DATED MAY 16, 2006 AND BY THOSE CHANGE IN TERMS AGREEMENTS DATED JULY 28, 2006, SEPTEMBER 29, 2006 AND DECEMBER 22, 2006. THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $763,424.43.

**DESCRIPTION OF COLLATERAL.** IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JANUARY 5, 2005, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

**DESCRIPTION OF CHANGE IN TERMS.** THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM JANUARY 31, 2007 TO MARCH 1, 2007.

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Thousand & 00/100 Dollars ($800,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 1, 2007. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 8.250% per annum. This interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the Index, resulting in an initial rate of 8.250% per annum. NOTICE: Under no circumstances will the interest rate on this Agreement be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9788, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT," the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs,

## CHANGE IN TERMS AGREEMENT
### (Continued)

Page 2

In addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Commercial Security Agreement dated January 5, 2005,executed by Borrower to Lender. Rights and obligations with respect to the collateral are stated in the security documents and by that Commercial Business Loan Agreement for Term Loans and Lines of Credit dated January 5, 2005 and by that Loan Agreement Modification Agreement dated March 28, 2006.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles and previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

### CONTINUED ON NEXT PAGE

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

HIGHWAY SOLUTIONS, L.L.C.

By: _____ (Seal)
ANNE S. MARCATO, Manager of HIGHWAY
SOLUTIONS, L.L.C.



# WHITNEY

## COMMERCIAL SECURITY AGREEMENT

REDACTED

| Grantor: | HIGHWAY SOLUTIONS, L.L.C. (TIN: ●●●●●●) <br> P.O. BOX 210445 <br> MONTGOMERY, AL 36121 | Lender: | Whitney National Bank <br> Mobile Business / Commercial Lending - Carmichael <br> P. O. Box 230714 <br> Montgomery, AL 36123-0714 |
|---|---|---|---|

THIS COMMERCIAL SECURITY AGREEMENT dated January 5, 2005, is made and executed between HIGHWAY SOLUTIONS, L.L.C. ("Grantor") and Whitney National Bank ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All Inventory, Chattel Paper, Accounts and General Intangibles

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Collateral unless and until such a notice is given.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

FUTURE ADVANCES. In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though Grantor may not be indebted to Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

Location of the Collateral. Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

Removal of the Collateral. Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Alabama, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Transactions Involving Collateral. Except for Inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell Inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the

ordinary course of business. A sale in the ordinary course of business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverage and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance is provided and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower has an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of collateral shall have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**FINANCING STATEMENTS. RATIFICATION OF PREFILING.** Grantor hereby ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any financing statements or amendments thereto if filed prior to the date hereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, LLC. and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, LLC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means any amounts Grantor and/or Borrower, or any one of them, owe to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, LLC. in the principal amount of $500,000.00 dated January 5, 2005, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

TERMS. THIS AGREEMENT IS DATED JANUARY 5, 2005.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

HIGHWAY SOLUTIONS, L.L.C.

By: _____ (Seal)
ANNE  S.  MARCATO,  Manager  of  HIGHWAY LENSOLUTIONS, L.L.C.

WHITNEY NATIONAL BANK

X _____
Authorized Signer

LASER PRO Lending, Ver. 5.26.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - AL  p:\CFI\LPL\E40.FC  TR-92046  PR-112

# EXHIBIT "3"



**WHITNEY**

# COMMERCIAL GUARANTY

REDACTED

| Borrower: | HIGHWAY SOLUTIONS, L.L.C. (TIN: ████) | Lender: | Whitney National Bank |
|---|---|---|---|
| | P.O. BOX 210445 | | Mobile Business / Commercial Lending - Carmichael |
| | MONTGOMERY, AL 36121 | | P. O. Box 220714 |
| | | | Montgomery, AL 36123-0714 |
| Guarantor: | MICHAEL C. MARCATO (SSN: ████) | | |
| | 3375 THOMAS AVENUE | | |
| | MONTGOMERY, AL 36111-1427 | | |

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, MICHAEL C. MARCATO ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Whitney National Bank ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of HIGHWAY SOLUTIONS, L.L.C. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that: (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the

## COMMERCIAL GUARANTY
### (Continued)

purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Alabama.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, L.L.C. and includes all co-signers and co-makers signing the Note.

**Guarantor.** The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation MICHAEL C. MARCATO.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**COMMERCIAL GUARANTY**
**(Continued)**

Page 3

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JANUARY 6, 2005.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**GUARANTOR:**

X _____ (Seal)
**MICHAEL C. MARCATO**

LASER PRO Lending, Ver. 5.25.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - AL s\CFI\LP\E20.FC TR-22074E PR-142

# EXHIBIT "4"

 **WHITNEY**

## COMMERCIAL GUARANTY

**Borrower:** HIGHWAY SOLUTIONS, L.L.C. (TIN: ▓▓▓▓▓)
P.O. BOX 210445
MONTGOMERY, AL 36121

**Lender:** Whitney National Bank
Mobile Multiplex / Commercial Lending - Carmichael
P. O. Box 220714
Montgomery, AL 36123-0714

**Guarantor:** ANNE S. MARCATO (SSN: ▓▓▓▓▓)
P.O. BOX 210445
MONTGOMERY, AL 36121-0445

**AMOUNT OF GUARANTY. The amount of this Guaranty is Unlimited.**

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, ANNE S. MARCATO ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Whitney National Bank ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of HIGHWAY SOLUTIONS, L.L.C. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft Indebtedness, credit card Indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all of Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under the Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

## COMMERCIAL GUARANTY
### (Continued)

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Alabama.**

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, L.L.C. and includes all co-signers and co-makers signing the Note.

**Guarantor.** The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation ANNE S. MARCATO.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

**COMMERCIAL GUARANTY**
(Continued)

Page 3

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JANUARY 5, 2005.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:

X _____ (Seal)
ANNE S. MARCATO

LASER PRO Lending, Ver. 5.25.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - AL  s:\CFI\LPL\E20.FC  TR-292746  PR-162

# EXHIBIT "5"

REDACTED

JAN 1 1 2005

For Ban'    Only
Date Received:    1/20/05
Branch & Account #:
Received By:

## WHITNEY NATIONAL BANK
## DEPOSIT ACCOUNT RESOLUTIONS AND AUTHORIZATIONS

RESOLVED that Whitney National Bank ("Bank") is hereby designated as an authorized depository of **HIGHWAY SOLUTIONS, LLC.** (the "Company"), which hereby authorizes the following individuals each acting alone, unless specifically indicated below that a combination of signatures is required (the "Agent", whether one or more)

Anne S. Marcato

Michael C. Marcato

(Use the blank space to list the names of the individuals authorized to sign and spcify the combination, if any, of signatures required to withdraw funds)

to act on behalf of, in the name and for the account of the Company, to open and maintain with Bank one or more checking, savings, or other deposit accounts; and in its name to sign such signature cards, applications, deposit agreements, and forms as the Agent shall deem appropriate from time to time, including, authorizations to apply funds and other property against obligations of the Company to Bank; to sign checks, drafts, instruments, bills of exchange, acceptances, or other orders for the payment of money from all deposit accounts at Bank in the name of or under the control of the Company; to deposit and/or endorse checks, instruments, bills, drafts, certificates of deposit, bonds or other instruments, evidences of indebtedness, whether negotiable or non-negotiable and orders payable to, owned or held by the Company; to accept drafts, acceptances, instruments and/or other evidences of indebtedness payable at or through Bank, to waive presentment, demand, protest and notice of protest or dishonor of any checks, instruments, drafts, acceptances, instruments or other evidences of indebtedness made, drawn or indorsed by this entity; to withdraw funds from said account(s) by written or oral order or request; and otherwise to deal with Bank in connection with the foregoing activities; to purchase certificates of deposits, bonds, notes, and other such savings instruments from Bank in the name and on behalf of the Company.

RESOLVED FURTHER that the opening and maintaining of the above Company's accounts and all transactions in connection therewith shall be governed by the Rules and Regulations Governing Deposit Accounts of Bank as they may be amended from time to time, by all applicable federal, state and local laws, and by such other rules and regulations as Bank shall, from time to time, promulgate and establish and all agreements embodied in deposit contracts, deposit slips, passbooks and any documents relating to the deposit of funds with Bank.

RESOLVED FURTHER, Agent is hereby authorized to obtain in the name and on behalf of the Company other related services from Bank, such as the rental of safe deposit boxes, obtaining of night depository services, and the like. The rendering of such services by Bank shall be governed by the "night depository agreement(s)", "safe deposit rental contract", and any other such agreement(s) contained on the application or signature cards pertaining to any such services offered to the Company by Bank, as amended from time to time. The Agent is further authorized to sign and execute in the name and on behalf of the Company such signature cards, applications and forms as Bank shall deem appropriate from time to time, in connection with the opening and maintaining of such account(s) and/or obtaining of such additional related services.

RESOLVED FURTHER, endorsements for deposits may be evidenced merely by the name of the Company being written or stamped on the instrument deposited, without designation of the party making the endorsement and Bank is hereby authorized to honor, receive, certify, and/or pay all of the instruments or evidences of indebtedness, checks, drafts, and other items enumerated or described herein even though drawn or endorsed to bearer or to the order, individually. of the Agent signing the same or tendered for cashing or in payment of the individual obligations of such Agent, or for deposit into the Agent's personal account; and Bank shall not be expected, required or under any obligation to inquire as to the circumstances of the issuance or use of any document or item signed or endorsed in accordance with the foregoing paragraphs or the application or disposition of such documents or items or the proceeds thereof.

RESOLVED FURTHER that any and all transaction by any officers, representatives, employees or agents of the Company on its behalf and in its name with Bank prior to delivery of an original or certified copy of the foregoing, are hereby ratified, confirmed and adopted, and that Bank shall be entitled to rely on the authority of the Agent designated above until Bank has been expressly notified in writing to the contrary by Company.

In witness whereof a duly authorized representative or representatives of the Company has/have subscribed his/their names on the reverse hereof.

CERTIFICATE (Corporation)

The undersigned hereby certifies that he/she is the Secretary of _____ (the "Company" referred to on the reverse), a corporation or not-for profit corporation duly organized and existing under the laws of the State of _____ and that the foregoing is a true copy of the Resolutions duly and unanimously adopted by the Board of Directors or Trustees of the Company at a meeting duly held, at which a quorum was present and acting throughout, or by appropriate written consent, and that such Resolutions are in full force and effect, and that there is no limitation of any kind upon the power of that body to enter into the foregoing resolutions or agreement.

In witness whereof, I have hereunto set my hand as Secretary of the Company, and have affixed hereto the official seal of the Company on this _____ day of _____, _____.

_____
Secretary or Assistant Secretary

(SEAL) Attest

_____          _____
(President's or second attesting officer's signature)    (required if Secretary or Assistant Secretary signing above is designated as an Agent)

CERTIFICATE (Sole Proprietorship)

I am the sole owner of the unincorporated business conducted under the trade name of _____ _____ (the "Company" referred to on the reverse), and desire to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement.

_____          _____
Signature                                  Date

CERTIFICATE (Partnership/Joint Venture/Limited Liability Company)

The undersigned certify on this **5th** day of **January, 2005** that they are (i) the sole partners, owners, members or joint venturers of the business or joint venture conducted under the name of **Highway 9 Outfitters LLC** _____, the ("Company" referred to on the reverse), or (ii) the managing partners, managers or certifying officials required by the Company's articles of organization or partnership agreement to transact the business of the Company or to certify as to the authority of others to act on the Company's behalf, that the Company is organized under the laws of the State of **AL.**, and that the Company, through the undersigned, desires to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement.

Partner/Member/Manager

_Anne S. Marcato_
By: **Anne Marcato**
Its: **Member**

Partner/Member/Manager

By:
Its:

Partner/Member/Manager

By:
Its:

Partner/Member/Manager

By:
Its:

CERTIFICATE (Trust, Unincorporated Association, Club or Organization)

The undersigned certifies on this _____ day of _____, _____ that he is/they are the _____ (and) _____, of _____ (the "Company" referred to on the reverse), a(n) _____ (type of organization); and that this Company desires to establish certain business relationships with Whitney National Bank, in accordance with the foregoing agreement.

_____          _____
(Signature)                                (Title)

_____          _____
(Signature)                                (Title)

CERTIFICATE (County, Parish, Municipality, Public Board, Political or Public Corporation, Subdivision, or Taxing District)

The undersigned certifies on this _____ day of _____, _____ that he/she is the _____ _____, an officer or duly authorized official of the _____ a(n) _____ (the "Company" referred to on the reverse) created under or by the constitution and laws of the State of _____, and that the foregoing is a true copy of Resolutions duly and unanimously adopted in accordance with the rules and regulations governing the Company, as authorized pursuant to _____, and that such Resolutions are in full force and effect, and that there is no limitation of any kind upon the power of that body to enter into the foregoing agreement or foregoing resolutions.

_____          _____
(Signature)                                (Title)

Entity Certification  To the extent that any partners or members of the Company providing these resolutions are legal entities such as corporations, partnerships, limited liability companies or any other form of legal entity organized and existing under the laws of any State of the United States, the person executing this resolution on behalf of such entity in its capacity as a member of the Company does hereby certify to Whitney National Bank that such person is duly authorized to execute this resolution on behalf of such entity acting in its capacity as a partner or member of the Company.



**REDACTED**

**WHITNEY**

JAN 11 2005



*AUTHORIZED SIGNERS*

Branch    PERRY HILL ROAD BRANCH                                          Date    01/07/2005

Officer Code    738          Account Opened By    SUE ANN STINSON

| Account No. | Product Type | Initial Deposit |
|---|---|---|
| ▓▓▓▓▓ | Bus Edge Check&Save II | $0.00 |

Name    HIGHWAY SOLUTIONS, LLC.

Address    P O BOX 210445

City/State    MONTGOMERY, AL                                          Zip    36121

Each of the undersigned (hereinafter each referred to as the "Customer" and collectively as the "Customers") desires to establish with Whitney National Bank (hereinafter referred to as "Whitney") a deposit account bearing the above name, number and address (hereinafter referred to as this "Account") and does hereby enter into this Deposit Account Contract with Whitney (including any and all amendments hereto which may be effected from time to time in accordance with provisions hereof, hereinafter referred to as this "Deposit Account Contract").

Any One

**AUTHORIZED SIGNERS**

ANNE S MARCATO
Any one to sign

MICHAEL C MARCATO
Any one to sign

SPXXXXXXX (revised 02/99) Bank # 30          Page 1 of 1          Member FDIC





*DEPOSIT ACCOUNT CONTRACT*

Branch    **PERRY HILL ROAD BRANCH**                                    Date    **01/07/2005**

Officer Code    **738**    Account Opened By    **SUE ANN STINSON**

| Account No. | Product Type | Initial Deposit |
|---|---|---|
|  | **Bus Edge Check&Save II** | **$0.00** |

Name    **HIGHWAY SOLUTIONS, LLC.**

Address    **P O BOX 210445**

City/State    **MONTGOMERY, AL**                                    Zip    **36121**

Each of the undersigned (hereinafter each referred to as the "Customer" and collectively as the "Customers") desires to establish with Whitney National Bank (hereinafter referred to as "Whitney") a deposit account bearing the above name, number and address (hereinafter referred to as this "Account") and does hereby enter into this Deposit Account Contract with Whitney (including any and all amendments hereto which may be effected from time to time in accordance with provisions hereof, hereinafter referred to as this "Deposit Account Contract").

1. Multiple-Party Account With Right of Survivorship
IF MORE THAN ONE PARTY IS LISTED IN THE ACCOUNT TITLE WITH A PRESENT RIGHT TO DEMAND PAYMENT FROM THE ACCOUNT, THE PARTIES TO THE ACCOUNT OWN THE ACCOUNT IN PROPORTION TO THE PARTIES' NET CONTRIBUTIONS TO THE ACCOUNT. THE BANK MAY PAY ANY SUM IN THE ACCOUNT TO ANY PARTY AT ANY TIME. ON THE DEATH OF A PARTY, THE PARTY'S OWNERSHIP OF THE ACCOUNT PASSES TO THE SURVIVING PARTIES.

2. Receipt of Distributed Materials
EACH CUSTOMER ACKNOWLEDGES RECEIPT OF WHITNEY'S RULES AND REGULATIONS GOVERNING DEPOSIT ACCOUNTS BROCHURE AND DISCLOSURES & CONSUMER BANKING SERVICES OR BUSINESS BANKING GUIDE BROCHURE.

EACH CUSTOMER HEREBY DECLARES, STATES, ACKNOWLEDGES AND CERTIFIES THAT THE CUSTOMER HAS RECEIVED THE DISTRIBUTED MATERIALS, WILL REVIEW THE DISTRIBUTED MATERIALS, AND HEREBY AGREES TO BE BOUND AND OBLIGATED BY ALL THE TERMS AND CONDITIONS OF SUCH

3. Entirety of the Agreement
All of the Distributed Materials listed above in this Deposit Account Contract, all signature cards for this Account, and all written powers of attorney, resolutions, by-laws or other evidence of authority and power now or hereafter delivered to Whitney, in form and substance acceptable to Whitney, by any one or more of the Customers hereto are expressly made a part of and incorporated herein.

Except with respect to any one or more written agreements, now existing or hereafter arising between Whitney and any one or more Customers, whether solely with such Customer or Customers or with other persons or entities, each Customer agrees that this Deposit Account Contract is the complete and exclusive statement of the agreement between Whitney and each Customer as to this Account.

4. ATM/VISA CHECK CARD INFORMATION:

The following account(s) have been added to the customers ATM/Visa cards:

REDACTED

_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____

5. Certification of Tax I.D. and Backup Withholding

The social security number or employer identification number (often referred to as your Tax Identification Number ("TIN")) for this account is [REDACTED]

Tax Liability Name     **HIGHWAY SOLUTIONS, LLC.**

Under penalties of perjury, the Customer whose TIN is stated above (the "Taxpayer") certifies that 1) the number stated above is correct (or the Customer is waiting for a number to be issued to the Customer); and 2) the Taxpayer is not subject to backup Withholding either because (a) the Taxpayer is exempt from backup withholding, or (b) the Taxpayer has not been notified by the Internal Revenue Service (IRS) that the Taxpayer is subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified the Taxpayer that the Taxpayer is no longer subject to backup withholding; and 3) the Depositor is a U.S. person (including a U.S. Resident Alien).

CERTIFICATION INSTRUCTIONS - The Customer must cross out item (2) above if the Customer has been notified by the IRS that the Customer is currently subject to backup withholding because of underreporting interest or dividends on the Customer's tax return.

*Anne S Marcato*
TIN and Backup Withholding Certification Signature

**CUSTOMER SIGNATURE:**

*Anne S Marcato*
ANNE S MARCATO

Any one to sign



WHITNEY ~REDACTED~

*DEPOSIT ACCOUNT CONTRACT*
*Addendum*

Bank **20**  Branch   **PERRY HILL ROAD BRANCH**                    Date    01/07/2005

Officer Code   **738**      Account Opened By   **SUE ANN STINSON**

| Account No. | Product Type | Initial Deposit |
|---|---|---|
| ~REDACTED~ | Bus Edge Check&Save II | $0.00 |

Name    **HIGHWAY SOLUTIONS, LLC.**

Address   **P O BOX 210445**

City/State   **MONTGOMERY, AL**                              Zip    **36121**

FIRST CUSTOMER'S NAME: **ANNE S MARCATO**
Address: _____ ~REDACTED~

~REDACTED~, AL 36111
Employment or Kind of Business: **SELF EMPLOYED**
Customer Identification: ~REDACTED~
Telephone Numbers: Home ~REDACTED~  Business **(000) 000-0000** Ext **0000**  Day Phone( )  -
SSN or TIN ~REDACTED~            Date of Birth ~REDACTED~     Decision Power Code_____
Decision Power Override: _____ Yes _____ No  Reason:_____

Code_____
*ONLINE BANKING INFORMATION:*      Access Code: _____   Access Code Type:_____
Enrollment Account:_____                        Promotional Flag:_____
Email Address:_____
SECOND CUSTOMER'S NAME: **HIGHWAY SOLUTIONS, LLC.**
Address: ___ **579 D OLIVER RD**

___ **MONTGOMERY, AL 36117**
Employment or Kind of Business: **DEVELOP PROPERTY**
Customer Identification: _____
Telephone Numbers: Home ( )  -      Business **(334) 279-8267** Ext **0000**  Day Phone: ( )  -
SSN or TIN: **73-1630489**        Date of Birth: ___ ___     Decision Power Code _____
Decision Power Override: _____ Yes _____ No  Reason:_____

Code _____
*ONLINE BANKING INFORMATION:*      Access Code:_____     Access Code Type:_____
Enrollment Account:_____ -                         Promotional Flag:_____
Email Address:_____

THIRD CUSTOMER'S NAME: _____

Address: _____

_____

_____

Employment or Kind of Business: _____

Customer Identification: _____

Telephone Numbers:  Home( )  -  Business( )  -  Ext  Day Phone: ( )  -

SSN or TIN: _____  Date of Birth:  / /  Decision Power Code _____

Decision Power Override: _____ Yes _____ No  Reason: _____

_____  Code_____

*ONLINE BANKING INFORMATION:*  Access Code: _____  Access Code Type: _____

Enrollment Account: _____  Promotional Flag: _____

Email Address: _____

FOURTH CUSTOMER'S NAME: _____

Address: _____

_____

_____

Employment or Kind of Business: _____

Customer Identification: _____

Telephone Numbers:  Home ( )  -  Business ( )  -  Ext  Day Phone:( )  -

SSN or TIN: _____  Date of Birth:  / /  Decision Power Code _____

Decision Power Override: _____ Yes _____ No  Reason: _____

_____  Code_____

*ONLINE BANKING INFORMATION:*  Access Code: _____  Access Code Type: _____

Enrollment Account: _____  Promotional Flag: _____

Email Address: _____

SPECIAL INSTRUCTIONS/REMARKS:

_____

_____

_____

_____

SOURCE OF FUNDS:

| | | |
|---|---|---|
| Account: ███████████ | Source: | Other Bank/S & L |
| Account: _____ | Source: | _____ |
| Account: _____ | Source: | _____ |
| Account: _____ | Source: | _____ |
| Account: _____ | Source: | _____ |

ACCOUNT LAST KEPT WITH:

NA

RELATED BUSINESS OWNER ACCOUNT NUMBER:

_____

REDACTED

| For Bank Use Only  01/07/2005 | Date Received: |
|---|---|
| Branch & Acct.#: **182**    720491673 | Received by: |



**WHITNEY.**

STATEMENT PERIOD

Jan 01, 2007 TO
Jan 31, 2007

491      32            182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page    1 of    8

---

BUSINESS CHECKING          HIGHWAY SOLUTIONS

---

| BALANCE LAST STATEMENT | DEPOSITS & CREDITS NO. | TOTAL AMOUNT | CHECKS & DEBITS NO. | TOTAL AMOUNT | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|
| 453,117.39 | 22 | 956,835.49 | 530 | 1,451,767.44 | 41,814.56- |

Credits

| Date | Amount | Description | | |
|---|---|---|---|---|
| Jan 04 | 159,641.35 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 05 | 6,629.89 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 08 | 101,027.06 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 09 | 38,182.01 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 10 | 63,250.00 | REGULAR DEPOSIT | | |
| Jan 12 | 100,000.00 | REGULAR DEPOSIT | | |
| Jan 12 | 41,605.97 | RETURNED CHECK | 0000008115 | |
| Jan 12 | 623.65 | RETURNED CHECK | 0000008209 | |
| Jan 12 | 392.30 | RETURNED CHECK | 0000008214 | |
| Jan 12 | 267.24 | RETURNED CHECK | 0000008210 | |
| Jan 12 | 57.95 | RETURNED CHECK | 0000008178 | |
| Jan 17 | 39,590.27 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 18 | 50,000.00 | REGULAR DEPOSIT | | |
| Jan 18 | 11,023.35 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 19 | 12,250.00 | REGULAR DEPOSIT | | |
| Jan 22 | 35,000.00 | REGULAR DEPOSIT | | |
| Jan 22 | 7,713.13 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 24 | 199,637.48 | REGULAR DEPOSIT | | |
| Jan 24 | 6,217.35 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 26 | 50,141.53 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 29 | 10,240.44 | TRANSFER CREDIT | SWEEP CREDIT | |
| Jan 30 | 23,344.52 | TRANSFER CREDIT | SWEEP CREDIT | |

Checks
Paid

| Date | Check No. | Amount | Date | Check No. | Amount |
|---|---|---|---|---|---|
| Jan 03 | 0 | 55,499.14 | Jan 02 | 8023 | 5,390.54 |
| Jan 08 | 6977 * | 21,277.77 | Jan 10 | 8031 * | 19,896.00 |
| Jan 08 | 7761 * | 711.97 | Jan 04 | 8037 * | 329.75 |
| Jan 03 | 7870 * | 214.88 | Jan 02 | 8038 | 287.82 |
| Jan 03 | 7901 * | 645.60 | Jan 05 | 8039 | 742.78 |
| Jan 05 | 7922 * | 393.57 | Jan 03 | 8040 | 193.69 |
| Jan 05 | 7941 * | 348.10 | Jan 02 | 8041 | 1,133.23 |
| Jan 03 | 7964 * | 290.22 | Jan 03 | 8042 | 258.80 |
| Jan 02 | 8015 * | 256.68 | Jan 03 | 8043 | 273.12 |
| Jan 09 | 8022 * | 11,575.14 | Jan 02 | 8044 | 548.09 |

---



**WHITNEY.**

491    32              182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   2 of   8

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Jan 03 | 8045 | 301.85 | Jan 03 | 8097 | 284.96 |
| Jan 03 | 8046 | 265.15 | Jan 03 | 8098 | 301.84 |
| Jan 03 | 8047 | 277.38 | Jan 03 | 8099 | 277.24 |
| Jan 03 | 8048 | 331.35 | Jan 02 | 8100 | 887.18 |
| Jan 02 | 8049 | 904.58 | Jan 03 | 8101 | 309.38 |
| Jan 04 | 8050 | 159.96 | Jan 03 | 8102 | 264.80 |
| Jan 03 | 8051 | 256.13 | Jan 03 | 8103 | 132.52 |
| Jan 05 | 8052 | 308.38 | Jan 02 | 8104 | 673.59 |
| Jan 08 | 8053 | 586.87 | Jan 03 | 8105 | 323.25 |
| Jan 03 | 8054 | 200.19 | Jan 03 | 8106 | 298.50 |
| Jan 03 | 8055 | 273.12 | Jan 03 | 8107 | 352.16 |
| Jan 03 | 8056 | 183.43 | Jan 03 | 8108 | 331.77 |
| Jan 03 | 8057 | 211.47 | Jan 02 | 8111 * | 29,876.75 |
| Jan 03 | 8058 | 593.35 | Jan 04 | 8112 | 13,726.00 |
| Jan 02 | 8059 | 488.75 | Jan 08 | 8114 * | 37,518.46 |
| Jan 03 | 8060 | 488.18 | Jan 11 | 8115 | 41,605.97 |
| Jan 03 | 8061 | 279.83 | Jan 18 | 8115 | 41,605.97 |
| Jan 03 | 8062 | 232.03 | Jan 02 | 8116 | 20,000.00 |
| Jan 03 | 8063 | 373.02 | Jan 02 | 8117 | 6,109.82 |
| Jan 03 | 8064 | 326.05 | Jan 04 | 8118 | 4,161.92 |
| Jan 02 | 8065 | 774.80 | Jan 08 | 8120 * | 25,054.08 |
| Jan 02 | 8066 | 373.19 | Jan 09 | 8121 | 51,468.62 |
| Jan 03 | 8067 | 292.32 | Jan 02 | 8122 | 13,926.38 |
| Jan 18 | 8068 | 196.25 | Jan 05 | 8123 | 1,550.42 |
| Jan 03 | 8070 * | 225.48 | Jan 02 | 8124 | 30,000.00 |
| Jan 10 | 8071 | 373.19 | Jan 08 | 8127 * | 290.59 |
| Jan 03 | 8072 | 277.08 | Jan 05 | 8128 | 266.62 |
| Jan 02 | 8073 | 461.29 | Jan 09 | 8129 | 742.77 |
| Jan 02 | 8074 | 396.94 | Jan 08 | 8130 | 230.85 |
| Jan 03 | 8075 | 445.22 | Jan 08 | 8131 | 1,133.24 |
| Jan 03 | 8077 * | 273.12 | Jan 08 | 8132 | 232.65 |
| Jan 02 | 8078 | 706.30 | Jan 09 | 8133 | 242.41 |
| Jan 03 | 8079 | 318.91 | Jan 08 | 8134 | 548.09 |
| Jan 03 | 8080 | 1,002.87 | Jan 10 | 8135 | 338.78 |
| Jan 02 | 8081 | 378.84 | Jan 08 | 8136 | 296.32 |
| Jan 04 | 8082 | 861.47 | Jan 09 | 8137 | 238.99 |
| Jan 02 | 8083 | 397.84 | Jan 08 | 8138 | 286.74 |
| Jan 02 | 8084 | 372.61 | Jan 08 | 8139 | 904.58 |
| Jan 03 | 8085 | 270.75 | Jan 08 | 8141 * | 230.54 |
| Jan 02 | 8086 | 372.60 | Jan 05 | 8142 | 235.95 |
| Jan 03 | 8087 | 628.10 | Jan 10 | 8143 | 586.87 |
| Jan 03 | 8088 | 338.40 | Jan 08 | 8144 | 238.99 |
| Jan 03 | 8089 | 301.85 | Jan 08 | 8145 | 242.41 |
| Jan 02 | 8090 | 372.32 | Jan 05 | 8146 | 194.21 |
| Jan 02 | 8091 | 372.59 | Jan 26 | 8147 | 304.52 |
| Jan 03 | 8092 | 411.89 | Jan 09 | 8148 | 263.28 |
| Jan 03 | 8093 | 220.84 | Jan 08 | 8149 | 429.15 |
| Jan 03 | 8094 | 238.27 | Jan 08 | 8150 | 448.07 |
| Jan 03 | 8095 | 335.10 | Jan 08 | 8151 | 446.71 |
| Jan 03 | 8096 | 244.67 | Jan 09 | 8152 | 320.58 |



**WHITNEY.**

STATEMENT PERIOD

Jan 01, 2007 TO
Jan 31, 2007

```
   491     32              182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445
```

REDACTED

Page   3 of   8

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Jan 08 | 8153 | 208.31 | Jan 08 | 8202 | 230.54 |
| Jan 09 | 8154 | 465.44 | Jan 08 | 8203 | 317.61 |
| Jan 08 | 8155 | 259.08 | Jan 08 | 8204 | 173.00 |
| Jan 18 | 8156 | 466.89 | Jan 08 | 8205 | 342.36 |
| Jan 08 | 8157 | 774.80 | Jan 08 | 8206 | 215.86 |
| Jan 10 | 8158 | 267.48 | Jan 08 | 8208 * | 536.00 |
| Jan 08 | 8159 | 329.26 | Jan 11 | 8209 | 623.65 |
| Jan 08 | 8160 | 366.58 | Jan 18 | 8209 | 623.65 |
| Jan 05 | 8161 | 681.93 | Jan 11 | 8210 | 267.24 |
| Jan 08 | 8162 | 238.72 | Jan 18 | 8210 | 267.24 |
| Jan 10 | 8163 | 267.48 | Jan 12 | 8211 | 174.25 |
| Jan 08 | 8164 | 270.47 | Jan 12 | 8212 | 240.00 |
| Jan 10 | 8165 | 170.26 | Jan 10 | 8213 | 720.00 |
| Jan 05 | 8166 | 417.21 | Jan 11 | 8214 | 392.30 |
| Jan 05 | 8167 | 557.41 | Jan 16 | 8215 | 57.00 |
| Jan 05 | 8168 | 259.72 | Jan 18 | 8216 | 108.25 |
| Jan 08 | 8169 | 379.70 | Jan 17 | 8218 * | 282.15 |
| Jan 17 | 8170 | 500.00 | Jan 16 | 8219 | 217.81 |
| Jan 09 | 8171 | 242.41 | Jan 19 | 8220 | 742.78 |
| Jan 08 | 8172 | 706.30 | Jan 17 | 8221 | 257.59 |
| Jan 09 | 8173 | 371.93 | Jan 16 | 8222 | 1,133.22 |
| Jan 09 | 8174 | 1,002.86 | Jan 17 | 8223 | 210.36 |
| Jan 09 | 8175 | 274.68 | Jan 17 | 8224 | 216.57 |
| Jan 10 | 8176 | 143.19 | Jan 16 | 8225 | 548.09 |
| Jan 08 | 8177 | 578.91 | Jan 17 | 8226 | 271.34 |
| Jan 11 | 8178 | 57.95 | Jan 17 | 8227 | 269.26 |
| Jan 17 | 8178 | 57.95 | Jan 17 | 8228 | 219.18 |
| Jan 09 | 8179 | 266.90 | Jan 17 | 8229 | 262.64 |
| Jan 08 | 8180 | 232.76 | Jan 16 | 8230 | 904.58 |
| Jan 10 | 8181 | 266.90 | Jan 17 | 8231 | 265.50 |
| Jan 08 | 8182 | 628.10 | Jan 17 | 8232 | 153.06 |
| Jan 09 | 8183 | 309.60 | Jan 19 | 8233 | 586.87 |
| Jan 09 | 8184 | 271.35 | Jan 17 | 8234 | 148.69 |
| Jan 10 | 8185 | 266.62 | Jan 26 | 8235 | 275.98 |
| Jan 10 | 8186 | 266.90 | Jan 17 | 8236 | 221.19 |
| Jan 09 | 8187 | 365.58 | Jan 16 | 8237 | 361.55 |
| Jan 08 | 8188 | 402.41 | Jan 17 | 8238 | 413.53 |
| Jan 09 | 8189 | 201.11 | Jan 17 | 8239 | 433.27 |
| Jan 08 | 8190 | 298.16 | Jan 17 | 8240 | 311.30 |
| Jan 08 | 8191 | 220.94 | Jan 17 | 8241 | 240.79 |
| Jan 08 | 8192 | 331.60 | Jan 17 | 8242 | 466.33 |
| Jan 09 | 8193 | 271.35 | Jan 17 | 8243 | 271.92 |
| Jan 09 | 8194 | 248.45 | Jan 16 | 8244 | 774.81 |
| Jan 10 | 8195 | 887.18 | Jan 16 | 8245 | 204.23 |
| Jan 08 | 8196 | 278.38 | Jan 23 | 8246 | 297.13 |
| Jan 08 | 8197 | 236.08 | Jan 18 | 8247 | 180.97 |
| Jan 08 | 8198 | 241.11 | Jan 17 | 8248 | 520.96 |
| Jan 05 | 8199 | 673.59 | Jan 16 | 8249 | 248.64 |
| Jan 09 | 8200 | 280.77 | Jan 16 | 8250 | 218.50 |
| Jan 08 | 8201 | 416.55 | Jan 17 | 8251 | 140.72 |



# WHITNEY.

STATEMENT PERIOD

Jan 01, 2007 TO
Jan 31, 2007

491     32          182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL   36121-0445

REDACTED

Page   4 of   8

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Jan 18 | 8252 | 392.19 | Jan 17 | 8303 | 60.00 |
| Jan 16 | 8253 | 267.98 | Jan 17 | 8304 | 60.00 |
| Jan 16 | 8254 | 197.94 | Jan 18 | 8305 | 60.00 |
| Jan 17 | 8255 | 400.21 | Jan 16 | 8306 | 60.00 |
| Jan 25 | 8256 | 500.01 | Jan 22 | 8307 | 60.00 |
| Jan 17 | 8257 | 216.57 | Jan 17 | 8308 | 60.00 |
| Jan 17 | 8258 | 706.30 | Jan 16 | 8309 | 20.00 |
| Jan 17 | 8259 | 346.22 | Jan 16 | 8310 | 380.00 |
| Jan 16 | 8260 | 1,002.87 | Jan 18 | 8311 | 5,180.00 |
| Jan 17 | 8261 | 229.53 | Jan 16 | 8314 * | 7,500.00 |
| Jan 16 | 8262 | 744.51 | Jan 17 | 8315 | 2,277.02 |
| Jan 17 | 8263 | 412.11 | Jan 22 | 8316 | 109.10 |
| Jan 24 | 8264 | 218.04 | Jan 17 | 8317 | 21,708.52 |
| Jan 17 | 8265 | 215.61 | Jan 22 | 8318 | 431.20 |
| Jan 16 | 8266 | 218.04 | Jan 24 | 8319 | 202.05 |
| Jan 18 | 8267 | 628.11 | Jan 24 | 8320 | 377.55 |
| Jan 17 | 8268 | 285.35 | Jan 22 | 8321 | 452.29 |
| Jan 17 | 8269 | 245.66 | Jan 23 | 8322 | 742.77 |
| Jan 16 | 8270 | 178.58 | Jan 22 | 8324 * | 1,133.24 |
| Jan 16 | 8271 | 218.04 | Jan 23 | 8325 | 224.33 |
| Jan 17 | 8272 | 336.71 | Jan 23 | 8326 | 282.82 |
| Jan 17 | 8273 | 360.98 | Jan 19 | 8327 | 548.09 |
| Jan 17 | 8274 | 249.54 | Jan 23 | 8328 | 268.13 |
| Jan 17 | 8275 | 276.74 | Jan 23 | 8329 | 194.86 |
| Jan 17 | 8276 | 253.42 | Jan 23 | 8330 | 148.69 |
| Jan 17 | 8277 | 293.16 | Jan 22 | 8331 | 904.58 |
| Jan 17 | 8278 | 245.66 | Jan 23 | 8332 | 268.16 |
| Jan 17 | 8279 | 224.18 | Jan 19 | 8333 | 326.84 |
| Jan 16 | 8280 | 887.17 | Jan 23 | 8334 | 586.87 |
| Jan 17 | 8281 | 255.26 | Jan 23 | 8335 | 277.38 |
| Jan 17 | 8282 | 211.92 | Jan 23 | 8336 | 268.28 |
| Jan 17 | 8283 | 281.04 | Jan 19 | 8337 | 330.43 |
| Jan 16 | 8284 | 673.60 | Jan 23 | 8338 | 214.71 |
| Jan 17 | 8285 | 199.49 | Jan 22 | 8339 | 762.88 |
| Jan 16 | 8286 | 199.29 | Jan 29 | 8340 | 433.09 |
| Jan 17 | 8287 | 208.75 | Jan 23 | 8341 | 397.39 |
| Jan 17 | 8288 | 284.71 | Jan 23 | 8342 | 260.71 |
| Jan 16 | 8289 | 145.76 | Jan 23 | 8343 | 158.37 |
| Jan 17 | 8290 | 276.50 | Jan 23 | 8344 | 536.00 |
| Jan 16 | 8291 | 162.54 | Jan 23 | 8345 | 321.22 |
| Jan 17 | 8292 | 200.28 | Jan 25 | 8346 | 559.17 |
| Jan 17 | 8293 | 158.46 | Jan 22 | 8347 | 774.80 |
| Jan 17 | 8295 * | 60.00 | Jan 22 | 8348 | 457.05 |
| Jan 17 | 8296 | 60.00 | Jan 23 | 8349 | 236.15 |
| Jan 18 | 8297 | 60.00 | Jan 22 | 8350 | 510.21 |
| Jan 18 | 8298 | 60.00 | Jan 22 | 8351 | 211.94 |
| Jan 17 | 8299 | 60.00 | Jan 22 | 8352 | 457.03 |
| Jan 18 | 8300 | 60.00 | Jan 23 | 8353 | 217.85 |
| Jan 17 | 8301 | 60.00 | Jan 19 | 8354 | 71.73 |
| Jan 17 | 8302 | 60.00 | Jan 24 | 8355 | 502.60 |



STATEMENT PERIOD

Jan 01, 2007 TO
Jan 31, 2007

WHITNEY.

491      32          182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   5 of   8

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Jan 22 | 8356 | 278.72 | Jan 22 | 8409 | 100.00 |
| Jan 23 | 8357 | 436.00 | Jan 25 | 8418 * | 30.66 |
| Jan 23 | 8359 * | 210.09 | Jan 22 | 8421 * | 410.00 |
| Jan 22 | 8360 | 706.30 | Jan 23 | 8422 | 3,785.59 |
| Jan 23 | 8361 | 357.99 | Jan 23 | 8423 | 10,000.00 |
| Jan 23 | 8362 | 1,002.86 | Jan 26 | 8424 | 15,000.00 |
| Jan 23 | 8363 | 389.25 | Jan 26 | 8425 | 1,029.60 |
| Jan 22 | 8364 | 1,255.85 | Jan 29 | 8426 | 34.89 |
| Jan 22 | 8365 | 440.61 | Jan 31 | 8427 | 59.10 |
| Jan 23 | 8367 * | 206.53 | Jan 30 | 8429 * | 77.24 |
| Jan 22 | 8368 | 456.45 | Jan 31 | 8432 * | 950.00 |
| Jan 23 | 8369 | 628.10 | Jan 30 | 8433 | 1,409.35 |
| Jan 23 | 8370 | 308.08 | Jan 29 | 8434 | 126.90 |
| Jan 23 | 8371 | 374.10 | Jan 30 | 8435 | 159.12 |
| Jan 22 | 8372 | 382.79 | Jan 31 | 8436 | 124.96 |
| Jan 22 | 8373 | 383.08 | Jan 23 | 8437 | 364.13 |
| Jan 23 | 8374 | 424.50 | Jan 29 | 8438 | 160.80 |
| Jan 23 | 8375 | 469.56 | Jan 29 | 8439 | 500.00 |
| Jan 23 | 8376 | 247.96 | Jan 26 | 8440 | 27,235.00 |
| Jan 23 | 8377 | 345.81 | Jan 31 | 8441 | 4,000.00 |
| Jan 23 | 8378 | 80.80 | Jan 24 | 8442 | 50,000.00 |
| Jan 23 | 8379 | 266.83 | Jan 26 | 8443 | 5,258.10 |
| Jan 23 | 8380 | 250.84 | Jan 31 | 8444 | 288.62 |
| Jan 23 | 8381 | 304.56 | Jan 31 | 8445 | 506.76 |
| Jan 22 | 8382 | 887.19 | Jan 29 | 8446 | 319.63 |
| Jan 23 | 8383 | 324.24 | Jan 31 | 8447 | 742.78 |
| Jan 23 | 8384 | 277.73 | Jan 31 | 8448 | 1,113.24 |
| Jan 23 | 8385 | 283.73 | Jan 30 | 8449 | 384.03 |
| Jan 22 | 8386 | 673.59 | Jan 30 | 8450 | 263.43 |
| Jan 23 | 8387 | 166.26 | Jan 29 | 8451 | 548.09 |
| Jan 23 | 8388 | 268.16 | Jan 30 | 8452 | 407.81 |
| Jan 23 | 8389 | 351.16 | Jan 30 | 8453 | 292.60 |
| Jan 22 | 8390 | 431.49 | Jan 30 | 8454 | 356.08 |
| Jan 23 | 8391 | 183.11 | Jan 30 | 8455 | 376.69 |
| Jan 18 | 8392 | 500.00 | Jan 30 | 8456 | 904.59 |
| Jan 25 | 8393 | 145.00 | Jan 30 | 8457 | 380.92 |
| Jan 23 | 8395 * | 40.00 | Jan 26 | 8458 | 315.97 |
| Jan 23 | 8396 | 100.00 | Jan 30 | 8459 | 586.87 |
| Jan 23 | 8397 | 100.00 | Jan 30 | 8460 | 341.11 |
| Jan 24 | 8398 | 100.00 | Jan 30 | 8461 | 365.25 |
| Jan 23 | 8399 | 80.00 | Jan 30 | 8462 | 267.40 |
| Jan 23 | 8400 | 80.00 | Jan 30 | 8463 | 268.13 |
| Jan 23 | 8401 | 100.00 | Jan 30 | 8464 | 415.60 |
| Jan 23 | 8402 | 100.00 | Jan 29 | 8465 | 542.26 |
| Jan 23 | 8403 | 100.00 | Jan 30 | 8466 | 528.60 |
| Jan 23 | 8404 | 100.00 | Jan 30 | 8467 | 444.48 |
| Jan 23 | 8405 | 80.00 | Jan 30 | 8468 | 355.66 |
| Jan 22 | 8406 | 100.00 | Jan 30 | 8469 | 466.67 |
| Jan 22 | 8407 | 100.00 | Jan 30 | 8470 | 282.69 |
| Jan 23 | 8408 | 100.00 | Jan 31 | 8471 | 461.55 |



WHITNEY.

491      32        182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page  6 of  8

| Date | Check No. | Amount | Date | Check No. | Amount |
|---|---|---|---|---|---|
| Jan 31 | 8472 | 774.81 | Jan 30 | 8512 | 341.86 |
| Jan 29 | 8473 | 320.47 | Jan 30 | 8513 | 336.07 |
| Jan 29 | 8475 * | 414.68 | Jan 30 | 8514 | 673.60 |
| Jan 30 | 8476 | 246.49 | Jan 30 | 8515 | 253.06 |
| Jan 30 | 8477 | 793.56 | Jan 29 | 8516 | 462.36 |
| Jan 29 | 8478 | 320.49 | Jan 30 | 8517 | 302.25 |
| Jan 30 | 8479 | 217.84 | Jan 30 | 8518 | 489.94 |
| Jan 30 | 8480 | 254.94 | Jan 29 | 8519 | 260.04 |
| Jan 31 | 8481 | 570.02 | Jan 30 | 8520 | 436.78 |
| Jan 29 | 8482 | 627.68 | Jan 29 | 8521 | 385.12 |
| Jan 29 | 8483 | 331.00 | Jan 29 | 8522 | 460.84 |
| Jan 29 | 8484 | 506.78 | Jan 30 | 8524 * | 696.66 |
| Jan 30 | 8486 * | 431.86 | Jan 31 | 8525 | 100.00 |
| Jan 29 | 8487 | 706.30 | Jan 30 | 8526 | 80.00 |
| Jan 30 | 8488 | 480.00 | Jan 30 | 8527 | 80.00 |
| Jan 31 | 8490 * | 1,002.87 | Jan 31 | 8528 | 100.00 |
| Jan 30 | 8491 | 326.76 | Jan 30 | 8529 | 80.00 |
| Jan 29 | 8492 | 1,274.93 | Jan 30 | 8531 * | 100.00 |
| Jan 30 | 8493 | 525.16 | Jan 30 | 8532 | 100.00 |
| Jan 29 | 8494 | 319.91 | Jan 30 | 8533 | 100.00 |
| Jan 31 | 8495 | 343.53 | Jan 30 | 8534 | 100.00 |
| Jan 29 | 8496 | 319.91 | Jan 30 | 8535 | 123.87 |
| Jan 30 | 8497 | 628.11 | Jan 31 | 8536 | 111.07 |
| Jan 30 | 8498 | 335.38 | Jan 29 | 8537 | 100.00 |
| Jan 30 | 8499 | 470.42 | Jan 30 | 8538 | 100.00 |
| Jan 29 | 8500 | 319.63 | Jan 30 | 8539 | 80.00 |
| Jan 29 | 8501 | 393.57 | Jan 26 | 8540 | 46.53 |
| Jan 30 | 8502 | 529.15 | Jan 29 | 8541 | 51.07 |
| Jan 30 | 8503 | 531.75 | Jan 30 | 8543 * | 198.66 |
| Jan 30 | 8504 | 360.22 | Jan 30 | 8544 | 100.00 |
| Jan 30 | 8505 | 511.69 | Jan 31 | 8545 | 25.20 |
| Jan 30 | 8506 | 315.84 | Jan 26 | 8548 * | 675.83 |
| Jan 30 | 8507 | 408.50 | Jan 25 | 8549 | 15,000.00 |
| Jan 30 | 8508 | 413.50 | Jan 31 | 8552 * | 4,222.69 |
| Jan 30 | 8509 | 313.63 | Jan 31 | 8554 * | 12,240.00 |
| Jan 30 | 8510 | 887.18 | Jan 31 | 8555 | 5,390.54 |
| Jan 30 | 8511 | 155.47 | | | |

* Indicates break in check sequence

Other
Debits

| Date | Amount | Description | | |
|---|---|---|---|---|
| Jan 02 | 305,480.31 | TRANSFER DEBIT | SWEEP DEBIT | |
| Jan 02 | 19,122.91 | DEBIT MEMO | | |
| Jan 02 | 12,551.44 | ACH DEBIT | | |
| | | PCC EQUIPMENT | | PAYMENT |
| Jan 03 | 10,000.00 | ACH DEBIT | | |
| | | JDC WEB PAY | | INTERNET P |



# WHITNEY.

491     32          182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL   36121-0445

REDACTED

Page   7 of   8

| Date | Amount | Description | | |
|------|--------|-------------|---|---|
| Jan 03 | 9,902.69 | ACH DEBIT | | |
| | | CITICAPITAL | | SMARTPAY |
| Jan 03 | 8,015.00 | ACH DEBIT | | |
| | | FLEETCOR LOCKBOX | | DEBITS |
| Jan 03 | 5,000.00 | ACH DEBIT | | |
| | | JDC WEB PAY | | INTERNET P |
| Jan 03 | 5,000.00 | ACH DEBIT | | |
| | | JDC WEB PAY | | INTERNET P |
| Jan 03 | 540.15 | ACH DEBIT | | |
| | | FARMPLAN WEB PAY | | INTERNET P |
| Jan 04 | 9,541.46 | DEBIT MEMO | | |
| Jan 04 | 8,985.20 | ACH DEBIT | | |
| | | VTFNA, INC | | LEASE/RENT |
| Jan 04 | 8,156.54 | ACH DEBIT | | |
| | | VTFNA, INC | | LEASE/RENT |
| Jan 04 | 4,091.94 | ACH DEBIT | | |
| | | VTFNA, INC | | LEASE/RENT |
| Jan 04 | 500.00 | ACH DEBIT | | |
| | | OFFICE DEPOT | | ONLINE PMT |
| Jan 08 | 384.81 | SERVICE CHARGE | ANALYSIS CHG | |
| Jan 09 | 8,015.00 | ACH DEBIT | | |
| | | FLEETCOR LOCKBOX | | DEBITS |
| Jan 10 | 310.00 | OD SERVICE CHARGE | | |
| Jan 12 | 155.00 | NSF SERVICE CHARGE | | |
| Jan 16 | 50,613.62 | TRANSFER DEBIT | SWEEP DEBIT | |
| Jan 16 | 20,914.16 | ACH DEBIT | | |
| | | CATERPILLAR | | PAYMENT |
| Jan 16 | 9,734.49 | ACH DEBIT | | |
| | | CATERPILLAR | | PAYMENT |
| Jan 17 | 905.69 | ACH DEBIT | | |
| | | MERCEDES | | PAYMENT |
| Jan 17 | 710.38 | ACH DEBIT | | |
| | | MERCEDES | | PAYMENT |
| Jan 19 | 7,713.13 | TRANSFER DEBIT | SWEEP DEBIT | |
| Jan 22 | 841.84 | ACH DEBIT | | |
| | | 1-800-200-4622 | | TRUEPAY |
| Jan 22 | 776.97 | ACH DEBIT | | |
| | | 1-800-200-4622 | | TRUEPAY |
| Jan 22 | 756.91 | ACH DEBIT | | |
| | | 1-800-200-4622 | | TRUEPAY |
| Jan 22 | 670.82 | ACH DEBIT | | |
| | | 1-800-200-4622 | | TRUEPAY |
| Jan 22 | 599.81 | ACH DEBIT | | |
| | | 1-800-200-4622 | | TRUEPAY |
| Jan 22 | 549.46 | ACH DEBIT | | |
| | | 1-800-200-4622 | | TRUEPAY |
| Jan 23 | 1,500.00 | TRANSFER DEBIT | | |
| | | TO CC -XXXXXXX9504 WE3423 | 003423 | 01/23 |
| Jan 23 | 1,500.00 | TRANSFER DEBIT | | |
| | | TO CC -XXXXXXX4545 WE3509 | 003509 | 01/23 |
| Jan 23 | 6,217.35 | TRANSFER DEBIT | SWEEP DEBIT | |



STATEMENT PERIOD

Jan 01, 2007 TO
Jan 31, 2007

491      32              182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL   36121-0445

REDACTED

Page   8 of   8

| Jan 24 | 9,902.69 | ACH DEBIT CITICAPITAL | | SMARTPAY |
|--------|----------|------------------------|-------------|----------|
| Jan 25 | 120,302.06 | TRANSFER DEBIT | SWEEP DEBIT | |
| Jan 25 | 8,015.00 | ACH DEBIT FLEETCOR LOCKBOX | | DEBITS |
| Jan 31 | 9,166.82 | DEBIT MEMO | | |

Daily
Balance
Summary

| Date | Balance | Date | Balance |
|------|---------|------|---------|
| Dec 31 | 453,117.39 | Jan 16 | 500.00 |
| Jan 02 | 500.00 | Jan 18 | 11,330.08 |
| Jan 03 | 108,627.11- | Jan 19 | 12,750.00 |
| Jan 04 | 500.00 | Jan 22 | 38,907.14 |
| Jan 09 | 38,436.63- | Jan 23 | 500.00 |
| Jan 10 | 52.52 | Jan 24 | 145,051.90 |
| Jan 11 | 42,894.59- | Jan 25 | 500.00 |
| Jan 12 | 99,483.27 | Jan 31 | 41,814.56- |



**WHITNEY.**

STATEMENT PERIOD

Feb 01, 2007 TO
Feb 28, 2007

429     32          182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   1 of   9

EFFECTIVE APRIL 15, 2007, THE NSF/OVERDRAFT CHARGE FOR ALL
PERSONAL, BUSINESS AND PUBLIC FUND ACCOUNTS IN ALABAMA
WILL BE $32 PER ITEM.  IF YOU HAVE QUESTIONS, PLEASE CALL A
WHITNEY BANKER AT 1-800-844-4450.

BUSINESS CHECKING          HIGHWAY SOLUTIONS

| BALANCE LAST STATEMENT | DEPOSITS & CREDITS NO. | TOTAL AMOUNT | CHECKS & DEBITS NO. | TOTAL AMOUNT | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|
| 41,814.56- | 57 | 1,205,416.79 | 510 | 1,163,102.23 | 500.00 |

Credits

| Date | Amount | Description | |
|---|---|---|---|
| Feb 01 | 50,000.00 | REGULAR DEPOSIT | |
| Feb 05 | 36,575.57 | CREDIT MEMO | |
| Feb 07 | 75,000.00 | REGULAR DEPOSIT | |
| Feb 07 | 50,000.00 | RETURNED CHECK | 0000008673 |
| Feb 07 | 8,890.72 | RETURNED CHECK | |
| Feb 07 | 8,015.00 | ACH NSF RETURN | |
| Feb 07 | 1,002.86 | RETURNED CHECK | 0000008606 |
| Feb 07 | 887.17 | RETURNED CHECK | 0000008626 |
| Feb 07 | 673.59 | RETURNED CHECK | 0000008630 |
| Feb 07 | 628.10 | RETURNED CHECK | 0000008613 |
| Feb 07 | 551.25 | RETURNED CHECK | 0000008605 |
| Feb 07 | 534.29 | RETURNED CHECK | 0000008582 |
| Feb 07 | 518.69 | RETURNED CHECK | 0000008618 |
| Feb 07 | 500.56 | RETURNED CHECK | 0000008585 |
| Feb 07 | 494.46 | RETURNED CHECK | 0000008561 |
| Feb 07 | 467.20 | RETURNED CHECK | 0000008598 |
| Feb 07 | 415.59 | RETURNED CHECK | 0000008580 |
| Feb 07 | 414.73 | RETURNED CHECK | 0000008623 |
| Feb 07 | 401.15 | RETURNED CHECK | 0000008587 |
| Feb 07 | 393.36 | RETURNED CHECK | 0000008615 |
| Feb 07 | 380.26 | RETURNED CHECK | 0000008583 |
| Feb 07 | 374.20 | RETURNED CHECK | 0000008590 |
| Feb 07 | 362.44 | RETURNED CHECK | 0000008631 |
| Feb 07 | 360.41 | RETURNED CHECK | 0000008602 |
| Feb 07 | 344.11 | RETURNED CHECK | 0000008629 |
| Feb 07 | 337.87 | RETURNED CHECK | 0000008628 |
| Feb 07 | 333.62 | RETURNED CHECK | 0000008570 |
| Feb 07 | 327.29 | RETURNED CHECK | 0000008625 |
| Feb 07 | 324.79 | RETURNED CHECK | 0000008633 |
| Feb 07 | 322.01 | RETURNED CHECK | 0000008624 |
| Feb 07 | 319.83 | RETURNED CHECK | 0000008595 |
| Feb 07 | 318.75 | RETURNED CHECK | 0000008620 |
| Feb 07 | 312.11 | RETURNED CHECK | 0000008622 |



429    32          182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   2 of   9

| Date | Amount | Description | |
|------|--------|-------------|---|
| Feb 07 | 305.93 | RETURNED CHECK | 0000008607 |
| Feb 07 | 299.45 | RETURNED CHECK | 0000008584 |
| Feb 07 | 298.40 | RETURNED CHECK | 0000008592 |
| Feb 07 | 266.99 | RETURNED CHECK | 0000008565 |
| Feb 07 | 258.58 | RETURNED CHECK | 0000008566 |
| Feb 07 | 252.81 | RETURNED CHECK | 0000008576 |
| Feb 07 | 216.80 | RETURNED CHECK | 0000008619 |
| Feb 07 | 200.51 | RETURNED CHECK | 0000008573 |
| Feb 07 | 142.21 | RETURNED CHECK | 0000008577 |
| Feb 07 | 120.00 | RETURNED CHECK | 0000008648 |
| Feb 07 | 100.00 | RETURNED CHECK | 0000008647 |
| Feb 07 | 80.00 | RETURNED CHECK | 0000008657 |
| Feb 07 | 40.00 | RETURNED CHECK | 0000008649 |
| Feb 09 | 216,771.76 | REGULAR DEPOSIT | |
| Feb 12 | 68,889.96 | REGULAR DEPOSIT | |
| Feb 14 | 52,347.43 | TRANSFER CREDIT | SWEEP CREDIT |
| Feb 15 | 6,817.91 | TRANSFER CREDIT | SWEEP CREDIT |
| Feb 16 | 15,621.53 | TRANSFER CREDIT | SWEEP CREDIT |
| Feb 20 | 8,959.22 | TRANSFER CREDIT | SWEEP CREDIT |
| Feb 21 | 6,731.01 | TRANSFER CREDIT | SWEEP CREDIT |
| Feb 22 | 28,000.00 | REGULAR DEPOSIT | |
| Feb 23 | 320,938.39 | REGULAR DEPOSIT | |
| Feb 27 | 145,689.15 | TRANSFER CREDIT | SWEEP CREDIT |
| Feb 28 | 91,086.83 | TRANSFER CREDIT | SWEEP CREDIT |

Checks Paid

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Feb 12 | 0 | 337.87 | Feb 05 | 8562 | 319.63 |
| Feb 21 | 8034 * | 160.80 | Feb 08 | 8563 | 742.77 |
| Feb 05 | 8323 * | 80.08 | Feb 05 | 8564 | 1,133.22 |
| Feb 08 | 8366 * | 456.45 | Feb 06 | 8565 | 266.99 |
| Feb 14 | 8420 * | 701.11 | Feb 12 | 8565 | 266.99 |
| Feb 05 | 8428 * | 12,195.00 | Feb 06 | 8566 | 258.58 |
| Feb 01 | 8430 * | 607.04 | Feb 02 | 8567 | 548.09 |
| Feb 02 | 8431 | 75.00 | Feb 05 | 8568 | 383.72 |
| Feb 02 | 8474 * | 383.84 | Feb 05 | 8569 | 134.38 |
| Feb 09 | 8474 | 383.84 | Feb 06 | 8570 | 333.62 |
| Feb 02 | 8489 * | 590.56 | Feb 12 | 8570 | 333.62 |
| Feb 05 | 8530 * | 100.00 | Feb 05 | 8571 | 191.10 |
| Feb 02 | 8542 * | 11.17 | Feb 05 | 8572 | 904.58 |
| Feb 28 | 8547 * | 13,905.00 | Feb 06 | 8573 | 200.51 |
| Feb 21 | 8550 * | 72.72 | Feb 02 | 8574 | 167.97 |
| Feb 08 | 8551 | 2,075.00 | Feb 13 | 8575 | 586.87 |
| Feb 01 | 8553 * | 20,000.00 | Feb 06 | 8576 | 252.81 |
| Feb 02 | 8556 * | 85.00 | Feb 06 | 8577 | 142.21 |
| Feb 01 | 8557 | 1,859.32 | Feb 02 | 8578 | 231.43 |
| Feb 05 | 8559 * | 235.78 | Feb 05 | 8579 | 269.13 |
| Feb 05 | 8560 | 488.80 | Feb 06 | 8580 | 415.59 |
| Feb 06 | 8561 | 494.46 | Feb 09 | 8580 | 415.59 |



429    32                182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   3 of   9

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Feb 05 | 8581 | 529.41 | Feb 12 | 8622 | 312.11 |
| Feb 06 | 8582 | 534.29 | Feb 06 | 8623 | 414.73 |
| Feb 12 | 8582 | 534.29 | Feb 09 | 8623 | 414.73 |
| Feb 06 | 8583 | 380.26 | Feb 06 | 8624 | 322.01 |
| Feb 12 | 8583 | 380.26 | Feb 12 | 8624 | 322.01 |
| Feb 06 | 8584 | 299.45 | Feb 06 | 8625 | 327.29 |
| Feb 12 | 8584 | 299.45 | Feb 09 | 8625 | 327.29 |
| Feb 06 | 8585 | 500.56 | Feb 06 | 8626 | 887.17 |
| Feb 09 | 8585 | 500.56 | Feb 05 | 8627 | 394.63 |
| Feb 05 | 8586 | 375.29 | Feb 06 | 8628 | 337.87 |
| Feb 06 | 8587 | 401.15 | Feb 06 | 8629 | 344.11 |
| Feb 05 | 8588 | 774.80 | Feb 06 | 8630 | 673.59 |
| Feb 05 | 8589 | 320.49 | Feb 06 | 8631 | 362.44 |
| Feb 06 | 8590 | 374.20 | Feb 05 | 8632 | 353.56 |
| Feb 09 | 8590 | 374.20 | Feb 06 | 8633 | 324.73 |
| Feb 05 | 8591 | 280.68 | Feb 05 | 8634 | 323.15 |
| Feb 06 | 8592 | 298.40 | Feb 05 | 8635 | 168.01 |
| Feb 09 | 8592 | 298.40 | Feb 05 | 8636 | 427.27 |
| Feb 07 | 8593 | 550.96 | Feb 05 | 8637 | 263.76 |
| Feb 08 | 8594 | 320.49 | Feb 05 | 8638 | 394.55 |
| Feb 06 | 8595 | 319.83 | Feb 05 | 8641 * | 80.00 |
| Feb 09 | 8595 | 319.83 | Feb 05 | 8642 | 100.00 |
| Feb 08 | 8596 | 229.60 | Feb 05 | 8643 | 120.00 |
| Feb 07 | 8597 | 511.78 | Feb 07 | 8644 | 100.00 |
| Feb 06 | 8598 | 467.20 | Feb 05 | 8645 | 100.00 |
| Feb 05 | 8599 | 288.22 | Feb 05 | 8646 | 100.00 |
| Feb 05 | 8600 | 403.54 | Feb 06 | 8647 | 100.00 |
| Feb 06 | 8602 * | 360.41 | Feb 06 | 8648 | 120.00 |
| Feb 05 | 8603 | 706.30 | Feb 06 | 8649 | 40.00 |
| Feb 05 | 8604 | 375.11 | Feb 05 | 8650 | 100.00 |
| Feb 06 | 8605 | 551.25 | Feb 05 | 8651 | 100.00 |
| Feb 09 | 8605 | 551.25 | Feb 05 | 8652 | 80.00 |
| Feb 06 | 8606 | 1,002.86 | Feb 05 | 8653 | 120.00 |
| Feb 06 | 8607 | 305.93 | Feb 05 | 8654 | 100.00 |
| Feb 09 | 8607 | 305.93 | Feb 13 | 8655 | 100.00 |
| Feb 05 | 8608 | 1,122.29 | Feb 07 | 8656 | 220.00 |
| Feb 05 | 8609 | 397.84 | Feb 06 | 8657 | 80.00 |
| Feb 09 | 8610 | 319.91 | Feb 09 | 8657 | 80.00 |
| Feb 05 | 8611 | 254.57 | Feb 01 | 8658 | 162.02 |
| Feb 05 | 8612 | 319.91 | Feb 07 | 8659 | 24,142.17 |
| Feb 06 | 8613 | 628.10 | Feb 07 | 8660 | 110.45 |
| Feb 06 | 8615 * | 393.36 | Feb 13 | 8661 | 348.94 |
| Feb 05 | 8616 | 319.63 | Feb 12 | 8662 | 374.19 |
| Feb 05 | 8617 | 319.91 | Feb 12 | 8663 | 267.24 |
| Feb 06 | 8618 | 518.69 | Feb 12 | 8664 | 72.00 |
| Feb 06 | 8619 | 216.80 | Feb 13 | 8665 | 139.40 |
| Feb 06 | 8620 | 318.75 | Feb 12 | 8666 | 576.00 |
| Feb 12 | 8620 | 318.75 | Feb 12 | 8667 | 313.84 |
| Feb 05 | 8621 | 325.61 | Feb 07 | 8668 | 3,400.00 |
| Feb 06 | 8622 | 312.11 | Feb 12 | 8671 * | 417.30 |



**WHITNEY.**

STATEMENT PERIOD

Feb 01, 2007 TO
Feb 28, 2007

429     32          182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL   36121-0445

REDACTED

Page   4 of   9

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Feb 06 | 8673 * | 50,000.00 | Feb 09 | 8725 | 298.71 |
| Feb 14 | 8674 | 267.62 | Feb 13 | 8726 | 628.11 |
| Feb 13 | 8675 | 215.99 | Feb 13 | 8727 | 227.73 |
| Feb 12 | 8676 | 280.76 | Feb 13 | 8728 | 378.90 |
| Feb 14 | 8677 | 742.78 | Feb 09 | 8729 | 298.41 |
| Feb 09 | 8678 | 1,133.24 | Feb 09 | 8730 | 298.71 |
| Feb 13 | 8679 | 145.44 | Feb 13 | 8731 | 390.11 |
| Feb 13 | 8680 | 292.51 | Feb 13 | 8732 | 310.39 |
| Feb 12 | 8681 | 548.09 | Feb 13 | 8733 | 220.49 |
| Feb 13 | 8682 | 258.51 | Feb 13 | 8734 | 325.60 |
| Feb 13 | 8683 | 149.42 | Feb 13 | 8735 | 259.65 |
| Feb 21 | 8684 | 250.07 | Feb 13 | 8736 | 311.50 |
| Feb 13 | 8685 | 240.98 | Feb 14 | 8737 | 227.12 |
| Feb 12 | 8686 | 904.58 | Feb 13 | 8738 | 163.53 |
| Feb 13 | 8687 | 77.57 | Feb 13 | 8739 | 887.18 |
| Feb 09 | 8688 | 272.83 | Feb 13 | 8740 | 292.36 |
| Feb 13 | 8689 | 586.87 | Feb 14 | 8741 | 281.75 |
| Feb 13 | 8690 | 145.44 | Feb 13 | 8742 | 212.84 |
| Feb 13 | 8691 | 255.35 | Feb 12 | 8743 | 673.60 |
| Feb 13 | 8692 | 250.33 | Feb 13 | 8744 | 286.31 |
| Feb 12 | 8693 | 526.04 | Feb 12 | 8745 | 101.45 |
| Feb 13 | 8694 | 395.21 | Feb 13 | 8746 | 206.00 |
| Feb 13 | 8695 | 444.47 | Feb 13 | 8747 | 245.85 |
| Feb 13 | 8696 | 319.03 | Feb 12 | 8748 | 76.82 |
| Feb 13 | 8697 | 247.01 | Feb 13 | 8749 | 316.68 |
| Feb 13 | 8698 | 463.36 | Feb 12 | 8750 | 425.63 |
| Feb 13 | 8699 | 275.75 | Feb 12 | 8751 | 696.66 |
| Feb 14 | 8700 | 774.81 | Feb 13 | 8753 * | 100.00 |
| Feb 09 | 8701 | 299.29 | Feb 13 | 8754 | 80.00 |
| Feb 21 | 8702 | 248.99 | Feb 13 | 8755 | 100.00 |
| Feb 13 | 8703 | 91.43 | Feb 12 | 8756 | 100.00 |
| Feb 13 | 8704 | 303.27 | Feb 13 | 8757 | 100.00 |
| Feb 09 | 8705 | 510.22 | Feb 13 | 8758 | 100.00 |
| Feb 09 | 8706 | 299.29 | Feb 13 | 8759 | 100.00 |
| Feb 14 | 8707 | 300.09 | Feb 13 | 8760 | 100.00 |
| Feb 12 | 8708 | 517.58 | Feb 13 | 8761 | 80.00 |
| Feb 12 | 8709 | 136.54 | Feb 13 | 8762 | 100.00 |
| Feb 09 | 8710 | 302.48 | Feb 13 | 8763 | 100.00 |
| Feb 14 | 8711 | 252.38 | Feb 13 | 8764 | 80.00 |
| Feb 12 | 8712 | 243.70 | Feb 14 | 8765 | 100.00 |
| Feb 13 | 8715 * | 292.51 | Feb 13 | 8766 | 100.00 |
| Feb 13 | 8716 | 706.01 | Feb 13 | 8767 | 60.00 |
| Feb 13 | 8717 | 393.69 | Feb 12 | 8768 | 80.00 |
| Feb 14 | 8718 | 551.25 | Feb 09 | 8769 | 107.73 |
| Feb 12 | 8719 | 1,002.87 | Feb 12 | 8770 | 120.87 |
| Feb 15 | 8720 | 305.91 | Feb 14 | 8771 | 276.10 |
| Feb 14 | 8721 | 1,122.29 | Feb 21 | 8777 * | 252.81 |
| Feb 13 | 8722 | 397.84 | Feb 12 | 8779 * | 415.59 |
| Feb 20 | 8723 | 298.71 | Feb 26 | 8784 * | 401.15 |
| Feb 13 | 8724 | 254.58 | Feb 09 | 8788 * | 467.20 |



**WHITNEY.**

STATEMENT PERIOD

Feb 01, 2007 TO
Feb 28, 2007

429     32          182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445



Page  5 of  9

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Feb 12 | 8791 * | 1,002.86 | Feb 21 | 8864 | 303.22 |
| Feb 13 | 8793 * | 628.10 | Feb 21 | 8865 | 507.14 |
| Feb 16 | 8794 | 393.36 | Feb 21 | 8866 | 282.70 |
| Feb 13 | 8802 * | 887.17 | Feb 16 | 8867 | 822.63 |
| Feb 12 | 8805 * | 673.59 | Feb 22 | 8868 | 774.80 |
| Feb 16 | 8807 * | 100.00 | Feb 20 | 8869 | 467.52 |
| Feb 12 | 8811 * | 80.00 | Feb 21 | 8870 | 388.65 |
| Feb 21 | 8813 * | 500.00 | Feb 21 | 8871 | 293.52 |
| Feb 09 | 8814 | 2,712.69 | Feb 16 | 8872 | 703.41 |
| Feb 12 | 8815 | 110,000.00 | Feb 20 | 8873 | 467.52 |
| Feb 13 | 8816 | 25,345.80 | Feb 21 | 8874 | 224.43 |
| Feb 14 | 8817 | 4,770.73 | Feb 20 | 8875 | 362.43 |
| Feb 14 | 8818 | 1,979.40 | Feb 22 | 8876 | 592.50 |
| Feb 15 | 8820 * | 1,000.00 | Feb 20 | 8877 | 331.01 |
| Feb 16 | 8827 * | 4,550.00 | Feb 21 | 8878 | 482.16 |
| Feb 21 | 8829 * | 100.00 | Feb 21 | 8881 * | 331.31 |
| Feb 21 | 8830 | 80.00 | Feb 21 | 8882 | 706.01 |
| Feb 21 | 8831 | 80.00 | Feb 21 | 8883 | 323.50 |
| Feb 22 | 8832 | 100.00 | Feb 21 | 8884 | 683.60 |
| Feb 21 | 8833 | 60.00 | Feb 21 | 8885 | 1,002.86 |
| Feb 21 | 8834 | 100.00 | Feb 21 | 8886 | 378.85 |
| Feb 21 | 8835 | 100.00 | Feb 21 | 8887 | 612.93 |
| Feb 21 | 8836 | 80.00 | Feb 20 | 8888 | 630.58 |
| Feb 21 | 8837 | 100.00 | Feb 21 | 8889 | 372.59 |
| Feb 21 | 8838 | 120.00 | Feb 21 | 8890 | 343.53 |
| Feb 16 | 8839 | 669.00 | Feb 20 | 8891 | 466.94 |
| Feb 13 | 8840 | 1,500.00 | Feb 21 | 8892 | 628.10 |
| Feb 22 | 8841 | 475.71 | Feb 21 | 8893 | 508.95 |
| Feb 21 | 8842 | 506.77 | Feb 20 | 8894 | 270.15 |
| Feb 20 | 8843 | 367.07 | Feb 20 | 8895 | 466.94 |
| Feb 22 | 8844 | 742.77 | Feb 21 | 8896 | 529.15 |
| Feb 20 | 8845 | 1,133.24 | Feb 21 | 8897 | 430.71 |
| Feb 21 | 8846 | 331.59 | Feb 21 | 8898 | 392.01 |
| Feb 21 | 8847 | 235.96 | Feb 21 | 8899 | 522.25 |
| Feb 21 | 8848 | 451.15 | Feb 21 | 8900 | 375.78 |
| Feb 21 | 8849 | 307.59 | Feb 21 | 8901 | 319.40 |
| Feb 23 | 8850 | 256.93 | Feb 21 | 8902 | 267.79 |
| Feb 21 | 8851 | 376.68 | Feb 21 | 8903 | 363.68 |
| Feb 20 | 8852 | 904.57 | Feb 20 | 8904 | 887.18 |
| Feb 21 | 8853 | 328.48 | Feb 21 | 8905 | 403.43 |
| Feb 20 | 8854 | 412.99 | Feb 21 | 8906 | 341.87 |
| Feb 27 | 8855 | 586.87 | Feb 21 | 8907 | 348.09 |
| Feb 21 | 8856 | 341.11 | Feb 21 | 8908 | 673.59 |
| Feb 21 | 8857 | 109.90 | Feb 21 | 8909 | 253.07 |
| Feb 23 | 8858 | 459.57 | Feb 21 | 8910 | 328.47 |
| Feb 21 | 8859 | 192.04 | Feb 21 | 8911 | 340.17 |
| Feb 20 | 8860 | 417.63 | Feb 21 | 8912 | 436.78 |
| Feb 20 | 8861 | 406.65 | Feb 21 | 8913 | 284.82 |
| Feb 21 | 8862 | 540.58 | Feb 20 | 8914 | 548.09 |
| Feb 21 | 8863 | 384.55 | Feb 21 | 8916 * | 80.00 |



WHITNEY.

429    32                182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   6 of   9

| Date | Check No. | | Amount | Date | Check No. | | Amount |
|---|---|---|---|---|---|---|---|
| Feb 20 | 8917 | | 120.00 | Feb 23 | 8976 | | 706.01 |
| Feb 22 | 8918 | | 100.00 | Feb 27 | 8977 | | 499.26 |
| Feb 21 | 8919 | | 100.00 | Feb 26 | 8978 | | 531.60 |
| Feb 27 | 8920 | | 80.00 | Feb 26 | 8979 | | 1,002.87 |
| Feb 21 | 8921 | | 100.00 | Feb 27 | 8980 | | 233.01 |
| Feb 22 | 8922 | | 1,130.00 | Feb 26 | 8981 | | 1,294.02 |
| Feb 14 | 8926 | * | 40,000.00 | Feb 26 | 8982 | | 469.13 |
| Feb 13 | 8927 | | 530.96 | Feb 27 | 8984 | * | 317.84 |
| Feb 13 | 8928 | | 470.79 | Feb 27 | 8985 | | 288.10 |
| Feb 16 | 8929 | | 8,583.13 | Feb 27 | 8986 | | 628.11 |
| Feb 22 | 8932 | * | 13,775.00 | Feb 27 | 8987 | | 196.07 |
| Feb 27 | 8933 | | 249.00 | Feb 27 | 8988 | | 494.48 |
| Feb 28 | 8934 | | 330.51 | Feb 26 | 8989 | | 287.82 |
| Feb 27 | 8935 | | 255.49 | Feb 26 | 8990 | | 288.10 |
| Feb 26 | 8936 | | 217.81 | Feb 27 | 8991 | | 493.77 |
| Feb 23 | 8938 | * | 1,133.22 | Feb 27 | 8992 | | 516.20 |
| Feb 27 | 8939 | | 309.11 | Feb 27 | 8993 | | 300.08 |
| Feb 27 | 8940 | | 292.52 | Feb 23 | 8994 | | 415.37 |
| Feb 26 | 8941 | | 548.09 | Feb 27 | 8995 | | 285.87 |
| Feb 27 | 8942 | | 335.57 | Feb 27 | 8996 | | 263.20 |
| Feb 27 | 8943 | | 168.85 | Feb 27 | 8997 | | 489.75 |
| Feb 27 | 8944 | | 236.23 | Feb 27 | 8998 | | 318.19 |
| Feb 27 | 8945 | | 35.70 | Feb 27 | 8999 | | 887.19 |
| Feb 26 | 8946 | | 904.58 | Feb 27 | 9000 | | 373.73 |
| Feb 27 | 8947 | | 306.00 | Feb 27 | 9001 | | 264.80 |
| Feb 23 | 8948 | | 493.01 | Feb 27 | 9002 | | 324.04 |
| Feb 27 | 8949 | | 586.87 | Feb 27 | 9003 | | 673.60 |
| Feb 27 | 8950 | | 297.66 | Feb 27 | 9004 | | 336.18 |
| Feb 27 | 8951 | | 129.29 | Feb 27 | 9005 | | 306.00 |
| Feb 23 | 8952 | | 246.92 | Feb 27 | 9006 | | 326.20 |
| Feb 27 | 8953 | | 282.71 | Feb 27 | 9007 | | 404.67 |
| Feb 26 | 8954 | | 563.05 | Feb 27 | 9008 | | 513.61 |
| Feb 26 | 8955 | | 503.73 | Feb 27 | 9010 | * | 40.00 |
| Feb 27 | 8956 | | 565.72 | Feb 23 | 9011 | | 100.00 |
| Feb 27 | 8957 | | 401.67 | Feb 27 | 9012 | | 80.00 |
| Feb 27 | 8958 | | 280.73 | Feb 27 | 9013 | | 100.00 |
| Feb 23 | 8959 | | 563.62 | Feb 27 | 9014 | | 100.00 |
| Feb 27 | 8960 | | 271.45 | Feb 27 | 9015 | | 100.00 |
| Feb 23 | 8961 | | 427.36 | Feb 27 | 9016 | | 100.00 |
| Feb 26 | 8962 | | 774.81 | Feb 27 | 9017 | | 100.00 |
| Feb 26 | 8963 | | 288.68 | Feb 23 | 9018 | | 100.00 |
| Feb 27 | 8964 | | 326.04 | Feb 28 | 9019 | | 80.00 |
| Feb 27 | 8965 | | 293.52 | Feb 26 | 9020 | | 100.00 |
| Feb 23 | 8966 | | 587.49 | Feb 26 | 9021 | | 100.00 |
| Feb 26 | 8967 | | 218.50 | Feb 23 | 9022 | | 100.00 |
| Feb 27 | 8968 | | 283.64 | Feb 27 | 9023 | | 80.00 |
| Feb 26 | 8969 | | 87.79 | Feb 27 | 9024 | | 100.00 |
| Feb 23 | 8971 | * | 288.22 | Feb 23 | 9025 | | 3,617.77 |
| Feb 26 | 8972 | | 543.68 | Feb 22 | 9026 | | 9,211.65 |
| Feb 27 | 8975 | * | 336.15 | Feb 27 | 9027 | | 574.54 |



**WHITNEY.**

429        32              182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445


REDACTED

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Feb 26 | 9029 * | 5,390.54 | Feb 28 | 9048 * | 556.78 |
| Feb 22 | 9030 | 3,680.00 | Feb 27 | 9049 | 27.00 |
| Feb 26 | 9031 | 500.00 | Feb 26 | 9050 | 227.78 |
| Feb 28 | 9033 * | 122.03 | Feb 28 | 9054 * | 402.12 |
| Feb 28 | 9034 | 199.95 | Feb 26 | 9055 | 283.54 |
| Feb 28 | 9035 | 12,406.00 | Feb 27 | 9056 | 3,924.74 |
| Feb 23 | 9036 | 22.66 | Feb 26 | 9057 | 127.35 |
| Feb 26 | 9037 | 13.90 | Feb 28 | 9058 | 15,045.91 |
| Feb 26 | 9040 * | 3,484.23 | Feb 23 | 9059 | 40.89 |
| Feb 27 | 9042 * | 150.00 | Feb 27 | 9060 | 4,886.95 |
| Feb 23 | 9043 | 10.79 | Feb 28 | 9061 | 36,412.00 |
| Feb 26 | 9044 | 531.45 | Feb 27 | 9064 * | 75,000.00 |

* Indicates break in check sequence

Other
Debits

| Date | Amount | Description | |
|------|--------|-------------|--|
| Feb 01 | 25,000.00 | OUTGOING WIRE | |
| | | WNB WIRE | WHITNEYWIR |
| Feb 05 | 248.00 | OD SERVICE CHARGE | |
| Feb 06 | 310.00 | OD SERVICE CHARGE | |
| Feb 06 | 8,890.72 | DEBIT MEMO | |
| Feb 06 | 8,015.00 | ACH DEBIT | |
| | | FLEETCOR LOCKBOX | DEBITS |
| Feb 07 | 346.13 | SERVICE CHARGE | ANALYSIS CHG |
| Feb 07 | 310.00 | NSF SERVICE CHARGE | |
| Feb 08 | 8,890.72 | DEBIT MEMO | |
| Feb 12 | 71,433.38 | TRANSFER DEBIT | SWEEP DEBIT |
| Feb 12 | 10,015.00 | ACH DEBIT | |
| | | FLEETCOR LOCKBOX | DEBITS |
| Feb 13 | 19,243.72 | TRANSFER DEBIT | SWEEP DEBIT |
| Feb 13 | 905.69 | ACH DEBIT | |
| | | MERCEDES | PAYMENT |
| Feb 13 | 841.84 | ACH DEBIT | |
| | | 1-800-200-4622 | TRUEPAY |
| Feb 13 | 756.91 | ACH DEBIT | |
| | | 1-800-200-4622 | TRUEPAY |
| Feb 13 | 717.88 | ACH DEBIT | |
| | | DCS TRUCK | PAYMENT |
| Feb 13 | 670.82 | ACH DEBIT | |
| | | 1-800-200-4622 | TRUEPAY |
| Feb 13 | 599.81 | ACH DEBIT | |
| | | 1-800-200-4622 | TRUEPAY |
| Feb 13 | 549.46 | ACH DEBIT | |
| | | 1-800-200-4622 | TRUEPAY |
| Feb 15 | 5,012.00 | ACH DEBIT | |
| | | FLEETCOR LOCKBOX | DEBITS |
| Feb 15 | 500.00 | ACH DEBIT | |
| | | OFFICE DEPOT | ONLINE PMT |

NOV. 23. 2007  12:49PM    WHITNEY BANK    NO. 4740    P. 17



**WHITNEY.**

STATEMENT PERIOD

Feb 01, 2007 TO
Feb 28, 2007

429      32         182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page  8 of  9

| Date | Amount | Description | | | |
|------|--------|-------------|---|---|---|
| Feb 22 | 310.00 | OD SERVICE CHARGE | | | |
| Feb 23 | 279.00 | OD SERVICE CHARGE | | | |
| Feb 23 | 8,015.00 | ACH DEBIT | | | |
| | | FLEETCOR LOCKBOX | | DEBITS | |
| Feb 26 | 3,000.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX4545 WE1459 | 001459 | 02/26 | |
| Feb 26 | 1,000.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX2957 WE1141 | 001141 | 02/26 | |
| Feb 26 | 1,000.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX0942 WE1332 | 001332 | 02/26 | |
| Feb 26 | 1,000.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX6414 WE0943 | 000943 | 02/26 | |
| Feb 26 | 1,000.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX5919 WE1214 | 001214 | 02/26 | |
| Feb 26 | 1,000.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX9504 WE0716 | 000716 | 02/26 | |
| Feb 26 | 1,000.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX9520 WE0759 | 000759 | 02/26 | |
| Feb 26 | 1,000.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX5073 WE1409 | 001409 | 02/26 | |
| Feb 26 | 750.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX5927 WE1258 | 001258 | 02/26 | |
| Feb 26 | 500.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX4780 WE1057 | 001057 | 02/26 | |
| Feb 26 | 500.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX3022 WE1019 | 001019 | 02/26 | |
| Feb 26 | 400.00 | TRANSFER DEBIT | | | |
| | | TO CC -XXXXXXX9538 WE0852 | 000852 | 02/26 | |
| Feb 26 | 253,113.94 | TRANSFER DEBIT | SWEEP DEBIT | | |
| Feb 27 | 25,000.00 | OUTGOING WIRE | | | |
| | | WNB WIRE | | WHITNEYWIR | |
| Feb 27 | 8,352.44 | DEBIT MEMO | | | |
| Feb 27 | 4,492.60 | ACH DEBIT | | | |
| | | VTFNA, INC | | LEASE/RENT | |
| Feb 27 | 4,078.27 | ACH DEBIT | | | |
| | | VTFNA, INC | | LEASE/RENT | |
| Feb 27 | 2,045.97 | ACH DEBIT | | | |
| | | VTFNA, INC | | LEASE/RENT | |
| Feb 28 | 11,626.53 | ACH DEBIT | | | |
| | | CITICAPITAL | | SMARTPAY | |

NO. 4740    P. 10

STATEMENT PERIOD

Feb 01, 2007 TO
Feb 28, 2007

**WHITNEY.**

429    32    182 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL   36121-0445

REDACTED

Page   9 of   9

Daily
Balance
Summary

| Date | Balance | Date | Balance |
|------|---------|------|---------|
| Jan 31 | 41,814.56- | Feb 09 | 205,681.53 |
| Feb 01 | 39,442.94- | Feb 12 | 69,389.96 |
| Feb 02 | 41,536.00- | Feb 13 | 500.00 |
| Feb 05 | 32,081.38- | Feb 21 | 14,445.89- |
| Feb 06 | 114,179.41- | Feb 22 | 17,338.32- |
| Feb 07 | 12,917.13 | Feb 23 | 285,736.24 |
| Feb 08 | 202.10 | Feb 26 | 500.00 |

AUG. 23. 2007 12:49PM   WHITNEY BANK                                  NO. 4740   P. 17

STATEMENT PERIOD



Mar 01, 2007 TO
Mar 31, 2007

214      32                    833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

**REDACTED**

Page   1 of   8

BUSINESS CHECKING
          720-491-673    HIGHWAY SOLUTIONS LLC.

| BALANCE LAST STATEMENT | DEPOSITS & CREDITS NO. | TOTAL AMOUNT | CHECKS & DEBITS NO. | TOTAL AMOUNT | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|
| 500.00 | 139 | 459,562.28 | 367 | 610,877.51 | 150,815.23- |

Credits

| Date | Amount | Description | |
|---|---|---|---|
| Mar 01 | 107,424.79 | CREDIT MEMO | |
| Mar 06 | 80,000.00 | RETURNED CHECK | 0000009165 |
| Mar 07 | 402.21 | RETURNED CHECK | 0000009123 |
| Mar 07 | 388.16 | RETURNED CHECK | 0000009127 |
| Mar 07 | 374.83 | RETURNED CHECK | 0000009122 |
| Mar 07 | 371.69 | RETURNED CHECK | 0000009091 |
| Mar 07 | 354.97 | RETURNED CHECK | 0000009070 |
| Mar 07 | 353.65 | RETURNED CHECK | 0000009080 |
| Mar 07 | 352.56 | RETURNED CHECK | 0000009135 |
| Mar 07 | 349.55 | RETURNED CHECK | 0000009075 |
| Mar 07 | 345.85 | RETURNED CHECK | 0000009086 |
| Mar 07 | 336.09 | RETURNED CHECK | 0000009133 |
| Mar 07 | 333.61 | RETURNED CHECK | 0000009079 |
| Mar 07 | 329.85 | RETURNED CHECK | 0000009132 |
| Mar 07 | 329.74 | RETURNED CHECK | 0000009085 |
| Mar 07 | 326.39 | RETURNED CHECK | 0000009115 |
| Mar 07 | 320.37 | RETURNED CHECK | 0000009074 |
| Mar 07 | 317.25 | RETURNED CHECK | 0000009082 |
| Mar 07 | 317.25 | RETURNED CHECK | 0000009136 |
| Mar 07 | 302.81 | RETURNED CHECK | 0000009113 |
| Mar 07 | 300.86 | RETURNED CHECK | 0000009126 |
| Mar 07 | 291.98 | RETURNED CHECK | 0000009092 |
| Mar 07 | 290.69 | RETURNED CHECK | 0000009124 |
| Mar 07 | 274.56 | RETURNED CHECK | 0000009077 |
| Mar 07 | 273.12 | RETURNED CHECK | 0000009106 |
| Mar 07 | 265.05 | RETURNED CHECK | 0000009094 |
| Mar 07 | 265.04 | RETURNED CHECK | 0000009097 |
| Mar 07 | 248.45 | RETURNED CHECK | 0000009129 |
| Mar 07 | 233.43 | RETURNED CHECK | 0000009138 |
| Mar 07 | 216.37 | RETURNED CHECK | 0000009137 |
| Mar 07 | 215.34 | RETURNED CHECK | 0000009131 |
| Mar 07 | 169.04 | RETURNED CHECK | 0000009101 |
| Mar 07 | 149.78 | RETURNED CHECK | 0000009118 |
| Mar 07 | 146.70 | RETURNED CHECK | 0000009087 |
| Mar 07 | 115.36 | RETURNED CHECK | 0000009078 |
| Mar 07 | 100.00 | RETURNED CHECK | 0000009141 |

AUG. 23. 2007 12:43PM    WHITNEY BANK      NO. 4748    P. 20



# WHITNEY®

STATEMENT PERIOD
Mar 01, 2007 TO
Mar 31, 2007

214     32          833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL 36121-0445

REDACTED

Page 2 of 8

| Date | Amount | Description | |
|------|--------|-------------|---|
| Mar 07 | 100.00 | RETURNED CHECK | 0000009155 |
| Mar 07 | 100.00 | RETURNED CHECK | 0000009146 |
| Mar 07 | 80.00 | RETURNED CHECK | 0000009144 |
| Mar 07 | 80.00 | RETURNED CHECK | 0000009148 |
| Mar 07 | 80.00 | RETURNED CHECK | 0000009147 |
| Mar 07 | 80.00 | RETURNED CHECK | 0000009154 |
| Mar 07 | 80.00 | RETURNED CHECK | 0000009143 |
| Mar 07 | 67.00 | RETURNED CHECK | 0000009157 |
| Mar 07 | 60.00 | RETURNED CHECK | 0000009151 |
| Mar 07 | 30.00 | RESEARCH ADJUSTMENT CR | |
| | | 0901-07MAR07 RES | /ADJ DEPT |
| Mar 12 | 150,000.00 | REGULAR DEPOSIT | |
| Mar 12 | 80,000.00 | RETURNED CHECK | 0000009271 |
| Mar 12 | 1,133.24 | RETURNED CHECK | 0000009181 |
| Mar 12 | 576.00 | RETURNED CHECK | 0000009173 |
| Mar 12 | 313.84 | RETURNED CHECK | 0000009175 |
| Mar 12 | 222.22 | RETURNED CHECK | 0000009191 |
| Mar 19 | 670.00 | RETURNED CHECK | 0000009273 |
| | | NSF | |
| Mar 19 | 80.00 | RETURNED CHECK | 0000008931 |
| | | NSF | |
| Mar 19 | 19.98 | RETURNED CHECK | 0000009275 |
| | | NSF | |
| Mar 20 | 887.18 | RETURNED CHECK | 0000009337 |
| Mar 20 | 673.59 | RETURNED CHECK | 0000009341 |
| Mar 20 | 538.26 | RETURNED CHECK | 0000009300 |
| Mar 20 | 505.59 | RETURNED CHECK | 0000009304 |
| Mar 20 | 490.88 | RETURNED CHECK | 0000009296 |
| Mar 20 | 431.67 | RETURNED CHECK | 0000009348 |
| Mar 20 | 414.34 | RETURNED CHECK | 0000009343 |
| Mar 20 | 376.83 | RETURNED CHECK | 0000009318 |
| Mar 20 | 372.07 | RETURNED CHECK | 0000009310 |
| Mar 20 | 277.07 | RETURNED CHECK | 0000009308 |
| Mar 20 | 100.00 | RETURNED CHECK | 0000008670 |
| Mar 20 | 100.00 | RETURNED CHECK | 0000009365 |
| Mar 20 | 100.00 | RETURNED CHECK | 0000009366 |
| Mar 20 | 100.00 | RETURNED CHECK | 0000009359 |
| Mar 21 | 1,002.86 | RETURNED CHECK | 0000009317 |
| Mar 21 | 628.10 | RETURNED CHECK | 0000009324 |
| Mar 21 | 622.32 | RETURNED CHECK | 0000009297 |
| Mar 21 | 612.33 | RETURNED CHECK | 0000009295 |
| Mar 21 | 586.87 | RETURNED CHECK | 0000009192 |
| Mar 21 | 586.87 | RETURNED CHECK | 0000009291 |
| Mar 21 | 574.16 | RETURNED CHECK | 0000009345 |
| Mar 21 | 547.49 | RETURNED CHECK | 0000009326 |
| Mar 21 | 546.82 | RETURNED CHECK | 0000009329 |
| Mar 21 | 537.56 | RETURNED CHECK | 0000009320 |
| Mar 21 | 453.01 | RETURNED CHECK | 0000009347 |
| Mar 21 | 440.20 | RETURNED CHECK | 0000009298 |
| Mar 21 | 434.15 | RETURNED CHECK | 0000009309 |



**WHITNEY.**

214     32     833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   3 of   8

| Date | Amount | Description | |
|------|--------|-------------|---|
| Mar 21 | 422.21 | RETURNED CHECK | 0000009315 |
| Mar 21 | 410.02 | RETURNED CHECK | 0000009346 |
| Mar 21 | 393.11 | RETURNED CHECK | 0000009339 |
| Mar 21 | 389.15 | RETURNED CHECK | 0000009302 |
| Mar 21 | 379.80 | RETURNED CHECK | 0000009293 |
| Mar 21 | 377.33 | RETURNED CHECK | 0000009336 |
| Mar 21 | 373.19 | RETURNED CHECK | 0000009303 |
| Mar 21 | 372.61 | RETURNED CHECK | 0000009323 |
| Mar 21 | 372.32 | RETURNED CHECK | 0000009279 |
| Mar 21 | 352.34 | RETURNED CHECK | 0000009286 |
| Mar 21 | 348.60 | RETURNED CHECK | 0000009292 |
| Mar 21 | 341.87 | RETURNED CHECK | 0000009331 |
| Mar 21 | 339.07 | RETURNED CHECK | 0000009282 |
| Mar 21 | 335.97 | RETURNED CHECK | 0000009289 |
| Mar 21 | 335.97 | RETURNED CHECK | 0000009344 |
| Mar 21 | 335.96 | RETURNED CHECK | 0000009299 |
| Mar 21 | 330.83 | RETURNED CHECK | 0000009333 |
| Mar 21 | 329.68 | RETURNED CHECK | 0000009330 |
| Mar 21 | 321.61 | RETURNED CHECK | 0000009313 |
| Mar 21 | 320.05 | RETURNED CHECK | 0000009340 |
| Mar 21 | 309.39 | RETURNED CHECK | 0000009338 |
| Mar 21 | 302.14 | RETURNED CHECK | 0000009294 |
| Mar 21 | 293.52 | RETURNED CHECK | 0000009305 |
| Mar 21 | 270.13 | RETURNED CHECK | 0000009285 |
| Mar 21 | 269.48 | RETURNED CHECK | 0000009287 |
| Mar 21 | 246.72 | RETURNED CHECK | 0000009278 |
| Mar 21 | 240.14 | RETURNED CHECK | 0000009342 |
| Mar 21 | 197.98 | RETURNED CHECK | 0000009322 |
| Mar 21 | 193.93 | RETURNED CHECK | 0000009283 |
| Mar 21 | 151.92 | RETURNED CHECK | 0000009362 |
| Mar 21 | 100.00 | RETURNED CHECK | 0000009254 |
| Mar 21 | 100.00 | RETURNED CHECK | 0000009367 |
| Mar 21 | 100.00 | RETURNED CHECK | 0000009364 |
| Mar 21 | 100.00 | RETURNED CHECK | 0000009356 |
| Mar 21 | 100.00 | RETURNED CHECK | 0000009360 |
| Mar 21 | 100.00 | RETURNED CHECK | 0000009354 |
| Mar 21 | 80.00 | RETURNED CHECK | 0000009353 |
| Mar 21 | 80.00 | RETURNED CHECK | 0000009350 |
| Mar 21 | 80.00 | RETURNED CHECK | 0000009351 |
| Mar 21 | 60.00 | RETURNED CHECK | 0000009357 |
| Mar 21 | 60.00 | RETURNED CHECK | 0000009355 |
| Mar 22 | 774.80 | RETURNED CHECK | 0000009301 |
| Mar 22 | 577.02 | RETURNED CHECK | 0000009316 |
| Mar 22 | 440.07 | RETURNED CHECK | 0000009332 |
| Mar 22 | 373.19 | RETURNED CHECK | 0000009307 |
| Mar 22 | 100.00 | RETURNED CHECK | 0000009352 |
| Mar 22 | 95.77 | RETURNED CHECK | 0000009334 |
| Mar 23 | 378.83 | RETURNED CHECK | 0000009318 |
| Mar 23 | 372.61 | RETURNED CHECK | 0000009321 |
| Mar 23 | 372.61 | RETURNED CHECK | 0000009328 |

AUG. 23. 2007  12:46PM    W  'NEY BANK



**WHITNEY**₀

NO. 4748    P. 22

STATEMENT PERIOD

Mar 01, 2007 TO
Mar 31, 2007

214      32            833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445



Page   4 of   8

| Date | Amount | Description | |
|------|--------|-------------|---|
| Mar 23 | 372.32 | RETURNED CHECK | 0000009327 |
| Mar 23 | 372.07 | RETURNED CHECK | 0000009310 |
| Mar 23 | 277.07 | RETURNED CHECK | 0000009308 |
| Mar 23 | 100.00 | RETURNED CHECK | 0000008670 |
| Mar 23 | 100.00 | RETURNED CHECK | 0000009365 |
| Mar 23 | 20.00 | RETURNED CHECK | 0000009358 |
| Mar 30 | 316.93 | RETURNED CHECK | 0000009335 |

Checks Paid

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Mar 01 | 7914 | 500.00 | Mar 06 | 9079 | 333.61 |
| Mar 01 | 7988 * | 500.00 | Mar 07 | 9079 | 333.61 |
| Mar 01 | 8076 * | 500.00 | Mar 06 | 9080 | 353.65 |
| Mar 01 | 8358 * | 499.99 | Mar 07 | 9080 | 353.65 |
| Mar 19 | 8670 * | 100.00 | Mar 05 | 9081 | 904.58 |
| Mar 22 | 8670 | 100.00 | Mar 06 | 9082 | 317.25 |
| Mar 16 | 8931 * | 80.00 | Mar 07 | 9082 | 317.25 |
| Mar 01 | 8937 * | 742.78 | Mar 02 | 9083 | 431.44 |
| Mar 01 | 8970 * | 56.24 | Mar 06 | 9084 | 586.87 |
| Mar 05 | 8983 * | 288.10 | Mar 06 | 9085 | 329.74 |
| Mar 05 | 9032 * | 82.00 | Mar 07 | 9085 | 329.74 |
| Mar 01 | 9038 * | 98.00 | Mar 06 | 9086 | 345.85 |
| Mar 07 | 9039 | 409.37 | Mar 07 | 9086 | 345.85 |
| Mar 01 | 9041 * | 649.18 | Mar 06 | 9087 | 146.70 |
| Mar 01 | 9045 * | 117.50 | Mar 07 | 9087 | 146.70 |
| Mar 02 | 9046 | 298.20 | Mar 02 | 9088 | 544.55 |
| Mar 14 | 9047 | 475.00 | Mar 06 | 9089 | 529.41 |
| Mar 01 | 9051 * | 373.68 | Mar 06 | 9090 | 559.44 |
| Mar 01 | 9052 | 389.95 | Mar 06 | 9091 | 371.69 |
| Mar 01 | 9053 | 1,448.41 | Mar 07 | 9091 | 371.69 |
| Mar 01 | 9062 * | 22,800.79 | Mar 06 | 9092 | 291.98 |
| Mar 01 | 9063 | 30,000.00 | Mar 07 | 9092 | 291.98 |
| Mar 12 | 9066 * | 980.00 | Mar 01 | 9093 | 402.84 |
| Mar 01 | 9067 | 736.97 | Mar 06 | 9094 | 265.05 |
| Mar 07 | 9069 * | 292.81 | Mar 07 | 9094 | 265.05 |
| Mar 06 | 9070 | 354.97 | Mar 07 | 9095 | 774.80 |
| Mar 07 | 9070 | 354.97 | Mar 02 | 9096 | 263.95 |
| Mar 02 | 9071 | 263.08 | Mar 06 | 9097 | 265.04 |
| Mar 08 | 9072 | 742.77 | Mar 07 | 9097 | 265.04 |
| Mar 02 | 9073 | 1,133.24 | Mar 07 | 9098 | 308.14 |
| Mar 06 | 9074 | 320.37 | Mar 02 | 9099 | 639.00 |
| Mar 07 | 9074 | 320.37 | Mar 02 | 9100 | 263.93 |
| Mar 06 | 9075 | 349.55 | Mar 06 | 9101 | 169.04 |
| Mar 07 | 9075 | 349.55 | Mar 07 | 9101 | 169.04 |
| Mar 05 | 9076 | 548.09 | Mar 02 | 9102 | 330.99 |
| Mar 06 | 9077 | 274.56 | Mar 12 | 9103 | 378.24 |
| Mar 07 | 9077 | 274.56 | Mar 06 | 9106 * | 273.12 |
| Mar 06 | 9078 | 115.36 | Mar 07 | 9106 | 273.12 |
| Mar 07 | 9078 | 115.36 | Mar 01 | 9107 | 706.01 |

AUG. 23. 2007  12:46PM    WHITNEY BANK                      NO. 4/48    P. 23

# WHITNEY.

STATEMENT PERIOD

Mar 01, 2007 TO
Mar 31, 2007

214      32        833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   5 of   8

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| Mar 06 | 9108 | 409.37 | Mar 01 | 9142 | 40.00 |
| Mar 02 | 9109 | 311.94 | Mar 06 | 9143 | 80.00 |
| Mar 06 | 9110 | 1,002.86 | Mar 07 | 9143 | 80.00 |
| Mar 05 | 9111 | 300.70 | Mar 06 | 9144 | 80.00 |
| Mar 02 | 9112 | 1,274.93 | Mar 07 | 9144 | 80.00 |
| Mar 06 | 9113 | 302.81 | Mar 06 | 9145 | 100.00 |
| Mar 07 | 9113 | 302.81 | Mar 06 | 9146 | 100.00 |
| Mar 02 | 9114 | 314.61 | Mar 07 | 9146 | 100.00 |
| Mar 06 | 9115 | 326.39 | Mar 06 | 9147 | 80.00 |
| Mar 07 | 9115 | 326.39 | Mar 07 | 9147 | 80.00 |
| Mar 02 | 9116 | 263.35 | Mar 06 | 9148 | 80.00 |
| Mar 06 | 9116 | 263.35 | Mar 07 | 9148 | 80.00 |
| Mar 06 | 9117 | 628.10 | Mar 02 | 9149 | 60.00 |
| Mar 06 | 9118 | 149.78 | Mar 08 | 9150 | 100.00 |
| Mar 07 | 9118 | 149.78 | Mar 06 | 9151 | 60.00 |
| Mar 06 | 9119 | 522.65 | Mar 07 | 9151 | 60.00 |
| Mar 02 | 9120 | 263.09 | Mar 07 | 9152 | 100.00 |
| Mar 02 | 9121 | 263.35 | Mar 01 | 9153 | 60.00 |
| Mar 06 | 9122 | 374.83 | Mar 06 | 9154 | 80.00 |
| Mar 07 | 9122 | 374.83 | Mar 07 | 9154 | 80.00 |
| Mar 06 | 9123 | 402.21 | Mar 06 | 9155 | 100.00 |
| Mar 07 | 9123 | 402.21 | Mar 07 | 9155 | 100.00 |
| Mar 06 | 9124 | 290.69 | Mar 02 | 9156 | 40.00 |
| Mar 07 | 9124 | 290.69 | Mar 06 | 9157 | 67.00 |
| Mar 02 | 9125 | 374.28 | Mar 07 | 9157 | 67.00 |
| Mar 06 | 9126 | 300.86 | Mar 01 | 9159 * | 2,436.00 |
| Mar 07 | 9126 | 300.86 | Mar 02 | 9160 | 10,410.65 |
| Mar 06 | 9127 | 388.16 | Mar 02 | 9161 | 48.90 |
| Mar 07 | 9127 | 388.16 | Mar 05 | 9165 * | 80,000.00 |
| Mar 06 | 9128 | 403.36 | Mar 06 | 9166 | 313.88 |
| Mar 06 | 9129 | 248.45 | Mar 12 | 9167 | 192.00 |
| Mar 07 | 9129 | 248.45 | Mar 12 | 9168 | 498.92 |
| Mar 05 | 9130 | 887.17 | Mar 12 | 9169 | 267.24 |
| Mar 06 | 9131 | 215.34 | Mar 12 | 9170 | 139.40 |
| Mar 07 | 9131 | 215.34 | Mar 12 | 9171 | 25.00 |
| Mar 06 | 9132 | 329.85 | Mar 15 | 9172 | 51.51 |
| Mar 07 | 9132 | 329.85 | Mar 09 | 9173 | 576.00 |
| Mar 06 | 9133 | 336.09 | Mar 12 | 9173 | 576.00 |
| Mar 07 | 9133 | 336.09 | Mar 14 | 9174 | 37.50 |
| Mar 06 | 9134 | 673.59 | Mar 09 | 9175 | 313.84 |
| Mar 06 | 9135 | 352.56 | Mar 12 | 9175 | 313.84 |
| Mar 07 | 9135 | 352.56 | Mar 12 | 9176 | 2,650.22 |
| Mar 06 | 9136 | 317.25 | Mar 13 | 9178 * | 445.22 |
| Mar 07 | 9136 | 317.25 | Mar 14 | 9179 | 280.75 |
| Mar 06 | 9137 | 216.37 | Mar 14 | 9180 | 742.78 |
| Mar 07 | 9137 | 216.37 | Mar 09 | 9181 | 1,133.24 |
| Mar 06 | 9138 | 233.43 | Mar 15 | 9181 | 1,133.24 |
| Mar 07 | 9138 | 233.43 | Mar 13 | 9182 | 297.88 |
| Mar 06 | 9139 | 527.78 | Mar 13 | 9183 | 268.28 |
| Mar 06 | 9141 * | 100.00 | Mar 12 | 9184 | 548.09 |
| Mar 07 | 9141 | 100.00 | | | |

AUG. 23. 2007 12:46PM    W' INEY BANK



**WHITNEY.**

NO. 4748    P. 24

STATEMENT PERIOD

Mar 01, 2007 TO
Mar 31, 2007

214        32        833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   6 of   8

| Date | Check No. | Amount | Date | Check No. | Amount |
|---|---|---|---|---|---|
| Mar 13 | 9185 | 359.63 | Mar 13 | 9237 | 393.25 |
| Mar 13 | 9186 | 281.38 | Mar 13 | 9238 | 383.00 |
| Mar 13 | 9187 | 309.68 | Mar 13 | 9239 | 318.20 |
| Mar 13 | 9188 | 269.24 | Mar 14 | 9240 | 887.18 |
| Mar 14 | 9189 | 904.58 | Mar 13 | 9241 | 368.77 |
| Mar 13 | 9190 | 287.27 | Mar 13 | 9242 | 305.79 |
| Mar 09 | 9191 | 222.22 | Mar 13 | 9243 | 312.03 |
| Mar 20 | 9192 | 586.87 | Mar 13 | 9244 | 673.60 |
| Mar 13 | 9193 | 256.92 | Mar 13 | 9245 | 214.27 |
| Mar 13 | 9194 | 321.61 | Mar 12 | 9246 | 457.91 |
| Mar 13 | 9195 | 334.53 | Mar 13 | 9247 | 192.21 |
| Mar 14 | 9196 | 501.38 | Mar 13 | 9248 | 616.53 |
| Mar 12 | 9197 | 490.88 | Mar 13 | 9249 | 404.67 |
| Mar 13 | 9198 | 457.94 | Mar 13 | 9250 | 376.72 |
| Mar 13 | 9199 | 346.01 | Mar 12 | 9251 | 313.80 |
| Mar 13 | 9200 | 269.49 | Mar 13 | 9253 * | 60.00 |
| Mar 12 | 9201 | 465.95 | Mar 20 | 9254 | 100.00 |
| Mar 12 | 9202 | 255.40 | Mar 13 | 9255 | 80.00 |
| Mar 12 | 9203 | 774.81 | Mar 12 | 9256 | 100.00 |
| Mar 13 | 9204 | 277.41 | Mar 13 | 9257 | 80.00 |
| Mar 15 | 9205 | 281.60 | Mar 13 | 9258 | 120.00 |
| Mar 13 | 9206 | 379.01 | Mar 13 | 9259 | 60.00 |
| Mar 13 | 9207 | 338.22 | Mar 13 | 9260 | 100.00 |
| Mar 13 | 9208 | 298.41 | Mar 13 | 9261 | 80.00 |
| Mar 12 | 9209 | 671.20 | Mar 15 | 9262 | 100.00 |
| Mar 15 | 9210 | 281.62 | Mar 13 | 9263 | 165.60 |
| Mar 12 | 9211 | 154.91 | Mar 13 | 9264 | 80.00 |
| Mar 12 | 9212 | 240.71 | Mar 12 | 9265 | 80.00 |
| Mar 13 | 9213 | 372.07 | Mar 13 | 9266 | 80.00 |
| Mar 13 | 9216 * | 197.17 | Mar 13 | 9267 | 80.00 |
| Mar 13 | 9217 | 706.01 | Mar 13 | 9268 | 100.00 |
| Mar 13 | 9218 | 366.55 | Mar 14 | 9269 | 4,550.00 |
| Mar 14 | 9219 | 318.50 | Mar 12 | 9270 | 82.04 |
| Mar 13 | 9220 | 1,002.87 | Mar 09 | 9271 | 80,000.00 |
| Mar 12 | 9221 | 51.59 | Mar 12 | 9271 | 80,000.00 |
| Mar 12 | 9222 | 1,179.53 | Mar 15 | 9272 | 3,394.49 |
| Mar 13 | 9223 | 574.70 | Mar 16 | 9273 | 670.00 |
| Mar 13 | 9224 | 281.03 | Mar 12 | 9274 | 206.81 |
| Mar 13 | 9225 | 183.69 | Mar 16 | 9275 | 19.98 |
| Mar 13 | 9226 | 281.04 | Mar 20 | 9278 * | 246.72 |
| Mar 14 | 9227 | 628.11 | Mar 20 | 9279 | 372.32 |
| Mar 14 | 9228 | 182.91 | Mar 20 | 9282 * | 339.07 |
| Mar 13 | 9229 | 451.17 | Mar 20 | 9283 | 193.93 |
| Mar 14 | 9230 | 280.74 | Mar 20 | 9285 * | 270.13 |
| Mar 13 | 9231 | 281.04 | Mar 20 | 9286 | 352.34 |
| Mar 13 | 9232 | 487.47 | Mar 20 | 9287 | 269.48 |
| Mar 13 | 9233 | 386.68 | Mar 19 | 9288 | 904.58 |
| Mar 13 | 9234 | 220.51 | Mar 20 | 9289 | 335.97 |
| Mar 14 | 9235 | 282.91 | Mar 16 | 9290 | 394.54 |
| Mar 13 | 9236 | 289.63 | Mar 20 | 9291 | 586.87 |

AUG. 23. 2007 12:40PM     P INEY BANK

NO. 4748     P. 25



**WHITNEY.**

STATEMENT PERIOD

Mar 01, 2007 TO
Mar 31, 2007

214     32     833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page   7 of   8

| Date | Check No. | | Amount | Date | Check No. | | Amount |
|------|-----------|---|--------|------|-----------|---|--------|
| Mar 20 | 9292 | | 348.60 | Mar 20 | 9330 | | 329.68 |
| Mar 20 | 9293 | | 379.80 | Mar 20 | 9331 | | 341.87 |
| Mar 20 | 9294 | | 302.14 | Mar 21 | 9332 | | 440.07 |
| Mar 20 | 9295 | | 612.39 | Mar 20 | 9333 | | 330.83 |
| Mar 19 | 9296 | | 490.88 | Mar 21 | 9334 | | 95.77 |
| Mar 20 | 9297 | | 622.32 | Mar 29 | 9335 | | 316.93 |
| Mar 20 | 9298 | | 440.20 | Mar 20 | 9336 | | 377.33 |
| Mar 20 | 9299 | | 335.96 | Mar 19 | 9337 | | 887.18 |
| Mar 19 | 9300 | | 538.26 | Mar 20 | 9338 | | 309.39 |
| Mar 21 | 9301 | | 774.80 | Mar 20 | 9339 | | 393.11 |
| Mar 20 | 9302 | | 389.15 | Mar 20 | 9340 | | 320.05 |
| Mar 20 | 9303 | | 373.19 | Mar 19 | 9341 | | 673.59 |
| Mar 19 | 9304 | | 505.59 | Mar 20 | 9342 | | 240.14 |
| Mar 20 | 9305 | | 293.52 | Mar 19 | 9343 | | 414.34 |
| Mar 21 | 9307 | * | 373.19 | Mar 20 | 9344 | | 335.97 |
| Mar 19 | 9308 | | 277.07 | Mar 20 | 9345 | | 574.16 |
| Mar 22 | 9308 | | 277.07 | Mar 20 | 9346 | | 410.02 |
| Mar 20 | 9309 | | 434.15 | Mar 20 | 9347 | | 453.01 |
| Mar 19 | 9310 | | 372.07 | Mar 19 | 9348 | | 431.67 |
| Mar 22 | 9310 | | 372.07 | Mar 20 | 9350 | * | 80.00 |
| Mar 20 | 9313 | * | 321.61 | Mar 20 | 9351 | | 80.00 |
| Mar 16 | 9314 | | 706.01 | Mar 21 | 9352 | | 100.00 |
| Mar 20 | 9315 | | 422.21 | Mar 20 | 9353 | | 80.00 |
| Mar 21 | 9316 | | 577.02 | Mar 20 | 9354 | | 100.00 |
| Mar 20 | 9317 | | 1,002.86 | Mar 20 | 9355 | | 60.00 |
| Mar 19 | 9318 | | 378.83 | Mar 20 | 9356 | | 100.00 |
| Mar 22 | 9318 | | 378.83 | Mar 20 | 9357 | | 60.00 |
| Mar 20 | 9320 | * | 537.56 | Mar 22 | 9358 | | 20.00 |
| Mar 22 | 9321 | | 372.61 | Mar 19 | 9359 | | 100.00 |
| Mar 22 | 9322 | | 197.98 | Mar 20 | 9360 | | 100.00 |
| Mar 20 | 9323 | | 372.61 | Mar 20 | 9362 | * | 151.92 |
| Mar 20 | 9324 | | 628.10 | Mar 20 | 9364 | * | 100.00 |
| Mar 20 | 9326 | * | 547.49 | Mar 19 | 9365 | | 100.00 |
| Mar 22 | 9327 | | 372.32 | Mar 22 | 9365 | | 100.00 |
| Mar 22 | 9328 | | 372.61 | Mar 19 | 9366 | | 100.00 |
| Mar 20 | 9329 | | 546.82 | Mar 20 | 9367 | | 100.00 |

* Indicates break in check sequence

Other
Debits

| Date | Amount | Description | |
|------|--------|-------------|---|
| Mar 01 | 8,015.00 | ACH DEBIT | |
| | | FLEETCOR LOCKBOX | DEBITS |
| Mar 02 | 6,863.97 | ACH DEBIT | |
| | | CATERPILLAR | PAYMENT |
| Mar 02 | 3,195.64 | ACH DEBIT | |
| | | CATERPILLAR | PAYMENT |
| Mar 06 | 31.00 | NSF SERVICE CHARGE | |
| Mar 07 | 420.25 | SERVICE CHARGE | ANALYSIS CHG |

AUG. 23. 2007 12:46PM    W INEY BANK



WHITNEY.

NO. 4748    P. 26

STATEMENT PERIOD

Mar 01, 2007 TO
Mar 31, 2007

214        32                    833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445

REDACTED

Page    8 of    8

| Date | Amount | Description | |
|------|--------|-------------|---|
| Mar 07 | 310.00 | OD SERVICE CHARGE | |
| Mar 08 | 310.00 | OD SERVICE CHARGE | |
| Mar 09 | 62.00 | OD SERVICE CHARGE | |
| Mar 12 | 93.00 | OD SERVICE CHARGE | |
| Mar 12 | 62.00 | NSF SERVICE CHARGE | |
| Mar 13 | 8,015.00 | ACH DEBIT | |
| | | FLEETCOR LOCKBOX | DEBITS |
| Mar 20 | 310.00 | NSF SERVICE CHARGE | |
| Mar 21 | 310.00 | NSF SERVICE CHARGE | |
| Mar 22 | 186.00 | NSF SERVICE CHARGE | |
| Mar 23 | 279.00 | NSF SERVICE CHARGE | |
| Mar 29 | 150,000.00 | DEPOSITED ITEM RETURN | |
| Mar 30 | 31.00 | NSF SERVICE CHARGE | |

Daily
Balance
Summary

| Date | Balance | Date | Balance |
|------|---------|------|---------|
| Feb 28 | 500.00 | Mar 14 | 7,548.36 |
| Mar 01 | 36,851.45 | Mar 15 | 2,305.90 |
| Mar 02 | 8,998.36 | Mar 16 | 435.37 |
| Mar 05 | 74,012.28- | Mar 19 | 5,068.71- |
| Mar 06 | 10,476.31- | Mar 20 | 18,199.07- |
| Mar 07 | 13,061.68- | Mar 21 | 2,680.08- |
| Mar 08 | 14,214.45- | Mar 22 | 2,870.74- |
| Mar 09 | 96,521.75- | Mar 23 | 784.23- |
| Mar 12 | 43,150.18 | Mar 29 | 151,101.16- |
| Mar 13 | 17,620.70 | Mar 30 | 150,815.23- |



**WHITNEY.**

STATEMENT PERIOD

Apr 01, 2007 TO
Apr 30, 2007

```
   0      06              833 E 0
HIGHWAY SOLUTIONS LLC.
P O BOX 210445
MONTGOMERY, AL  36121-0445
```

REDACTED

Page   1 of   1

---

BUSINESS CHECKING          HIGHWAY SOLUTIONS LLC.

| BALANCE LAST STATEMENT | DEPOSITS & CREDITS NO. | TOTAL AMOUNT | CHECKS & DEBITS NO. | TOTAL AMOUNT | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|
| 150,815.23- | 2 | 150,815.23 | 0 | .00 | .00 |

Credits

| Date | Amount | Description | |
|---|---|---|---|
| Apr 17 | 383.84 | RESEARCH ADJUSTMENT CR 0202-17APR07 RES | /ADJ DEPT |
| Apr 24 | 150,431.39 | CREDIT MEMO | |

Daily Balance Summary

| Date | Balance | Date | Balance |
|---|---|---|---|
| Mar 31 | 150,815.23- | Apr 24 | .00 |
| Apr 17 | 150,431.39- | | |

# EXHIBIT "6"

*HL*

**WHITNEY**

*ECC*   *REDACTED*

*RC#849*   **PROMISSORY NOTE**   *1848*   *001/99C*

| Borrower: | HIGHWAY SOLUTIONS, L.L.C. (TIN: ████████) | Lender: | Whitney National Bank |
|---|---|---|---|
| | 579 D OLIVER ROAD | | Mobile Business / Commercial Lending - Carmichael |
| | MONTGOMERY, AL 36121 | | P. O. Box 230714 |
| | | | Montgomery, AL 36123-0714 |

**Principal Amount: $22,166.12**   **Initial Rate: 5.250%**   **Date of Note: January 19, 2005**

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Twenty-two Thousand One Hundred Sixty-six & 12/100 Dollars ($22,166.12), together with interest on the unpaid principal balance from January 19, 2005, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 59 payments of $421.59 each payment and an irregular last payment estimated at $421.69. Borrower's first payment is due February 19, 2005, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on January 19, 2010, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the Index, resulting in an initial rate of 5.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9788, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**PROMISSORY NOTE**
**(Continued)**

Page 2

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Commercial Security Agreement of even date.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____(Seal)
ANNE S. MARCATO, Manager of HIGHWAY SOLUTIONS, L.L.C.



**WHITNEY**

REDACTED

## COMMERCIAL SECURITY AGREEMENT

| | | | |
|---|---|---|---|
| **Grantor:** | HIGHWAY SOLUTIONS, L.L.C. (TIN: ~~████████~~) 679 D OLIVER ROAD MONTGOMERY, AL 36121 | **Lender:** | Whitney National Bank Mobile Business / Commercial Lending - Carmichael P. O. Box 230714 Montgomery, AL 36123-0714 |

**THIS COMMERCIAL SECURITY AGREEMENT** dated January 19, 2005, is made and executed between HIGHWAY SOLUTIONS, L.L.C. ("Grantor") and Whitney National Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2000 FREIGHTLINER FL70 (VIN 1FV6HJBA1YHG63600)

In addition, the word "Collateral" also includes all the following:

(A)  All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Collateral unless and until such a notice is given.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Alabama, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title in and to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services

rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under the Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower has an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of collateral shall have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, L.L.C. and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, L.L.C..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means any amounts Grantor and/or Borrower, or any one of them, owe to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, L.L.C. in the principal amount of $22,166.12 dated January 19, 2005, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 19, 2005.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**GRANTOR:**

HIGHWAY SOLUTIONS, L.L.C.

By: _Anne S. Margato_ (Seal)
ANNE S. MARGATO, Manager of HIGHWAY
SOLUTIONS, L.L.C.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 5

**LENDER:**

**WHITNEY NATIONAL BANK**

X_____
Authorized Signer

LASER PRO Lending, Ver. 5.26.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - AL  p:\CFI\LPL\E40.FC  TR-320111  PR-104



# STATE OF
# ALABAMA
## DEPARTMENT OF REVENUE

### CERTIFICATE OF TITLE FOR A VEHICLE

| TITLE | VEHICLE IDENTIFICATION NUMBER | TRANS. CODE | DATE ISSUED |
|---|---|---|---|
| 33804833 | 1FV6HJBA1YHG63600 | 03 | 02/23/2005 |

YR. MODEL: 2600    MAKE: FRHT    MODEL: FL70    BODY TYPE: TR    TR 271000006

CYL: 06    BRED    DEMO    PURCHASE DATE 12/17/2004    NO. LIEN: 1    COLOR: YEL    ODOMETER: EXEMPT    XX

MAILING AND MAILING ADDRESS OF OWNER(S)

HIGHWAY SOLUTIONS LLC

P O BOX 210445
MONTGOMERY    AL 36121

WHITNEY NATIONAL BANK
P O BOX 23071
MONTGOMERY    AL

HIGHWAY SOLUTIONS LLC
579 D OLIVER RD
MONTGOMERY    AL 36117

1ST LIENHOLDER'S NAME ADDRESS AND LIEN DATE    01/19/2005

WHITNEY NATIONAL BANK
P O BOX 23071 4
MONTGOMERY    AL 36123

2ND LIENHOLDER'S NAME ADDRESS AND LIEN DATE

COMMISSIONER OF REVENUE

KEEP IN A SAFE PLACE    ANY ALTERATION OR ERASURE VOIDS THIS TITLE

# EXHIBIT "7"



**WHITNEY®**

REDACTED 7654

**VISA® BUSINESS CARD APPLICATION**

If you have any questions please visit any Whitney National Bank or call 1-800-325-3501 or (504) 838-6535 in New Orleans.

## A. COMPANY INFORMATION (Please Print or Type)

| Company's Legal Registered Name | Doing Business As | Tax ID Number |
|---|---|---|
| Highway Solutions LLC | | |

Business Name (as it should appear on card(s)—maximum characters 24—including spaces or punctuation]

| Business Street Address | City | State | Zip |
|---|---|---|---|
| 519 D Oliver Road | Montgomery | AL | 36121 |

| Mailing Address (if different from street address) | City | State | Zip |
|---|---|---|---|
| P.O. Box 210445 | Montgomery | AL | 36121- |

| Business Phone | Fax Number | Nature of Business | 0445 |
|---|---|---|---|
| (334) 279-8267 | (334) 279-9457 | Highway Construction | |

☐ Sole Proprietor   ☐ Partnership   ☐ Corporation   ☑ Limited Liability Company   ☐ Non-Profit   ☐ Other (please describe)

| Gross Annual Revenue $993 m. (1st 9 mts '04) | Company Credit Limit Requested $40,000.00 | |
|---|---|---|
| Person to Contact: Anne Marcato | Billing Type: ☐ Corporate  ☑ Individual | If Billing Type is left blank, individual billing will be ordered. |

Please provide a business financial statement for the most recent fiscal year

Has the Applicant/Company or any partner or principal ever declared bankruptcy? ☐ Yes  ☑ No    If Yes, please explain:

How long have you owned or operated this business? _____ years    If you are taking over an existing business, how long has it been in operation? _____ years

## B. OWNER INFORMATION

| Name of Owner / Partner / Principal | | | Title |
|---|---|---|---|
| Anne Marcato | | | President |

| Home Address | City | State | Zip |
|---|---|---|---|
| | | AL | 36111 |

| E-mail Address | Home Telephone | Work Telephone | Social Security Number | Date of Birth |
|---|---|---|---|---|
| | ( ) | | | |

| Name of Owner / Partner / Principal | | | Title |
|---|---|---|---|
| | | | |

| Home Address | City | State | Zip |
|---|---|---|---|
| | | | |

| E-mail Address | Home Telephone | Work Telephone | Social Security Number | Date of Birth |
|---|---|---|---|---|
| | ( ) | ( ) | | |

## C. EMPLOYEE CARDHOLDERS

Corporate Account # (Bank Use Only):                    If PIN request is left blank, a PIN will not be ordered.

| Authorized Cardholders | Title / Position | PIN Issued | | Credit Limit |
|---|---|---|---|---|
| Anne Marcato  179504 | President | ☐ Yes  ☐ No | | $ 10,000.00 |
| Richard A. Brown  179512 | | ☐ Yes  ☐ No | | $ 10,000.00 |
| John W. Ham  179520 | | ☐ Yes  ☐ No | | $ 6,000.00 |
| Thomas Catrett  179538 | | ☐ Yes  ☐ No | sin|eed | $ 2,000.00 |
| Larry R. Peacock  179546 | | | mailed | $ 2,000.00 continued on reverse side |

Attach additional sheets if necessary

4802 3900 0017 9371

## D. CONTINUING GUARANTY

In consideration of Whitney National Bank, New Orleans, Louisiana, ("Bank") at my request arranging for the extension of credit and making cash advances on a VISA Business Card issued to _____ ("Debtor"), I (we) hereby give this Continuing Guaranty to the said Bank, its transferees, or assigns, for the payment in full, together with all interest, attorney's fees, and all other fees and charges of whatsoever nature and kind, of any indebtedness, direct or contingent, of Debtor to Bank on Debtor's VISA Business Card whether due or to become due, now existing or hereafter arising. To secure this Guaranty, I (we) grant the Bank a continuing security interest in all my (our) money and other property that is now or hereafter on deposit with, in the possession of, under the control of or held by Bank (except IRA, pension and other tax-deferred retirement accounts). The security interest granted herein is consensual and in addition to Bank's right of set off. It is further understood that I (we) are jointly and severally liable for all indebtedness as described. If this Guaranty is executed by more than one Guarantor, each shall be jointly and severally liable with each other Guarantor for all guaranteed indebtedness. I (we) do further waive all notice and agree to pay upon demand at any time to said Bank, its transferees or assigns, any indebtedness of said Debtor in the full amount owing at the time of demand, together with interest, fees and charges as set forth above.

The Bank may, one or more times, in its sole discretion, without notice to or consent of Guarantor, grant extensions, take and give up collateral, or fail to perfect or continue a security interest therein, grant compromises, releases and discharges, increase or decrease authorized account limits, and make any changes of any sort to the terms of its Cardholder Agreement and Disclosure Statement or related contracts or amend contracts or doing business with said Debtor and with other parties and securities in relation thereto, and Guarantor hereby expressly waives any defenses arising from any such actions. I (we) further authorize Bank to obtain such information as Bank may require concerning the information completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application for which the undersigned is a guarantor. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

| Guarantor's Name | Guarantor's Name |
|---|---|
| Anne C. Marcato | Michael C. Marcato |
| Guarantor's Signature | Guarantor's Signature |
| Anne S Marcato | Mr C |
| Date | Date |
| 1/19/05 | 1/19/05 |

Please provide a signed, current personal financial statement on each Guarantor

## E. REQUEST FOR CARD ISSUANCE

The undersigned requests that Whitney National Bank open a VISA Business Card account for the company and that a VISA Business Card be issued to the individual employees of the company listed herein. If the application is approved, the company agrees to be bound by the terms and conditions of the Whitney National Bank Cardholder Agreement and Disclosure Statement which will accompany each VISA Business Card. The company acknowledges that the Bank has the right to change any term of the cardholder agreement at any time whatsoever and shall provide the company any prior written notice required by law. The company certifies that all information contained within this application and/or on any documents provided to the Bank, including financial statements, are true and correct. The company further certifies, represents and warrants that it assumes full liability for all indebtedness incurred by the VISA Business Card account, that the VISA Business Card account and cards will be used solely for business purposes and that the person whose signature appears below is authorized to request issuance of the card(s) and to bind and obligate the company to the terms and conditions of the Whitney National Bank Cardholder Agreement and Disclosure Statement.

| Company | By |
|---|---|
| Highway Solutions, LLC | |
| By (Authorized Signature) | Date |
| Anne S. Marcato | 1/19/05 |

If this request for credit is in the name of an individual or individuals, and you have supplied information on a co-applicant, please sign below if you intend to apply for joint credit.

☐ We intend to apply for joint credit:  Signature of Applicant_____  Signature of Co-Applicant_____

You may bring the Application, Authority and financial statements to any branch of the Whitney National Bank or mail to:
Whitney National Bank, Credit Card Department
Attn: VISA Business Card Services, P.O. Box 61750, New Orleans, Louisiana 70161

## FOR BANK USE ONLY

| Total Whitney National Bank indebtedness: | Company $ 1,000,000 | Guarantor $ Same | |
|---|---|---|---|
| Approved [signature] | Declined | | Date 1-20-05 |
| Bank Officer Gene Crane | Officer Number 738 | Extension | Company Number 7654 |
| Number of Cards 5 | MAX Tracking # | Approved Company Limit $35,000 | |
| Special Instructions | | | |

AUTHORITY FORM continued from reverse side

**CERTIFICATE (Corporation or Non-Profit Corporation)** ▉

The undersigned hereby certifies that he/she is the Secretary of _____ (the "Company" referred to on the reverse), a corporation or non-profit corporation duly organized and existing under the laws of the State of _____ and that the foregoing is a true copy of the Resolutions duly and unanimously adopted by the Board of Directors or Trustees of the Company, or voting members of the Company, as applicable, at a meeting duly held, at which a quorum was present and acting throughout, or by appropriate written consent, and that such Resolutions are in full force and effect, and that there is no limitation of any kind upon the power of that body to enter into the foregoing resolutions or agreement.
In witness whereof, I have hereunto set my hand as Secretary of the Company, and have affixed hereto the official seal of the Company on this

_____ day of _____, 20_____.

_____
Secretary or Assistant Secretary

(SEAL) Attest_____

(President's or second attesting officer's signature) (required if Secretary or Assistant Secretary signing above is designated as an Agent)

**CERTIFICATE (Sole Proprietorship)** ▉

I am the sole owner of the unincorporated business conducted under the trade name of ___Highway Solutions LLC__ (the "Company" referred to on the reverse), and desire to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement. I further authorize Bank to obtain such information as Bank may require concerning the information completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

_Anne S Marcato_ #                          _1/19/05_
Signature                                          Date

**CERTIFICATE (Partnership/Joint Venture/Limited Liability Company)** ▉

The undersigned certifies on this _19th_ day of _January_, 20_05_ that they are (i) the sole partners and owners or members of the business or joint venture conducted under the name of _Highway Solutions LLC_, (the "Company" referred to on the reverse), or (ii) the managing partners, managers or certifying officials required by the Company's articles of organization or partnership agreement to transact the business of the Company or to certify as to the authority of others to act on the Company's behalf, and that the Company is organized under the laws of the State of _Alabama_, and that the Company, through the undersigned, desires to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement. I (we) further authorize Bank to obtain such information as Bank may require concerning the information completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

Partner/Member/Manager                              Partner/Member/Manager

_Anne S. Marcato_
By:                                                  By:
Its:  _Managing Member_                              Its:

Partner/Member/Manager                              Partner/Member/Manager

By:                                                  By:
Its:                                                 Its:

**CERTIFICATE (Trust, Unincorporated Association, Club or Organization)** ▉

The undersigned certifies on this _____ day of _____, 20_____ that he or she is/they are the _____ (and) _____, of _____ (the "Company" referred to on the reverse), a(n) _____ (type of organization); and that this Company desires to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement.

_____          _____
Signature                                         Title

_____          _____
Signature                                         Title

**CERTIFICATE (Parish/County, Municipality, Public Board, Political or Public Corporation, Subdivision, or Taxing District)** ▉

The undersigned hereby certifies on this _____ day of _____, 20____ that he/she is the _____, an officer or duly authorized official of the _____ (the "Company" referred to on the reverse), a(n) _____ created under or by the constitution and laws of the State of _____, and that the foregoing is a true copy of Resolutions duly and unanimously adopted in accordance with the rules and regulations governing the Company, as authorized pursuant to _____, and that such Resolutions are in full force and effect, and that there is no limitation of any kind upon the power of that body to enter into the foregoing agreement or resolutions.

_____          _____
Signature                                         Title

**Entity Certification**  To the extent that any partners or members of the Company providing these resolutions are legal entities such as corporations, partnerships, limited liability companies or any other form of legal entity organized and existing under the laws of any State of the United States, the person executing this resolution on behalf of such entity in its capacity as a partner or member of the Company does hereby certify to Whitney National Bank that such person is duly authorized to execute this resolution on behalf of such entity acting in its capacity as a partner or member of the Company.

**WHITNEY®**

**AUTHORITY FORM**

## Authority Relative to the Opening of a VISA Business Credit Card Account

RESOLVED, that _Highway Solutions LLC_ _____(the "Company") has established with Whitney
National Bank ("Bank") a VISA Business Card account (the "Credit Card Account") in the name of and designated as:

_____

DBA Name (if different from above)

and the Company does hereby authorize that credit cards be issued in connection with the Credit Card Account by the Bank in the name of and for the use of those individuals designated (each an "Employee Cardholder") by any of the following individuals acting alone (the "Agent"):

| Agent | Title / Position | Signature |
|---|---|---|
| Anne S. Marcato | President | annes Marcato |
| | | |
| | | |
| | | |

that all amounts of any kind whatsoever, including without limitation, charges for goods and services, cash advances, interest and finance charges, attorneys' fees, collection costs, and all other fees and charges, owed to the Bank from the use of any credit card issued to any Employee Cardholder in connection with the Credit Card Account, shall be paid to the Bank by the Company. The Company hereby certifies that the authority granted herein to each Agent is made in accordance with the terms and conditions of the Company's articles of organization or operating agreement or contract.

The Company hereby authorizes any existing or future Employee Cardholder to borrow money as represented by extensions of credit under the Credit Card Account.

Any Agent is hereby authorized:

(a)   to designate individuals to be issued credit cards, and to request that personal identification numbers (PINs) be issued to any one or more of the Employee Cardholders, such request to be in such form and to contain such terms and conditions as the Bank may request or require and as the Agent in the Agent's sole and absolute discretion may deem necessary or advisable;

(b)   to sign, execute and endorse such documents as may be necessary or required by the Bank to evidence indebtedness and other obligations, including, without limitation, this Application, promissory notes, endorsements, and continuing guarantees; to grant to Bank security rights in Company's deposit accounts and other property, real or personal, as collateral security for the Credit Card Account, in Agent's sole discretion;

(c)   to execute and deliver any application forms, contracts, documents, security agreements, or other instruments in writing required or requested by the Bank in connection with the Credit Card Account, such forms, contracts, documents, security agreements, or other instruments to be in such form and to contain such terms and conditions as the Agent in the Agent's sole and absolute discretion may deem necessary or advisable;

(d)   to take any action required by the Bank in connection with the Credit Card Account.

The Company represents that the Credit Card Account is to be used solely for the business of the Company or for a purpose incidental to its business.

The Bank shall be entitled to rely on the authority granted herein to the Agent unless and until written instructions to the contrary are delivered to Bank by duly authorized representatives of the Company.

In witness whereof a duly authorized representative or representatives of the Company has/have subscribed his/their names on the reverse hereof and does/do certify to Whitney Bank that the signatures attached hereto are true and correct.

Continued on reverse side



REDACTED
**VISA® BUSINESS CARD APPLICATIO**

If you have any questions please visit any Whitney National Bank or call 1-800-326-3581 or (504) 838-6535 in New Orleans.

## A. COMPANY INFORMATION (Please Print or Type)

**Company's Legal Registered Name**
Highway Solutions LLC
Business Name (as it should appear on card(s)—maximum characters 24—including spaces or punctuation)

**Doing Business As**

**Tax ID Number**

**Business Street Address**
519 D Oliver Road

**Mailing Address (if different from street address)**
PO Box 210445

**City** Montgomery   **State** AL   **Zip** 36121

**City** Montgomery   **State** AL   **Zip** 36121-0445

**Business Phone**
334' 279-0800

**Fax Number**
334' 279-9457

**Nature of Business**
Highway Construction

☐ Sole Proprietor   ☐ Partnership   ☐ Corporation   ☑ Limited Liability Company   ☐ Non-Profit   ☐ Other (please describe)

**Gross Annual Revenue**
$

**Company Credit Limit Requested**
$

**Person to Contact:** Anne Marcato

**Billing Type:** ☐ Corporate   ☑ Individual   If Billing Type is left blank, individual billing will be ordered.

Please provide a business financial statement for the most recent fiscal year

Has the Applicant/Company or any partner or principal ever declared bankruptcy? ☐ Yes ☐ No   If Yes, please explain:

How long have you owned or operated this business? _____ years   If you are taking over an existing business, how long has it been in operation? _____ yes

## B. OWNER INFORMATION

| Name of Owner / Partner / Principal | | | Title | |
|---|---|---|---|---|
| Home Address | | City | State | Zip |
| E-mail Address | Home Telephone ( ) | Work Telephone ( ) | Social Security Number | Date of Birth |
| Name of Owner / Partner / Principal | | | Title | |
| Home Address | | City | State | Zip |
| E-mail Address | Home Telephone ( ) | Work Telephone ( ) | Social Security Number | Date of Birth |

*(handwritten: On File)*

## C. EMPLOYEE CARDHOLDERS

**Corporate Account # (Bank Use Only):**

If PIN request is left blank, a PIN will not be ordered

| Authorized Cardholders | Title / Position | PIN Issued | | Credit Limit |
|---|---|---|---|---|
| | | ☐ Yes | ☐ No | $ |
| | | ☐ Yes | ☐ No | $ |
| | | ☐ Yes | ☐ No | $ |
| | | ☐ Yes | ☐ No | $ |

*(handwritten: On File)*

Attach additional sheets if necessary

Continued on reverse s

VISA BUSINESS CARD APPLICATION continued from reverse side

## D. CONTINUING GUARANTY

In consideration of Whitney National Bank, New Orleans, Louisiana, ("Bank") at my request arranging for the extension of credit and making cash advances on a VISA Business Card issued to ("Debtor"), I (we) hereby give this Continuing Guaranty to the said Bank, its transferees, or assigns, for the payment in full, together with all interest, attorney's fees, and all other fees and charges of whatsoever nature and kind, of any indebtedness, direct or contingent, of Debtor to Bank on Debtor's VISA Business Card whether due or to become due, now existing or hereafter arising. To secure this Guaranty, I (we) grant the Bank a continuing security interest in all my (our) money and other property that is now or hereafter on deposit with, in the possession of, under the control of or held by Bank (except IRA, pension and other tax-deferred retirement accounts). The security interest granted herein is consensual and in addition to Bank's right of set off. It is further understood that I (we) are jointly and severally liable for all indebtedness as described. If this Guaranty is executed by more than one Guarantor, each shall be jointly and severally liable with each other Guarantor for all guaranteed indebtedness. I (we) do further waive all notice and agree to pay upon demand at any time to said Bank, its transferees or assigns, any indebtedness of said Debtor in the full amount owing at the time of demand, together with interest, fees and charges as set forth above.

The Bank may, one or more times, in its sole discretion, without notice to or consent of Guarantor, grant extensions, take and give up collateral, or fail to perfect or continue a security interest therein, grant compromises, releases and discharges, increase or decrease authorized account limits, and make any changes of any sort to the terms of its Cardholder Agreement and Disclosure Statement or related contracts or manner of doing business with said Debtor and with other parties and securities in relation thereto, and Guarantor hereby expressly waives any defenses arising from any such actions. I (we) further authorize Bank to obtain such information as Bank may require concerning the information completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application for which the undersigned is a guarantor. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

| Guarantor's Name | Guarantor's Name |
|---|---|
| Guarantor's Signature | Guarantor's Signature |
| Date | Date |

Please provide a signed, current personal financial statement on each Guarantor

## E. REQUEST FOR CARD ISSUANCE

The undersigned requests that Whitney National Bank open a VISA Business Card account for the company and that a VISA Business Card be issued to the individual employees of the company listed herein. If the application is approved, the company agrees to be bound by the terms and conditions of the Whitney National Bank Cardholder Agreement and Disclosure Statement which will accompany each VISA Business Card. The company acknowledges that the Bank has the right to change any term of the cardholder agreement at any time whatsoever and shall provide the company any prior written notice required by law. The company certifies that all information contained within this application and/or on any documents provided to the Bank, including financial statements, are true and correct. The company further certifies, represents and warrants that it assumes full liability for all indebtedness incurred by the establishment of this VISA Business Card account, that the VISA Business Card account and cards will be used solely for business purposes and that the person whose signature appears below is authorized to request issuance of the card(s) and to bind and obligate the company to the terms and conditions of the Whitney National Bank Cardholder Agreement and Disclosure Statement.

| Company | By |
|---|---|
| By (Authorized Signature) | Date |

If this request for credit is in the name of an individual or individuals, and you have supplied information on a co-applicant, please sign below if you intend to apply for joint credit.

☐ We intend to apply for joint credit:   Signature of Applicant_____   Signature of Co-Applicant_____

You may bring the Application, Authority and financial statements to any branch of the Whitney National Bank or mail to:
Whitney National Bank, Credit Card Department
Attn: VISA Business Card Services, P.O. Box 61750, New Orleans, Louisiana 70161

## FOR BANK USE ONLY

| Total Whitney National Bank Indebtedness: | | Company $ | | Guarantor $ | | |
|---|---|---|---|---|---|---|
| Approved | | | Declined | | | Date |
| Bank Officer | | Officer Number | Extension | | Company Number | |
| Number of Cards | MAX Tracking # | | | Approved Company Limit | | |
| Special Instructions | | | | | | |

AUTHORITY FORM continued from reverse side

## CERTIFICATE (Corporation or Non-Profit Corporation)

The undersigned hereby certifies that he/she is the Secretary of _____ (the "Company" referred to on the reverse), a corporation or non-profit corporation duly organized and existing under the laws of the State of _____ and that the foregoing is a true copy of the Resolutions duly and unanimously adopted by the Board of Directors or Trustees of the Company, or voting members of the Company, as applicable, at a meeting duly held, at which a quorum was present and acting throughout, or by appropriate written consent, and that such Resolutions are in full force and effect, and that there is no limitation of any kind upon the power of that body to enter into the foregoing resolutions or agreement. In witness whereof, I have hereunto set my hand as Secretary of the Company, and have affixed hereto the official seal of the Company on this

_____ day of _____, 20____.

_____
Secretary or Assistant Secretary

(SEAL) Attest: _____

(President's or second attesting officer's signature) (required if Secretary or Assistant Secretary signing above is designated as an Agent)

## CERTIFICATE (Sole Proprietorship)

I am the sole owner of the unincorporated business conducted under the trade name of **Highway Solutions LLC** (the "Company" referred to on the reverse), and desire to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement. I further authorize Bank to obtain such information as Bank may require concerning the information completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

**Anne S. Marcato**
Signature

**4-19-05**
Date

## CERTIFICATE (Partnership/Joint Venture/Limited Liability Company)

The undersigned certifies on this **19th** day of **April**, 20**05** that they are (i) the sole partners and owners or members of the business or joint venture conducted under the name of **Highway Solutions LLC** (the "Company" referred to on the reverse), or (ii) the managing partners, managers or certifying officials required by the Company's articles of organization or partnership agreement to transact the business of the Company or to certify as to the authority of others to act on the Company's behalf, and that the Company is organized under the laws of the State of **Alabama**, and that the Company, through the undersigned, desires to establish certain business relationship with Whitney National Bank, in accordance with the foregoing resolutions or agreement. I (we) further authorize Bank to obtain such information as Bank may require concerning the information completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

Partner/Member/Manager
**Anne S. Marcato**

By: _____
Its:

Partner/Member/Manager

By: _____
Its:

Partner/Member/Manager

By: _____
Its:

Partner/Member/Manager

By: _____
Its:

## CERTIFICATE (Trust, Unincorporated Association, Club or Organization)

The undersigned certifies on this _____ day of _____, 20___ that he or she is/they are the _____ (and) _____, of _____ (the "Company" referred to on the reverse), a(n) _____ (type of organization); and that this Company desires to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement.

_____
Signature

_____
Title

_____
Signature

_____
Title

## CERTIFICATE (Parish/County, Municipality, Public Board, Political or Public Corporation, Subdivision, or Taxing District)

The undersigned hereby certifies on this _____ day of _____, 20___ that he/she is the _____, an officer or duly authorized official of the _____ (the "Company" referred to on the reverse), a(n) _____ created under or by the constitution and laws of the State of _____, and that the foregoing is a true copy of Resolutions duly and unanimously adopted in accordance with the rules and regulations governing the Company, as authorized pursuant to _____, and that such Resolutions are in full force and effect, and that there is no limitation of any kind upon the power of that body to enter into the foregoing agreement or resolutions.

_____
Signature

_____
Title

**Entity Certification** To the extent that any partners or members of the Company providing these resolutions are legal entities such as corporations, partnerships, limited liability companies or any other form of legal entity organized and existing under the laws of any State of the United States, the person executing this resolution on behalf of such entity in its capacity as a partner or member of the Company does hereby certify to Whitney National Bank that such person is duly authorized to execute this resolution on behalf of such entity acting in its capacity as a partner or member of the Company.

**WHITNEY®**                                                    **AUTHORITY FORM**

Authority Relative to the Opening of a VISA Business Credit Card Account

RESOLVED, that ___Highway Solutions LLC___ (the "Company") has established with Whitney
National Bank ("Bank") a VISA Business Card account (the "Credit Card Account") in the name of and designated as:

_____
DBA Name (if different from above)

and the Company does hereby authorize that credit cards be issued in connection with the Credit Card Account by the Bank in the name of and for the use of
those individuals designated (each an "Employee Cardholder") by any of the following individuals acting alone (the "Agent"):

| Agent | Title / Position | Signature |
|-------|------------------|-----------|
| Anne S. Marcato | President | Anne S. Marcato |
| Tommy DeBardelaben | Controller | T.N. DeBardelaben |
| Lydia Porter | Admin Assistant | Lydia L. Porter |
| | | |
| | | |

that all amounts of any kind whatsoever, including without limitation, charges for goods and services, cash advances, interest and finance charges, attorneys'
fees, collection costs, and all other fees and charges, owed to the Bank from the use of any credit card issued to any Employee Cardholder in connection with
the Credit Card Account, shall be paid to the Bank by the Company. The Company hereby certifies that the authority granted herein to each Agent is made in
accordance with the terms and conditions of the Company's articles of organization or operating agreement or contract.

The Company hereby authorizes any existing or future Employee Cardholder to borrow money as represented by extensions of credit under the Credit
Card Account.

Any Agent is hereby authorized:
   (a)   to designate individuals to be issued credit cards, and to request that personal identification numbers (PINs) be issued to any one or more of the
Employee Cardholders, such request to be in such form and to contain such terms and conditions as the Bank may request or require and as the Agent in the
Agent's sole and absolute discretion may deem necessary or advisable;
   (b)   to sign, execute and endorse such documents as may be necessary or required by the Bank to evidence indebtedness and other obligations, including,
without limitation, this Application, promissory notes, endorsements, and continuing guarantees; to grant to Bank security rights in Company's deposit ac-
counts and other property, real or personal, as collateral security for the Credit Card Account, in Agent's sole discretion;
   (c)   to execute and deliver any application forms, contracts, documents, security agreements, or other instruments in writing required or requested by the
Bank in connection with the Credit Card Account, such forms, contracts, documents, security agreements, or other instruments to be in such form and to
contain such terms and conditions as the Agent in the Agent's sole and absolute discretion may deem necessary or advisable;
   (d)   to take any action required by the Bank in connection with the Credit Card Account.

The Company represents that the Credit Card Account is to be used solely for the business of the Company or for a purpose incidental to its business.

The Bank shall be entitled to rely on the authority granted herein to the Agent unless and until written instructions to the contrary are delivered to Bank by
duly authorized representatives of the Company.

In witness whereof a duly authorized representative or representatives of the Company has/have subscribed his/their names on the reverse hereof and does/
do certify to Whitney Bank that the signatures attached hereto are true and correct.

Continued on reverse side



**WHITNEY®**

**VISA® BUSINESS CARD APPLICATION**

If you have any questions please visit any Whitney National Bank or call 1-800-526-3581 or (504) 838-6535 in New Orleans.

## A. COMPANY INFORMATION (Please Print or Type)

| Company's Legal Registered Name | Doing Business As | Tax ID Number |
|---|---|---|
| Highway Solutions LLC | | |

Business Name (as it should appear on card(s)—maximum characters 24—including spaces or punctuation)

| Business Street Address | | City | State | Zip |
|---|---|---|---|---|
| 579 D Oliver Road | | Montgomery | AL | 36121 |

| Mailing Address (if different from street address) | | City | State | Zip |
|---|---|---|---|---|
| PO Box 210445 | | Montgomery | AL | 36121- |

| Business Phone | Fax Number | Nature of Business |
|---|---|---|
| (334) 279-8267 | ( ) | Sitework contracting Land Clearing 210445 |

| ☐ Sole Proprietor | ☐ Partnership | ☐ Corporation | ☑ Limited Liability Company | ☐ Non-Profit | ☐ Other (please describe) |

| Gross Annual Revenue | Company Credit Limit Requested |
|---|---|
| $ 993 m - (1st 9 mts. '04) | $ 40,000 |

| Person to Contact: | Billing Type: ☐ Corporate |
|---|---|
| ANNE S. Marcato | ☑ Individual |

If Billing Type is left blank, individual billing will be ordered.

Please provide a business financial statement for the most recent fiscal year    ON file

Has the Applicant/Company or any partner or principal ever declared bankruptcy? ☐ Yes  ☑ No    If Yes, please explain:

How long have you owned or operated this business? _____ years    If you are taking over an existing business, how long has it been in operation? _____ years

## B. OWNER INFORMATION

| Name of Owner / Partner / Principal | | | Title |
|---|---|---|---|
| ANNE S. Marcato | | | President |

| Home Address | City | State | Zip |
|---|---|---|---|
| | | | 36111 |

| E-mail Address | Home Telephone ( ) | Work Telephone ( ) | Social Security Number | Date of Birth |
|---|---|---|---|---|

| Name of Owner / Partner / Principal | | | Title |
|---|---|---|---|

| Home Address | City | State | Zip |
|---|---|---|---|

| E-mail Address | Home Telephone ( ) | Work Telephone ( ) | Social Security Number | Date of Birth |
|---|---|---|---|---|

## C. EMPLOYEE CARDHOLDERS

| Corporate Account # (Bank Use Only): | | If PIN request is left blank, a PIN will not be ordered |
|---|---|---|

| Authorized Cardholders | Title / Position | PIN Issued | Credit Limit |
|---|---|---|---|
| Terry Tedder | | ☐ Yes   ☐ No | $ 4,000.00 |
| | | ☐ Yes   ☐ No | $ |
| | | ☐ Yes   ☐ No | $ |
| | | ☐ Yes   ☐ No | $ |

Attach additional sheets if necessary

Continued on reverse side

REDACTED

VISA BUSINESS CARD APPLICATION continued from reverse side

## D. CONTINUING GUARANTY

In consideration of Whitney National Bank, New Orleans, Louisiana, ("Bank") at my request arranging for the extension of credit and making cash advances on a VISA Business Card issued to _____ ("Debtor"), I (we) hereby give this Continuing Guaranty to the said Bank, its transferees, or assigns, for the payment in full, together with all interest, attorney's fees, and all other fees and charges of whatsoever nature and kind, of any indebtedness, direct or contingent, of Debtor to Bank on Debtor's VISA Business Card whether due or to become due, now existing or hereafter arising. To secure this Guaranty, I (we) grant the Bank a continuing security interest in all my (our) money and other property that is now or hereafter on deposit with, in the possession of, under the control of or held by Bank (except IRA, pension and other tax-deferred retirement accounts). The security interest granted herein is consensual and in addition to Bank's right of set off. It is further understood that I (we) are jointly and severally liable for all indebtedness as described. If this Guaranty is executed by more than one Guarantor, each shall be jointly and severally liable with each other Guarantor for all guaranteed indebtedness. I (we) do further waive all notice and agree to pay upon demand at any time to said Bank, its transferees or assigns, any indebtedness of said Debtor in the full amount owing at the time of demand, together with interest, fees and charges as set forth above.
The Bank may, one or more times, in its sole discretion, without notice to or consent of Guarantor, grant extensions, take and give up collateral, or fail to perfect or continue a security interest therein, grant compromises, releases and discharges, increase or decrease authorized account limits, and make any changes of any sort to the terms of its Cardholder Agreement and Disclosure Statement or related contracts or manner of doing business with said Debtor and with other parties and securities in relation thereto, and Guarantor hereby expressly waives any defenses arising from any such actions. I (we) further authorize Bank to obtain such information as Bank may require completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application for which the undersigned is a guarantor. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

| Guarantor's Name | Guarantor's Name |
|---|---|
| Anne S. Marcato | Michael C. Marcato |
| Guarantor's Signature | Guarantor's Signature |
| Annes Malcato | Mm |
| Date | Date |
| 1/27/05 | 1/27/05 |

Please provide a signed, current personal financial statement on each Guarantor

## E. REQUEST FOR CARD ISSUANCE

The undersigned requests that Whitney National Bank open a VISA Business Card account for the company and that a VISA Business Card be issued to the individual employees of the company listed herein. If the application is approved, the company agrees to be bound by the terms and conditions of the Whitney National Bank Cardholder Agreement and Disclosure Statement which will accompany each VISA Business Card. The company acknowledges that the Bank has the right to change any term of the cardholder agreement at any time whatsoever and shall provide the company any prior written notice required by law. The company certifies that all information contained within this application and/or on any documents provided to the Bank, including financial statements, are true and correct. The company further certifies, represents and warrants that it assumes full liability for all indebtedness incurred by the establishment of this VISA Business Card account, that the VISA Business Card account and cards will be used solely for business purposes and that the person whose signature appears below is authorized to request issuance of the card(s) and to bind and obligate the company to the terms and conditions of the Whitney National Bank Cardholder Agreement and Disclosure Statement.

| Company | By |
|---|---|
| Highway Solutions LLC | Anne S. Marcato |
| By (Authorized Signature) | Date |
| Anne S. Marcato | 1/27/05 |

If this request for credit is in the name of an individual or individuals, and you have supplied information on a co-applicant, please sign below if you intend to apply for joint credit.

☐ We intend to apply for joint credit:  Signature of Applicant_____  Signature of Co-Applicant_____

You may bring the Application, Authority and financial statements to any branch of the Whitney National Bank or mail to:
Whitney National Bank, Credit Card Department
Attn: VISA Business Card Services, P.O. Box 61750, New Orleans, Louisiana 70161

## FOR BANK USE ONLY

| Total Whitney National Bank indebtedness: | Company $ 1,000,000 | Guarantor $ same | |
|---|---|---|---|
| Approved | | Declined | Date 2-1-05 |
| Bank Officer Gene Crane | Officer Number 738 | Extension | Company Number |
| Number of Cards | MAX Tracking # | Approved Company Limit | |
| Special Instructions | | | |

AUTHORITY FORM continued from reverse side

## CERTIFICATE (Corporation or Non-Profit Corporation) ▮▮▮▮▮▮

The undersigned hereby certifies that he/she is the Secretary of _____ (the "Company" referred to on the reverse), a corporation/or non-profit corporation duly organized and existing under the laws of the State of _____ and that the foregoing is a true copy of the Resolutions duly and unanimously adopted by the Board of Directors or Trustees of the Company, or voting members of the Company, as applicable, at a meeting duly held, at which a quorum was present and acting throughout, or by appropriate written consent, and that such Resolutions are in full force and effect, and that there is no limitation of any kind upon the power of that body to enter into the foregoing resolutions or agreement. In witness whereof, I have hereunto set my hand as Secretary of the Company, and have affixed hereto the official seal of the Company on this

_____ day of _____, 20_____.

_____
Secretary or Assistant Secretary

(SEAL) Attest_____

_____
(President's or second attesting officer's signature) (required if Secretary or Assistant Secretary signing above is designated as an Agent)

## CERTIFICATE (Sole Proprietorship) ▮▮▮▮▮▮

I am the sole owner of the unincorporated business conducted under the trade name of _Highway Solutions LLC_ (the "Company" referred to on the reverse), and desire to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement. I further authorize Bank to obtain such information as Bank may require concerning the information completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

_____        _____
Signature                                          Date

## CERTIFICATE (Partnership/Joint Venture/Limited Liability Company) ▮▮▮▮▮▮

The undersigned certifies as this 29th day of _January_, 20_05_ that they are (i) the sole partners and owners or members of the business or joint venture conducted under the name of _Highway Solutions LLC_ (the Company referred to on the reverse), or (ii) the managing partners, managers or certifying officials required by the Company's articles of organization or partnership agreement to transact the business of the Company or to certify as to the authority of others to act on the Company's behalf, and that the Company is organized under the laws of the State of _Alabama_, and that the Company, through the undersigned, desires to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement. I (we) further authorize Bank to obtain such information as Bank may require concerning the information completed herein, including obtaining a consumer credit bureau report on the undersigned in conjunction with this VISA Business Card application. This authorization also extends to any additional or future business or consumer credit reviews deemed necessary by Bank.

Partner/Member/Manager                              Partner/Member/Manager

_Anne S. Marcato_

By:_____                  By:_____
Its:                                                Its:

Partner/Member/Manager                              Partner/Member/Manager

By:_____                  By:_____
Its:                                                Its:

## CERTIFICATE (Trust, Unincorporated Association, Club or Organization) ▮▮▮▮▮▮

The undersigned certifies on this _____ day of _____, 20___ that he or she is/they are the _____ (and) _____, of _____ (the "Company" referred to on the reverse), a(n) _____ (type of organization); and that this Company desires to establish certain business relationships with Whitney National Bank, in accordance with the foregoing resolutions or agreement.

_____        _____
Signature                                          Title

_____        _____
Signature                                          Title

## CERTIFICATE (Parish/County, Municipality, Public Board, Political or Public Corporation, Subdivision, or Taxing District) ▮▮▮▮▮▮

The undersigned hereby certifies on this _____ day of _____, 20___ that he/she is the _____, an officer or duly authorized official of the _____ (the "Company" referred to on the reverse), a(n) _____ created under or by the constitution and laws of the State of _____, and that the foregoing is a true copy of Resolutions duly and unanimously adopted in accordance with the rules and regulations governing the Company, as authorized pursuant to _____, and that such Resolutions are in full force and effect, and that there is no limitation of any kind upon the power of that body to enter into the foregoing agreement or resolutions.

_____        _____
Signature                                          Title

**Entity Certification** To the extent that any partners or members of the Company providing these resolutions are legal entities such as corporations, partnerships, limited liability companies or any other form of legal entity organized and existing under the laws of any State of the United States, the person executing this resolution on behalf of such entity in its capacity as a partner or member of the Company does hereby certify to Whitney National Bank that such person is duly authorized to execute this resolution on behalf of such entity acting in its capacity as a partner or member of the Company.

**WHITNEY®**                                                    **AUTHORITY FORM**

Authority Relative to the Opening of a VISA Business Credit Card Account �...

RESOLVED, that _Highway Solutions LLC_ (the "Company") has established with Whitney National Bank ("Bank") a VISA Business Card account (the "Credit Card Account") in the name of and designated as:

_____
DBA Name (if different from above)

and the Company does hereby authorize that credit cards be issued in connection with the Credit Card Account by the Bank in the name of and for the use of those individuals designated (each an "Employee Cardholder") by any of the following individuals acting alone (the "Agent"):

| Agent | Title / Position | Signature |
|---|---|---|
| Anne S. Marcato | President | Annes. Marcato |
|  |  |  |
|  |  |  |
|  |  |  |

that all amounts of any kind whatsoever, including without limitation, charges for goods and services, cash advances, interest and finance charges, attorneys' fees, collection costs, and all other fees and charges, owed to the Bank from the use of any credit card issued to any Employee Cardholder in connection with the Credit Card Account, shall be paid to the Bank by the Company. The Company hereby certifies that the authority granted herein to each Agent is made in accordance with the terms and conditions of the Company's articles of organization or operating agreement or contract.

The Company hereby authorizes any existing or future Employee Cardholder to borrow money as represented by extensions of credit under the Credit Card Account.

Any Agent is hereby authorized:

(a)    to designate individuals to be issued credit cards, and to request that personal identification numbers (PINs) be issued to any one or more of the Employee Cardholders, such request to be in such form and to contain such terms and conditions as the Bank may request or require and as the Agent in the Agent's sole and absolute discretion may deem necessary or advisable;

(b)    to sign, execute and endorse such documents as may be necessary or required by the Bank to evidence indebtedness and other obligations, including, without limitation, this Application, promissory notes, endorsements, and continuing guarantees; to grant to Bank security rights in Company's deposit accounts and other property, real or personal, as collateral security for the Credit Card Account, in Agent's sole discretion;

(c)    to execute and deliver any application forms, contracts, documents, security agreements, or other instruments in writing required or requested by the Bank in connection with the Credit Card Account, such forms, contracts, documents, security agreements, or other instruments to be in such form and to contain such terms and conditions as the Agent in the Agent's sole and absolute discretion may deem necessary or advisable;

(d)    to take any action required by the Bank in connection with the Credit Card Account.

The Company represents that the Credit Card Account is to be used solely for the business of the Company or for a purpose incidental to its business.

The Bank shall be entitled to rely on the authority granted herein to the Agent unless and until written instructions to the contrary are delivered to Bank by duly authorized representatives of the Company.

In witness whereof a duly authorized representative or representatives of the Company has/have subscribed his/their names on the reverse hereof and does/do certify to Whitney Bank that the signatures attached hereto are true and correct.

Continued on reverse side



**WHITNEY**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070        RETURN
                               TO:

ANNE MARCATO                   N02183
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFER TO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

### Visa BusinessCard
### Statement of Account

| ACCOUNT NUM. | |
| --- | --- |
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $9,670.46 |
| | or |
| MIN. PAYMENT | $748.00 |
| AMOUNT ENCLOSED $ | |

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number
changes made on the reverse side

4802390000179504000074800009670460

---
Detach here          To assure proper credit please return upper portion with remittance
---

## STATEMENT MESSAGES

Your account is past due $555.00. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
| --- | --- | --- | --- | --- | --- |
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE "FINANCE CHARGE" | 105.27 |

| CUSTOMER SERVICE CALL | ACCOUNT NUMBER | | ACCOUNT SUMMARY | |
| --- | --- | --- | --- | --- |
| New Orleans, LA  (504) 849-6700 Toll Free  (800) 326-3501 | | | PREVIOUS BALANCE | 9,550.19 |
| | STATEMENT DATE | PAYMENT DUE DATE | NEW PURCHASES & OTHER CHARGES | 0.00 |
| | 05/28/07 | 06/22/07 | NEW CASH ADVANCES | .00 |
| SEND BILLING INQUIRIES TO: | CREDIT LIMIT | AVAILABLE CREDIT | FINANCE CHARGE | 105.27 |
| CREDIT CARD CENTER | $0.00 | $0.00 | CREDITS | .00 |
| PO BOX 61750 NEW ORLEANS, LA 70161-1750 | NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE | PAYMENTS | .00 |
| | | | LATE PAYMENT CHARGE | 15.00 |
| | 31 | $748.00 | NEW BALANCE | 9,670.46 |

## FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
| --- | --- | --- | --- | --- |
| PURCHASES | $9,535.19 | 1.104% | 13.250% | $105.27 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE  13.25
(this billing cycle)

*PERIODIC RATES MAY VARY.*

| To assure proper credit please return upper portion with remittance. See reverse side for important information. | Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement. |
| --- | --- |



**WHITNEY**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

CREDIT CARD CENTER                    RETURN
P.O. BOX 23070                        ◄TO:
COLUMBUS, GA 31902-3070

JOHN W HAM                            N02102
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFER TO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

*Visa BusinessCard*
*Statement of Account*

| | |
|---|---|
| ACCOUNT NUM. | |
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $6,266.58 |
| or | |
| MIN. PAYMENT | $609.80 |

AMOUNT
ENCLOSED $

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number
changes made on the reverse side

REDACTED

4802390000179520000060980000626582

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Detach here          To assure proper credit please return upper portion with remittance.

---

## STATEMENT MESSAGES

Your account is past due $484.80. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 04-30 | 04-30 | | 0000 | OVERLIMIT FEE | 25.00 |
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-17 | 05-16 | 2469216713600087731399 | 4816 | TWX*AOL SERVICE 800-827-6364 NY | 25.90 |
| 05-28 | 05-28 | | 0000 | PURCHASE *FINANCE CHARGE* | 67.23 |

---

CUSTOMER SERVICE CALL

New Orleans, LA    (504) 849-6700
Toll Free          (800) 326-3501

SEND BILLING INQUIRIES TO:

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

**ACCOUNT NUMBER**

| STATEMENT DATE | PAYMENT DUE DATE |
|---|---|
| 05/28/07 | 06/22/07 |
| CREDIT LIMIT | AVAILABLE CREDIT |
| $0.00 | $0.00 |
| NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE |
| 31 | $609.80 |

**ACCOUNT SUMMARY**

| | |
|---|---|
| PREVIOUS BALANCE | 6,133.45 |
| NEW PURCHASES & OTHER CHARGES | 50.90 |
| NEW CASH ADVANCES | .00 |
| FINANCE CHARGE | 67.23 |
| CREDITS | .00 |
| PAYMENTS | .00 |
| LATE PAYMENT CHARGE | 15.00 |
| NEW BALANCE | 6,266.58 |

---

## FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $6,089.31 | 1.104% | 13.250% | $67.23 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE   13.25
(this billing cycle)

*PERIODIC RATES MAY VARY.*

To assure proper credit please return upper portion with remittance.
See reverse side for important information.

Grace Period; To avoid an additional Finance Charge on Purchases pay
entire New Balance by Payment Due Date. Finance Charge accrues on Cash
Advances daily until paid and will be billed in your next Statement.



## WHITNEY

**WHITNEY NATIONAL BANK**
PO BOX 61750
NEW ORLEANS LA 70161-1750

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070

RETURN
TO:

THOMAS CATRETT                    N02181
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFER TO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

### Visa BusinessCard
### Statement of Account

| ACCOUNT NUM. | |
|---|---|
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $2,912.34 |
| MIN. PAYMENT | or $226.00 |

AMOUNT
ENCLOSED $

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number
changes made on the reverse side

4 8023900001795380000226000002912348

--------------------------------------------------

Detach here                To assure proper credit please return upper portion with remittance

---

## STATEMENT MESSAGES

Your account is past due $100.00. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE *FINANCE CHARGE* | 31.31 |

---

**CUSTOMER SERVICE CALL**

New Orleans, LA    (504) 849-6700
Toll Free          (800) 326-3501

| ACCOUNT NUMBER | | ACCOUNT SUMMARY | |
|---|---|---|---|
| | | PREVIOUS BALANCE | 2,866.03 |
| STATEMENT DATE | PAYMENT DUE DATE | NEW PURCHASES & OTHER CHARGES | 0.00 |
| 05/28/07 | 06/22/07 | NEW CASH ADVANCES | .00 |
| CREDIT LIMIT | AVAILABLE CREDIT | FINANCE CHARGE | 31.31 |
| $0.00 | $0.00 | CREDITS | .00 |
| NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE | PAYMENTS | .00 |
| | | LATE PAYMENT CHARGE | 15.00 |
| 31 | $226.00 | NEW BALANCE | 2,912.34 |

**SEND BILLING INQUIRIES TO:**

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

---

### FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $2,836.03 | 1.104% | 13.250% | $31.31 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE  13.25
(this billing cycle)

PERIODIC RATES MAY VARY.

To assure proper credit please return upper portion with remittance. See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.



**WHITNEY**

**Visa BusinessCard**
**Statement of Account**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

| ACCOUNT NUM. | |
|---|---|
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $10,299.94 |
| | or |
| MIN. PAYMENT | $903.34 |
| AMOUNT ENCLOSED $ | |

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070
RETURN TO:

RICHARD A BROWN                N02180
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFERTO SPECIAL CREDITS
MONTGOMERY AL   36121-0445

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number
changes made on the reverse side

4802390000194545000090334001029 9940

---

Detach here                    To assure proper credit please return upper portion with remittance

## STATEMENT MESSAGES

Your account is past due $897.34. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 04-30 | 04-30 | | 0000 | OVERLIMIT FEE | 25.00 |
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE *FINANCE CHARGE* | 111.60 |

---

CUSTOMER SERVICE CALL

New Orleans, LA     (504) 849-6700
Toll Free               (800) 326-3501

SEND BILLING INQUIRIES TO:

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

**ACCOUNT NUMBER**

| STATEMENT DATE | PAYMENT DUE DATE |
|---|---|
| 05/28/07 | 06/22/07 |

| CREDIT LIMIT | AVAILABLE CREDIT |
|---|---|
| $0.00 | $0.00 |

| NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE |
|---|---|
| 31 | $903.34 |

**ACCOUNT SUMMARY**

| | |
|---|---|
| PREVIOUS BALANCE | 10,148.34 |
| NEW PURCHASES & OTHER CHARGES | 25.00 |
| NEW CASH ADVANCES | .00 |
| FINANCE CHARGE | 111.60 |
| CREDITS | .00 |
| PAYMENTS | .00 |
| LATE PAYMENT CHARGE | 15.00 |
| NEW BALANCE | 10,299.94 |

## FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $10,100.34 | 1.104% | 13.250% | $111.60 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE  13.25
(this billing cycle)

PERIODIC RATES MAY VARY.

To assure proper credit please return upper portion with remittance. See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.

PAGE 1 OF 1                              See reverse side for important information

# WHITNEY

**Visa BusinessCard**
**Statement of Account**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

| ACCOUNT NUM. | |
|---|---|
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $3,133.43 |
| | or |
| MIN. PAYMENT | $246.00 |
| AMOUNT ENCLOSED $ | |

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070

**RETURN TO:**

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number changes made on the reverse side

CARL LOCKLEY                    N02179
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFER TO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

480239000020641400002460000031 33438

--------------------------------------------------------------------------------
Detach here             To assure proper credit please return upper portion with remittance

## STATEMENT MESSAGES

Your account is past due $183.00. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Tran Date Date | Reference Number | MCC Transaction Description | Amount |
|---|---|---|---|
| 05-07 05-07 | | 0000 LATE PAYMENT CHARGE | 15.00 |
| 05-28 05-28 | | 0000 PURCHASE "FINANCE CHARGE" | 33.72 |

CUSTOMER SERVICE CALL

New Orleans, LA        (504) 849-6700
Toll Free              (800) 326-3501

SEND BILLING INQUIRIES TO:

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

| ACCOUNT NUMBER | | |
|---|---|---|
| STATEMENT DATE | PAYMENT DUE DATE | |
| 05/28/07 | 06/22/07 | |
| CREDIT LIMIT | AVAILABLE CREDIT | |
| $0.00 | $0.00 | |
| NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE | |
| 31 | $246.00 | |

| ACCOUNT SUMMARY | |
|---|---|
| PREVIOUS BALANCE | 3,084.71 |
| NEW PURCHASES & OTHER CHARGES | 0.00 |
| NEW CASH ADVANCES | .00 |
| FINANCE CHARGE | 33.72 |
| CREDITS | .00 |
| PAYMENTS | .00 |
| LATE PAYMENT CHARGE | 15.00 |
| NEW BALANCE | 3,133.43 |

## FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $3,084.71 | 1.104% | 13.250% | $33.72 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE  13.25
(this billing cycle)

*PERIODIC RATES MAY VARY.*

To assure proper credit please return upper portion with remittance.
See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.


WHITNEY

**Visa BusinessCard**
**Statement of Account**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

| ACCOUNT NUM. | |
|---|---|
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $3,315.39 |
| | or |
| MIN. PAYMENT | $259.00 |

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070

RETURN
TO:

AMOUNT
ENCLOSED $

MIKE FLOYD          N02178
HIGHWAY SOLUTIONS LLC
PO BOX 210445
*REFER TO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number
   changes made on the reverse side

4802390000213022000025900003315395

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Detach here          To assure proper credit please return upper portion with remittance

## STATEMENT MESSAGES

Your account is past due $193.00. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE "FINANCE CHARGE" | 35.71 |

CUSTOMER SERVICE CALL

New Orleans, LA    (504) 849-8700
Toll Free          (800) 326-3501

| ACCOUNT NUMBER | | ACCOUNT SUMMARY | |
|---|---|---|---|
| | | PREVIOUS BALANCE | 3,264.68 |
| **STATEMENT DATE** | **PAYMENT DUE DATE** | NEW PURCHASES & OTHER CHARGES | 0.00 |
| 05/28/07 | 06/22/07 | NEW CASH ADVANCES | .00 |
| **CREDIT LIMIT** | **AVAILABLE CREDIT** | FINANCE CHARGE | 35.71 |
| $0.00 | $0.00 | CREDITS | .00 |
| **NUMBER OF DAYS IN BILLING CYCLE** | **MINIMUM PAYMENT DUE** | PAYMENTS | .00 |
| | | LATE PAYMENT CHARGE | 15.00 |
| 31 | $259.00 | **NEW BALANCE** | 3,315.39 |

SEND BILLING INQUIRIES TO:

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

## FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $3,234.68 | 1.104% | 13.250% | $35.71 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE   15.25
(this billing cycle)

PERIODIC RATES MAY VARY.

To assure proper credit please return upper portion with remittance. See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.



# WHITNEY

**WHITNEY NATIONAL BANK**
PO BOX 61750
NEW ORLEANS LA 70161-1750

## Visa BusinessCard
## Statement of Account

| | |
|---|---|
| ACCOUNT NUM. | |
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $3,511.02 |
| | or |
| MIN. PAYMENT | $274.00 |

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070    RETURN TO:

AMOUNT
ENCLOSED $

SHAWN SCHWARTZ    N02177
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**TRANSFERRED TO SPECIAL CREDITS
MONTGOMERY AL   36121-0445

Please make check Payable to
Whitney Bank

☐ Check here for an address or phone number changes made on the reverse side

4 8023900002147800000274000003511020

- - - - Detach here - - - -    To assure proper credit please return upper portion with remittance

## STATEMENT MESSAGES

Your account is past due $204.00. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE *FINANCE CHARGE* | 37.85 |

**CUSTOMER SERVICE CALL**

New Orleans, LA   (504) 849-6700
Toll Free   (800) 328-3501

SEND BILLING INQUIRIES TO:

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

| ACCOUNT NUMBER | | |
|---|---|---|
| STATEMENT DATE | PAYMENT DUE DATE | |
| 05/28/07 | 06/22/07 | |
| CREDIT LIMIT | AVAILABLE CREDIT | |
| $0.00 | $0.00 | |
| NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE | |
| 31 | $274.00 | |

**ACCOUNT SUMMARY**

| | |
|---|---|
| PREVIOUS BALANCE | 3,458.17 |
| NEW PURCHASES & OTHER CHARGES | 0.00 |
| NEW CASH ADVANCES | .00 |
| FINANCE CHARGE | 37.85 |
| CREDITS | .00 |
| PAYMENTS | .00 |
| LATE PAYMENT CHARGE | 15.00 |
| NEW BALANCE | 3,511.02 |

## FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $3,428.17 | 1.104% | 13.250% | $37.86 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE   13.29
(this billing cycle)

PERIODIC RATES MAY VARY.

To assure proper credit please return upper portion with remittance. See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.

# WHITNEY

**Visa BusinessCard**
**Statement of Account**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

| | |
|---|---|
| ACCOUNT NUM. | |
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $3,443.59 |
| or | |
| MIN. PAYMENT | $267.00 |

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070
◀ RETURN TO:

AMOUNT ENCLOSED $

BILLY MAXIE                          N02176
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFER TO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number
changes made on the reverse side

48023900002229570000267000003443599

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Detach here                    To assure proper credit please return upper portion with remittance

---

## STATEMENT MESSAGES

Your account is past due $198.00. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE *FINANCE CHARGE* | 37.11 |

---

### CUSTOMER SERVICE CALL

New Orleans, LA        (504) 849-6700
Toll Free              (800) 326-3501

SEND BILLING INQUIRIES TO:

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

| ACCOUNT NUMBER | | ACCOUNT SUMMARY | |
|---|---|---|---|
| | | PREVIOUS BALANCE | 3,391.48 |
| **STATEMENT DATE** | **PAYMENT DUE DATE** | NEW PURCHASES & OTHER CHARGES | 0.00 |
| 05/28/07 | 06/22/07 | NEW CASH ADVANCES | .00 |
| **CREDIT LIMIT** | **AVAILABLE CREDIT** | FINANCE CHARGE | 37.11 |
| $0.00 | $0.00 | CREDITS | .00 |
| **NUMBER OF DAYS IN BILLING CYCLE** | **MINIMUM PAYMENT DUE** | PAYMENTS | .00 |
| | | LATE PAYMENT CHARGE | 15.00 |
| 31 | $267.00 | **NEW BALANCE** | 3,443.59 |

---

## FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | 33,361.48 | 1.104% | 13.250% | $37.11 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE  13.25
(this billing cycle)

*PERIODIC RATES MAY VARY.*

To assure proper credit please return upper portion with remittance.
See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.

# WHITNEY

**Visa BusinessCard**
**Statement of Account**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

| ACCOUNT NUM. | |
|---|---|
| PAYMENT DUE DATE | 05-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $3,697.12 |
| | or |
| MIN. PAYMENT | $500.57 |
| AMOUNT ENCLOSED $ | |

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070

RETURN TO:

RANDY STERNENBERG    N02175
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFERTO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number changes made on the reverse side

4802390000225919000050057000 3697125

---

Detach here          To assure proper credit please return upper portion with remittance

## STATEMENT MESSAGES

Your account is past due $428.57. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE *FINANCE CHARGE* | 39.33 |

---

### CUSTOMER SERVICE CALL

New Orleans, LA      (504) 849-6700
Toll Free        (800) 326-3501

SEND BILLING INQUIRIES TO:

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

| | ACCOUNT NUMBER | | ACCOUNT SUMMARY | |
|---|---|---|---|---|
| | | | PREVIOUS BALANCE | 3,642.79 |
| | STATEMENT DATE | PAYMENT DUE DATE | NEW PURCHASES & OTHER CHARGES | 0.00 |
| | 05/28/07 | 06/22/07 | NEW CASH ADVANCES | .00 |
| | CREDIT LIMIT | AVAILABLE CREDIT | FINANCE CHARGE | 39.33 |
| | $0.00 | $0.00 | CREDITS | .00 |
| | NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE | PAYMENTS | .00 |
| | | | LATE PAYMENT CHARGE | 15.00 |
| | 31 | $500.57 | NEW BALANCE | 3,697.12 |

---

### FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $3,562.79 | 1.104% | 13.250% | $39.33 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE   13.25
(this billing cycle)

PERIODIC RATES MAY VARY.

To assure proper credit please return upper portion with remittance.
See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.

PAGE 1 OF 1                See reverse side for important information

WHITNEY

**Visa BusinessCard**
**Statement of Account**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA  70161-1750

| ACCOUNT NUM. | |
|---|---|
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |
| NEW BALANCE | $1,142.79 |
| | or |
| MIN. PAYMENT | $87.00 |

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA  31902-3070

RETURN
TO:

AMOUNT
ENCLOSED  $

STEVEN BARRON                    N02174
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFER TO SPECIAL CREDITS
MONTGOMERY AL   36121-0445

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number
changes made on the reverse side

4802390000225927000008700001142795

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Detach here          To assure proper credit please return upper portion with remittance

## STATEMENT MESSAGES

Your account is past due $84.00. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE "FINANCE CHARGE" | 11.98 |

| | **ACCOUNT NUMBER** | | **ACCOUNT SUMMARY** | |
|---|---|---|---|---|
| CUSTOMER SERVICE CALL | | | | |
| New Orleans, LA    (504) 849-6700 | | | PREVIOUS BALANCE | 1,115.81 |
| Toll Free    (800) 326-3501 | STATEMENT DATE | PAYMENT DUE DATE | NEW PURCHASES & OTHER CHARGES | 0.00 |
| | 05/28/07 | 06/22/07 | NEW CASH ADVANCES | .00 |
| SEND BILLING INQUIRIES TO: | CREDIT LIMIT | AVAILABLE CREDIT | FINANCE CHARGE | 11.98 |
| CREDIT CARD CENTER | $0.00 | $0.00 | CREDITS | .00 |
| PO BOX 61750 | NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE | PAYMENTS | .00 |
| NEW ORLEANS, LA  70161-1750 | | | LATE PAYMENT CHARGE | 15.00 |
| | 31 | $87.00 | NEW BALANCE | 1,142.79 |

### FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $1,085.81 | 1.104% | 13.260% | $11.98 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE   13.25
(this billing cycle)

PERIODIC RATES MAY VARY.

To assure proper credit please return upper portion with remittance.
See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.



**WHITNEY**

*Visa BusinessCard*
*Statement of Account*

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

| | |
|---|---|
| ACCOUNT NUM. | ▓▓▓▓▓ |
| PAYMENT DUE DATE | 06-22-07 |
| AMOUNT DUE | |

CREDIT CARD CENTER
P.O. BOX 23070          RETURN
COLUMBUS, GA 31902-3070   TO:

| | | |
|---|---|---|
| NEW BALANCE | | $2,885.06 |
| | *or* | |
| MIN. PAYMENT | | $217.00 |

AMOUNT
ENCLOSED $

LARRY PEACOCK                  N021/3
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFER TO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number
changes made on the reverse side

4802390000240942000021700002885064

REDACTED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Detach here                    To assure proper credit please return upper portion with remittance

---

### STATEMENT MESSAGES

Your account is past due $159.00. Past due amount is included in the minimum payment. Please remit immediately.

### TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE *FINANCE CHARGE* | 31.01 |

---

**CUSTOMER SERVICE CALL**

New Orleans, LA    (504) 849-6700
Toll Free          (800) 326-3501

**SEND BILLING INQUIRIES TO:**

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

| ACCOUNT NUMBER | |
|---|---|
| ▓▓▓▓▓ | |

| STATEMENT DATE | PAYMENT DUE DATE |
|---|---|
| 05/28/07 | 06/22/07 |

| CREDIT LIMIT | AVAILABLE CREDIT |
|---|---|
| $0.00 | $0.00 |

| NUMBER OF DAYS IN BILLING CYCLE | MINIMUM PAYMENT DUE |
|---|---|
| 31 | $217.00 |

**ACCOUNT SUMMARY**

| | |
|---|---|
| PREVIOUS BALANCE | 2,839.05 |
| NEW PURCHASES & OTHER CHARGES | 0.00 |
| NEW CASH ADVANCES | .00 |
| FINANCE CHARGE | 31.01 |
| CREDITS | .00 |
| PAYMENTS | .00 |
| LATE PAYMENT CHARGE | 15.00 |
| NEW BALANCE | 2,885.06 |

---

### FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $2,809.05 | 1.104% | 13.250% | $31.01 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE  13.25
(this billing cycle)

*PERIODIC RATES MAY VARY.*

To assure proper credit please return upper portion with remittance.
See reverse side for important information.

**Grace Period: To avoid an additional Finance Charge on Purchases pay
entire New Balance by Payment Due Date. Finance Charge accrues on Cash
Advances daily until paid and will be billed in your next Statement.**

# WHITNEY

**Visa BusinessCard**
**Statement of Account**

WHITNEY NATIONAL BANK
PO BOX 61750
NEW ORLEANS LA 70161-1750

| | |
|---|---|
| **ACCOUNT NUM.** | |
| **PAYMENT DUE DATE** | 06-22-07 |
| **AMOUNT DUE** | |
| **NEW BALANCE** | $4,561.89 |
| | or |
| **MIN. PAYMENT** | $358.00 |
| **AMOUNT ENCLOSED $** | |

CREDIT CARD CENTER
P.O. BOX 23070
COLUMBUS, GA 31902-3070

RETURN TO:

Please make check Payable to
Whitney Bank
☐ Check here for an address or phone number changes made on the reverse side

ROBERT A NALE                          N02172
HIGHWAY SOLUTIONS LLC
PO BOX 210445
**REFER TO SPECIAL CREDITS
MONTGOMERY AL  36121-0445

4802390000245073000035800000456189 3

-------------------------------------------------------------------------------
Detach here                  To assure proper credit please return upper portion with remittance

## STATEMENT MESSAGES

Your account is past due $267.00. Past due amount is included in the minimum payment. Please remit immediately.

## TRANSACTION DETAIL

| Post Date | Tran Date | Reference Number | MCC | Transaction Description | Amount |
|---|---|---|---|---|---|
| 05-07 | 05-07 | | 0000 | LATE PAYMENT CHARGE | 15.00 |
| 05-28 | 05-28 | | 0000 | PURCHASE "FINANCE CHARGE" | 49.32 |

**CUSTOMER SERVICE CALL**

New Orleans, LA      (504) 849-6700
Toll Free            (800) 326-3501

**SEND BILLING INQUIRIES TO:**

CREDIT CARD CENTER
PO BOX 61750
NEW ORLEANS, LA 70161-1750

| ACCOUNT NUMBER | | |
|---|---|---|
| **STATEMENT DATE** | **PAYMENT DUE DATE** | |
| 05/28/07 | 06/22/07 | |
| **CREDIT LIMIT** | **AVAILABLE CREDIT** | |
| $0.00 | $0.00 | |
| **NUMBER OF DAYS IN BILLING CYCLE** | **MINIMUM PAYMENT DUE** | |
| 31 | $358.00 | |

**ACCOUNT SUMMARY**

| | |
|---|---|
| PREVIOUS BALANCE | 4,497.57 |
| NEW PURCHASES & OTHER CHARGES | 0.00 |
| NEW CASH ADVANCES | .00 |
| FINANCE CHARGE | 49.32 |
| CREDITS | .00 |
| PAYMENTS | .00 |
| LATE PAYMENT CHARGE | 15.00 |
| **NEW BALANCE** | 4,561.89 |

## FINANCE CHARGE SUMMARY

| | AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | CORRESPONDING ANNUAL PERCENTAGE RATE | PERIODIC FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $4,467.57 | 1.104% | 13.250% | $49.32 |
| CASH ADVANCES | $.00 | 1.104% | 13.250% | $.00 |

ANNUAL PERCENTAGE RATE   13.25
(this billing cycle)

*PERIODIC RATES MAY VARY.*

To assure proper credit please return upper portion with remittance.
See reverse side for important information.

Grace Period: To avoid an additional Finance Charge on Purchases pay entire New Balance by Payment Due Date. Finance Charge accrues on Cash Advances daily until paid and will be billed in your next Statement.

PAGE 1 OF 1                                    See reverse side for important information

# EXHIBIT "8"

ITNEY

$ECC

REDACTED

## PROMISSORY NOTE

1848

| Borrower: | ...Y SOLUTIONS, LLC (TIN: ) | Lender: | Whitney National Bank |
|---|---|---|---|
| | P.O. BOX 210448 | | Mobile Business / Commercial Lending - Carmichael |
| | MONTGOMERY, AL 36121 | | P. O. Box 230714 |
| | | | Montgomery, AL 36123-0714 |

| Principal Amount: $29,955.72 | Initial Rate: 5.250% | Date of Note: January 24, 2005 |
|---|---|---|

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, LLC ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Twenty-nine Thousand Nine Hundred Fifty-five & 72/100 Dollars ($29,955.72), together with interest on the unpaid principal balance from January 24, 2005, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 59 payments of $569.71 each payment and an irregular last payment estimated at $569.50. Borrower's first payment is due February 24, 2005, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on January 24, 2010, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any late collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the Index, resulting in an initial rate of 5.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

## PROMISSORY NOTE
### (Continued)

Page 2

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a pledge and/or security agreement of even date.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accomodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**THIS NOTE IS GIVEN UNDER SEAL, AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**HIGHWAY SOLUTIONS, LLC**

By: _____(Seal)
ANNE S. MARCATO, Manager of HIGHWAY
SOLUTIONS, LLC


# WHITNEY

## COMMERCIAL SECURITY AGREEMENT

| Grantor: | HIGHWAY SOLUTIONS, LLC (TIN: ~~████████~~)<br>P.O. BOX 210445<br>MONTGOMERY, AL 36121 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|

THIS COMMERCIAL SECURITY AGREEMENT dated January 24, 2005, is made and executed between HIGHWAY SOLUTIONS, LLC ("Grantor") and Whitney National Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

The following Gobal Positioning Survey Software and Equipment:

One (1) 5800 GPS w/900 mhz Radio, Product No.: 50900-00, Serial No.: 444213950; One (1)    GPS 900 mhz Base Radio site nite, Product No.: 34411-25, Serial No.: 0220351278; One (1) GPS Base Station M5750, Product No.: 38860-00, Serial No.: 220353297 with GPS Ant. 13" (ground), Product No.: ANT13"GPS, Serial No.: 0220350504; One (1) Rod Set, Product No.: 43169-00; One (1) Controller (Blue Tooth); Product No.: ACU571225500, Serial No.: 83211274

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law.  In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in the Collateral unless and until such a notice is given.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2)  all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and  (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent.  Grantor, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.**  Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral.  Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender.  This includes security interests even if junior in right to the security interests granted under this Agreement.  Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition.  Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.**  Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement.  No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented.  Grantor shall defend Lender's

[vertical watermark text in right margin]

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized In Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower has an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of collateral shall have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**FINANCING STATEMENTS. RATIFICATION OF PREFILING.** Grantor hereby ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any financing statements or amendments thereto if filed prior to the date hereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Page 4

**State of Alabama.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, LLC and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means any amounts Grantor and/or Borrower, or any one of them, owe to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, LLC in the principal amount of $29,955.72 dated January 24, 2005, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 24, 2005.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

COMI.  RCIAL SECURITY AGREEMENT
(Continued)

Page 5

GRANTOR:

HIGHWAY SOLUTIONS, LLC

By: _____ (Seal)
ANNE  S.  MARCATO,  Manager  of  HIGHWAY
LENSEEUTIONS, LLC

WHITNEY NATIONAL BANK

X _____
Authorized Signer

LASER PRO Lending, Ver. 5.25.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2006  All Rights Reserved.  - AL  y:\CF\LPL\E40.FC  TR-65127  PR-130

# EXHIBIT "9"

*HL*

 **WHITNEY**

REDACTED

**PROMISSORY NOTE**

*RC# 849*      1848      003

| Borrower: | HIGHWAY SOLUTIONS, LLC (TIN: ▮▮▮▮▮▮)<br>P.O. BOX 210445<br>MONTGOMERY, AL 36121 | Lender: | Whitney National Bank<br>Moblle Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
| --- | --- | --- | --- |

---

| **Principal Amount: $42,949.76** | **Initial Rate: 5.500%** | **Date of Note: February 7, 2005** |
| --- | --- | --- |

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, LLC ("Borrower") promises to pay Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty-two Thousand Nine Hundred Forty-nine & 76/100 Dollars ($42,949.76), together with interest on the unpaid principal balance from February 7, 2005, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 59 payments of $821.76 each payment and an irregular last payment estimated at $821.84. Borrower's first payment is due March 7, 2005, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on February 7, 2010, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.500% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the Index, resulting in an initial rate of 5.500% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT," the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**PROMISSORY NOTE**
(Continued)

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a pledge and/or security agreement of even date.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes; indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**EFFECTIVE INITIAL RATE OF INTEREST ON THIS NOTE.** Borrower acknowledges that the interest rate on this Note is subject to increases and decreases from time to time based on changes in the Index. Borrower further acknowledges that this Note has been prepared for a future date (the "Date of Note" as indicated on the front of this Note), and, that the Initial Rate and value of the Index effective on the actual Date of Note may differ from the Index and Initial Rate that are shown in this Note due to changes in the Index that have occurred since this Note was prepared. Consequently, Borrower agrees that the Initial Rate on this Note shall not be as reflected on the face hereof, but shall be determined by the value of the Index effective on the actual "Date of Note".

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**HIGHWAY SOLUTIONS, LLC**

By: _____(Seal)
ANNE S. MARCATO, Manager of HIGHWAY
SOLUTIONS, LLC



# WHITNEY

## COMMERCIAL SECURITY AGREEMENT

REDACTED

| Grantor: | HIGHWAY SOLUTIONS, LLC (TIN: ▓▓▓▓▓)<br>P.O. BOX 210445<br>MONTGOMERY, AL 36121 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|



**THIS COMMERCIAL SECURITY AGREEMENT** dated February 7, 2005, is made and executed between HIGHWAY SOLUTIONS, LLC ("Grantor") and Whitney National Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

> One (1) Universal Forestry Mulcher, S/N 0355-CE2004 with Guard Frame UMM/S/T1-225, and pair of extension shafts cpl motor REXROTH A2FM125

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

> (A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

> (B) All products and produce of any of the property described in this Collateral section.

> (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

> (D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

> (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Collateral unless and until such a notice is given.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will: (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into an authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower have an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of collateral shall have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**FINANCING STATEMENTS. RATIFICATION OF PREFILING.** Grantor hereby ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any financing statements or amendments thereto if filed prior to the date hereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, LLC and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means any amounts Grantor and/or Borrower, or any one of them, owe to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, LLC in the principal amount of $42,949.76 dated February 7, 2005, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED FEBRUARY 7, 2005.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**GRANTOR:**

**HIGHWAY SOLUTIONS, LLC**

By: _____ (Seal)
ANNE S. MARCATO, Manager of HIGHWAY
SOLUTIONS, LLC

## COMmERCIAL SECURITY AGREEMEN
### (Continued)

Page 5

**LENDER:**

**WHITNEY NATIONAL BANK**

X _____ V.P.
**Authorized Signer**

LASER PRO Lending, Ver. 5.25.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2006   All Rights Reserved.   - AL g:\CFI\LPL\E40.FC TR-525112 PR-192

# EXHIBIT "10"


**WHITNEY**

REDACTED

BK 20 PG 849

## PROMISSORY NOTE
1848 004

| Borrower: | HIGHWAY SOLUTIONS, L.L.C. (TIN: ~~█████████~~)<br>P.O. BOX 210446<br>MONTGOMERY, AL 36121 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|

---

| Principal Amount: $53,089.12 | Interest Rate: 6.750% | Date of Note: August 22, 2005 |
|---|---|---|

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifty-three Thousand Eighty-nine & 12/100 Dollars ($53,089.12), together with interest at the rate of 6.750% per annum on the unpaid principal balance from August 22, 2005, until paid in full.

**PAYMENT.** Borrower will pay this loan in 59 payments of $1,047.43 each payment and an irregular last payment estimated at $1,047.69. Borrower's first payment is due September 22, 2005, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 22, 2010, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charge; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a pledge and/or security agreement of even date. Rights and obligations with respect to the collateral are stated in the security documents.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses

## PROMISSORY NOTE
### (Continued)

and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accomodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

HIGHWAY SOLUTIONS, L.L.C.

By: _Anne S. Marcato_ (Seal)
ANNE S. MARCATO, Manager of HIGHWAY SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 6.26.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - AL p:\CFI\LPL\D20.FC TR-69824 PR-102

 

**WHITNEY**

# COMMERCIAL SECURITY AGREEMENT

| Grantor: | HIGHWAY SOLUTIONS, L.L.C. (TIN:  | Lender: | Whitney National Bank |
| --- | --- | --- | --- |
| | P.O. BOX 210445 | | Mobile Business / Commercial Lending - Carmichael |
| | MONTGOMERY, AL 36121 | | P. O. Box 230714 |
| | | | Montgomery, AL 36123-0714 |

**THIS COMMERCIAL SECURITY AGREEMENT** dated August 22, 2005, is made and executed between HIGHWAY SOLUTIONS, L.L.C. ("Grantor") and Whitney National Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

Purchase Money Security interest in one (1) Trimble GCS900 GPS w/automatics Serial Number 2501521, with all attachments

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Collateral unless and until such a notice is given.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.**  Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral.  Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.**  Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.**  The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.**  To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.**  Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.**  Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Alabama, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions involving Collateral.**  Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.**  Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's Interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the Insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value of the Collateral and the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower has an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of collateral shall have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**FINANCING STATEMENTS. RATIFICATION OF PREFILING.** Grantor hereby ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any financing statements or amendments thereto if filed prior to the date hereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, L.L.C. and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, L.L.C..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means all amounts Grantor and/or Borrower, or any one of them, owe to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, L.L.C. in the principal amount of $53,089.12 dated August 22, 2005, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED AUGUST 22, 2005.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**GRANTOR:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____ (Seal)
ANNE S. MARCATO, Manager of HIGHWAY
SOLUTIONS, L.L.C.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 5

**LENDER:**

**WHITNEY NATIONAL BANK**

X _Mark R Hope_
  **Authorized Signer**

LASER PRO Lending, Ver. 5.25.00.006  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - AL s:\CFI\LPL\E40.FC  TR-82021  PR-98

# EXHIBIT "11"



**WHITNEY**

RC 849     **PROMISSORY NOTE**   1848   005

| | |
|---|---|
| **Borrower:** HIGHWAY SOLUTIONS, L.L.C. (TIN: ~~~~~~~) <br> P.O. Box 210445 <br> MONTGOMERY, AL 36121 | **Lender:** Whitney National Bank <br> Mobile Business / Commercial Lending - Carmichael <br> P. O. Box 230714 <br> Montgomery, AL 36123-0714 |

---

| Principal Amount: $50,956.82 | Interest Rate: 7.250% | Date of Note: October 18, 2005 |
|---|---|---|

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifty Thousand Nine Hundred Fifty-six & 82/100 Dollars ($50,956.82), together with interest at the rate of 7.250% per annum on the unpaid principal balance from October 18, 2005, until paid in full.

**PAYMENT.** Borrower will pay this loan in 59 payments of $1,017.55 each payment and an irregular last payment estimated at $1,017.55. Borrower's first payment is due November 18, 2005, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on October 18, 2010, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9768, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a pledge and/or security agreement of even date.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect

**PROMISSORY NOTE**
**(Continued)**

Page 2

absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments/negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____(Seal)
ANNE   MARCATO,   Manager   of   HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 5.26.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  - AL  p:\CFI\PL\D20.FC  TR-50261  PR-142

# WHITNEY

REDACTED

## COMMERCIAL SECURITY AGREEMENT

| Grantor: | HIGHWAY SOLUTIONS, L.L.C. (TIN: ▊▊▊▊▊) | Lender: | Whitney National Bank |
|---|---|---|---|
| | P.O. BOX 210446 | | Mobile Business / Commercial Lending - Carmichael |
| | MONTGOMERY, AL 36121 | | P. O. Box 230714 |
| | | | Montgomery, AL 36123-0714 |

**THIS COMMERCIAL SECURITY AGREEMENT** dated October 16, 2005, is made and executed between HIGHWAY SOLUTIONS, L.L.C. ("Grantor") and Whitney National Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

Purchase Money Security Interest in One (1) GPS Machine Cab Kit Dual Antenn Serial No: 36136 ID No: 2501914; One (1) Kit, Sitevision Excavator 20-30; One (1) SN900 Machine Radio Kit

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Collateral unless and until such a notice is given.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does nor prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Alabama, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 3

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower has an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of Collateral shall have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**FINANCING STATEMENTS. RATIFICATION OF PREFILING.** Grantor hereby ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any financing statements or amendments thereto if filed prior to the date hereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the

## C. _MMERCIAL SECURITY AGREEM__T
### (Continued)

**State of Alabama.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, L.L.C. and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, L.L.C..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means any amounts Grantor and/or Borrower, or any one of them, owes to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, L.L.C. in the principal amount of $50,956.82 dated October 18, 2005, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED OCTOBER 18, 2005.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 5

**GRANTOR:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____ (Seal)
　　**ANNE MARCATO, Manager of HIGHWAY**
**LENSSBUTIONS, L.L.C.**

**WHITNEY NATIONAL BANK**

X _____
**Authorized Signer**

LASER PRO Lending, Ver. 5.35.00.006  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - AL  j:\CFI\LPL\E40.FC  TR-26251  PR-16E

# EXHIBIT "12"

**WHITNEY**

Rc o4/f

**PROMISSORY NOTE** *1848 : 00.6*

| Borrower: | HIGHWAY SOLUTIONS, L.L.C. (TIN: ▬▬▬) <br> P.O. BOX 210445 <br> MONTGOMERY, AL 36121 | Lender: | Whitney National Bank <br> Mobile Business / Commercial Lending - Carmichael <br> P. O. Box 230714 <br> Montgomery, AL 36123-0714 |
|---|---|---|---|

---

**Principal Amount: $55,750.42**      **Interest Rate: 7.250%**      **Date of Note: October 18, 2005**

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifty-five Thousand Seven Hundred Fifty & 42/100 Dollars ($55,750.42), together with interest at the rate of 7.250% per annum on the unpaid principal balance from October 18, 2005, until paid in full.

**PAYMENT.** Borrower will pay this loan in 59 payments of $1,113.27 each payment and an irregular last payment estimated at $1,113.47. Borrower's first payment is due November 18, 2005, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on October 18, 2010, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   **Payment Default.** Borrower fails to make any payment when due under this Note.

   **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

   **Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

   **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   **Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

   **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

   **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

   **Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

   **Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.**

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a pledge and/or security agreement of even date.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further additional security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect,

**PROMISSORY NOTE**
(Continued)

absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender, a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an Interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accomodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

HIGHWAY SOLUTIONS, L.L.C.

By: _____ (Seal)
ANNE   MARCATO,   Manager   of   HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 5.25.00.04 Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - AL  a:\CPR\PLG00.FC VR-0203  PR-154



# WHITNEY

## COMMERCIAL SECURITY AGREEMENT

| Grantor: | HIGHWAY SOLUTIONS, L.L.C. (TIN: ▓▓▓▓▓▓▓▓) <br> P.O. BOX 210445 <br> MONTGOMERY, AL 36121 | Lender: | Whitney National Bank <br> Mobile Business / Commercial Lending - Carmichael <br> P. O. Box 230714 <br> Montgomery, AL 36123-0714 |
|---|---|---|---|

THIS COMMERCIAL SECURITY AGREEMENT dated October 18, 2005, is made and executed between HIGHWAY SOLUTIONS, L.L.C. ("Grantor") and Whitney National Bank ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

Purchase Money Security Interest in One (1) GPS Machine Cab Kit Dual Antenn Serial No: 220354909 ID No: 2501522; One (1) Kit, Sitevision MG Inst Auto Gen; One (1) SNR900 Radio; One (1) SV Auto Kit Sitevision Auto Control; One (1) 0365-7075 Electric Mechanical Kit; One (1) 0365-8831 Hydraulic Kit; One (1) 0794-1960 Side Shift Option

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Collateral unless and until such a notice is given.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

Location of the Collateral. Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

Removal of the Collateral. Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Alabama, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Transactions Involving Collateral. Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

Title. Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other taxes and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request of as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's

or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower has an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of collateral have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**FINANCING STATEMENTS. RATIFICATION OF PREFILING.** Grantor hereby ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any financing statements or amendments thereto if filed prior to the date hereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law,

## CO    'IERCIAL SECURITY AGREEMEN
### (Continued)

the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, L.L.C. and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, L.L.C..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means any amounts Grantor and/or Borrower, or any one of them, owe to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, L.L.C. in the principal amount of $55,750.42 dated October 18, 2005, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED OCTOBER 18, 2005.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

COMMERCIAL SECURITY AGREEMENT
(Continued)

Page 5

**GRANTOR:**

HIGHWAY SOLUTIONS, L.L.C.

By: _Anne S. Marcato_ (Seal)
    **ANNE   MARCATO,   Manager   of   HIGHWAY**
LENDSOLUTIONS, L.L.C.

WHITNEY NATIONAL BANK

X _Mark R. Hoxe_
  **Authorized Signer**

LASER PRO Lending, Ver. 5.25.00.008  Copr. Harland Financial Solutions, Inc. 1997, 2001.  All Rights Reserved.  - AL y:\CPFL\PL\E40.FC  TR-94305  PR-162

# EXHIBIT "13"

# WHITNEY

$CC$

**PROMISSORY NOTE**
083467

$00 | 999$

| | |
|---|---|
| **Borrower:** HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 210445<br>MONTGOMERY, AL 36121 | **Lender:** Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |

**Principal Amount: $200,000.00**          **Initial Rate: 8.000%**          **Date of Note: June 19, 2006**

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00) or so much as may be outstanding, together with interest on the unpaid principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 30, 2006. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 8.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the index, resulting in an initial rate of 8.000% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default In Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

## PROMISSORY NOTE
### (Continued)

**COLLATERAL.** Borrower acknowledges this Note is secured by Those Commercial Security Agreements dated January 5, 2005, January 24, 2005, February 7, 2005, August 22, 2005, October 7, 2005, October 18, 2005 and October 18, 2005. Rights and obligations with respect to the collateral are stated in the security documents.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accomodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

HIGHWAY SOLUTIONS, L.L.C.

By: _Anne S. Marcato_ (Seal)
ANNE MARCATO, Manager of HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 5.30.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - AL  E:\CFI\LPL\D53.FC  TR-42143  PR-170

# WHITNEY

## CHANGE IN TERMS AGREEMENT

| Borrower: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000<br>MONTGOMERY, AL 36191 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|

**Principal Amount:** $200,000.00      **Initial Rate:** 8.250%      **Date of Agreement:** July 28, 2006

**DESCRIPTION OF EXISTING INDEBTEDNESS.** LOAN NO. ████████3467 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JUNE 19, 2006, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $200,000.00. THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $200,000.00.

**DESCRIPTION OF COLLATERAL.** IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JUNE 19, 2006, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

**DESCRIPTION OF CHANGE IN TERMS.** THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM JUNE 30, 2006 TO AUGUST 31, 2006. THE PAYMENT SCHEDULE SHALL NOW BE AS IS FULLY DESCRIBED IN THE "PAYMENT" PROVISION BELOW.

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 31, 2006. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the Index, resulting in an initial rate of 8.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9769, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement. This interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, after notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

## CHANGE IN TERMS AGREEMENT
### (Continued)

Page 2

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Those Commercial Security Agreements dated January 5, 2005, January 24, 2005, February 7, 2005, August 22, 2005, October 7, 2005, October 18, 2005 and October 18, 2005. Rights and obligations with respect to the collateral are stated in the security documents.

**LINE OF CREDIT.** This Agreement evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower (or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles now previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party for any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**CONTINUED ON NEXT PAGE**

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____ (Seal)
ANNE   MARCATO,   Manager   of   HIGHWAY
SOLUTIONS, L.L.C.



**WHITNEY**

BC#849    **CHANGE IN TERMS AGREEMENT**

RECORDED

**Borrower:** HIGHWAY SOLUTIONS, L.L.C.          **Lender:** Whitney National Bank
P.O. BOX 11000                                   Mobile Business / Commercial Lending - Carmichael
MONTGOMERY, AL 36191                             P. O. Box 230714
                                                 Montgomery, AL 36123-0714

---

**Principal Amount: $200,000.00          Initial Rate: 8.250%          Date of Agreement: September 29, 2006**

DESCRIPTION OF EXISTING INDEBTEDNESS. LOAN NO ████/83467 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JUNE 19, 2006, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $200,000.00, AS RENEWED AND MODIFIED BY THAT CHANGE IN TERMS AGREEMENT DATED JULY 28, 2006. THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $200,000.00.

DESCRIPTION OF COLLATERAL.  IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JUNE 19, 2006, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

DESCRIPTION OF CHANGE IN TERMS.  THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM AUGUST 31, 2006 TO NOVEMBER 30, 2006. THE PAYMENT SCHEDULE SHALL NOW BE AS IS FULLY DESCRIBED IN THE "PAYMENT" PROVISION BELOW.

PROMISE TO PAY. HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on November 30, 2006.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 30, 2006, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.  Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE.  The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate.  This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request.  The interest rate change will not occur more often than each day.  Borrower understands that Lender may make loans based on other rates as well.  The Index currently is 8.250% per annum.  The interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the Index, resulting in an initial rate of 8.250% per annum.  NOTICE: Under no circumstances will the interest rate on the Note be more than the maximum rate allowed by applicable law.

PREPAYMENT. Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

LATE CHARGE.  If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

INTEREST AFTER DEFAULT.  Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement.  The interest rate will not exceed the maximum rate permitted by applicable law.

DEFAULT.  Each of the following shall constitute an Event of Default under this Agreement:

   Payment Default.  Borrower fails to make any payment when due under the indebtedness.

   Other Defaults.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

   Default in Favor of Third Parties.  Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

   False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   Death or Insolvency.  The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

   Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

   Events Affecting Guarantor.  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the indebtedness evidenced by this Note.

   Adverse Change.  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the indebtedness is impaired.

   Insecurity.  Lender in good faith believes itself insecure.

LENDER'S RIGHTS.  Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount.  Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES.  Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not

there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Those Commercial Security Agreements dated January 5, 2005, January 24, 2005, February 7, 2005, August 22, 2005, October 7, 2005, October 18, 2005 and October 28, 2005. Rights and obligations with respect to the collateral are stated in the security documents.

**LINE OF CREDIT.** This Agreement evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further additional security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

CONTINUED ON NEXT PAGE

CHANGE IN TERMS AGREEMEN
(Continued)

Page 3

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

HIGHWAY SOLUTIONS, L.L.C.

By: _____ (Seal)
ANNE   MARCATO,   Manager   of   HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 6.00.90.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - AL  s:\CFI\LPL\D20C.FC  TR-16182  PR-179



**WHITNEY**

Rc# 849

## CHANGE IN TERMS AGREEMENT
83467    001/999

| Borrower: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000<br>MONTGOMERY, AL 36191 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|

---

**Principal Amount: $200,000.00     Initial Rate: 8.250%     Date of Agreement: December 22, 2006**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** LOAN NO.█████/83467 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JUNE 19, 2006, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $200,000.00, AS RENEWED AND MODIFIED BY THAT CHANGE IN TERMS AGREEMENT DATED JULY 28, 2006 AND SEPTEMBER 29, 2006. THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $200,000.00.

**DESCRIPTION OF COLLATERAL.** IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JUNE 19, 2006, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

**DESCRIPTION OF CHANGE IN TERMS.** THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM NOVEMBER 30, 2006 TO JANUARY 31, 2007. THE PAYMENT SCHEDULE SHALL NOW BE AS IS FULLY DESCRIBED IN THE "PAYMENT" PROVISION BELOW.

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on January 31, 2007. In addition, Borrower will pay regular monthly payments of all accrued interest due as of each payment date, beginning January 22, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the index, resulting in an initial rate of 8.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 6789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not

there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Those Commercial Security Agreements dated January 5, 2005, January 24, 2005, February 7, 2005, August 22, 2005, October 7, 2005, October 18, 2005 and October 18, 2005. Rights and obligations with respect to the collateral are stated in the security documents.

**LINE OF CREDIT.** This Agreement evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accomodation party (or any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

CONTINUED ON NEXT PAGE

## HANGE IN TERMS AGREEMEN
### (Continued)

Page 3

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

HIGHWAY SOLUTIONS, L.L.C.

By: _____ (Seal)
    ANNE   MARCATO,   Manager   of   HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 6.26.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  - AL  p:\CFI\LPL\D20C.FC  TR-01427  PR-178

**WHITNEY**

$\mathcal{EC}$

$RC\#849$

# CHANGE IN TERMS AGREEMENT

83467    001 | 999

| Borrower: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000 ~ 210995<br>MONTGOMERY, AL 36191<br>36121 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |

---

**Principal Amount: $200,000.00**          **Initial Rate: 8.250%**          **Date of Agreement: January 31, 2007**

DESCRIPTION OF EXISTING INDEBTEDNESS. LOAN NO. ●●●●●/83467 REPRESENTED IN PART BY THAT PROMISSORY NOTE DATED JUNE 19, 2006, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF $200,000.00, AS RENEWED AND MODIFIED BY THOSE CHANGE IN TERMS AGREEMENTS DATED JULY 28, 2006', SEPTEMBER 29, 2006 AND DECEMBER 22, 2006.' THE OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF IS $200,000.00.

DESCRIPTION OF COLLATERAL. IT IS THE INTENTION OF THE PARTIES HERETO THAT THIS AGREEMENT, AS A RENEWAL AND MODIFICATION OF THAT PROMISSORY NOTE DATED JUNE 19, 2006, BE SECURED BY THAT COLLATERAL AS MORE FULLY DESCRIBED BELOW.

DESCRIPTION OF CHANGE IN TERMS. THIS AGREEMENT HEREBY EXTENDS THE DATE FOR WHICH ALL PRINCIPAL AND ACCRUED INTEREST NOT YET PAID WILL BE DUE AND PAYABLE TO LENDER IN FULL FROM JANUARY 31, 2007 TO MARCH 1, 2007. THE PAYMENT SCHEDULE SHALL NOW BE AS IS FULLY DESCRIBED IN THE "PAYMENT" PROVISION BELOW. ADDITIONALLY THIS AGREEMENT CHANGES THE LOAN, FROM A DRAW DOWN LINE OF CREDIT TO A SINGLE PAY LOAN.

PROMISE TO PAY. HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00), together with interest on the unpaid principal balance from January 31, 2007, until paid in full.

PAYMENT. Borrower will pay this loan in one principal payment of $200,000.00 plus interest on March 1, 2007, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the J. P. Morgan Chase Prime rate. This rate, as the prime lending rate of J. P. Morgan Chase, may change from time to time, with the rate of interest on this Note to change when and as said prime lending rate changes (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The Interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance of the Note will be at a rate equal to the index, resulting in an initial rate of 8.250% per annum. NOTICE: Under no circumstances will the interest rate on the Note be more than the maximum rate allowed by applicable law.

PREPAYMENT. Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will bear interest from the date of acceleration or maturity at the variable interest rate on this Agreement. The interest rate will not exceed the maximum rate permitted by applicable law.

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement:

Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Agreement and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or

## CHANGE IN TERMS AGREEMENT
### (Continued)

injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Those Commercial Security Agreements dated January 5, 2005, January 24, 2005, February 7, 2005, August 22, 2005, October 7, 2005, October 18, 2005 and October 18, 2005. Rights and obligations with respect to the collateral are stated in the security documents.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accomodation party (or any one of them) on this Note.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

HIGHWAY SOLUTIONS, L.L.C.

By: _____ (Seal)
ANNE    MARCATO,    Manager    of    HIGHWAY
SOLUTIONS, L.L.C.

# EXHIBIT "14"

AL



**WHITNEY**

RC# 849

$ELC$
$by gu$

**PROMISSORY NOTE**

3498          000

REDACTED

| **Borrower:** | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000<br>MONTGOMERY, AL 36191 | **Lender:** | **Whitney National Bank**<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 38123-0714 |
|---|---|---|---|

---

**Principal Amount: $97,702.00          Interest Rate: 8.500%          Date of Note: September 8, 2006**

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank, or order, in lawful money of the United States of America, the principal amount of Ninety-seven Thousand Seven Hundred Two & 00/100 Dollars ($97,702.00), together with interest at the rate of 8.500% per annum on the unpaid principal balance from September 8, 2006, until paid in full.

**PAYMENT.** Borrower will pay this loan in 59 payments of $2,009.70 each payment and an irregular last payment estimated at $2,009.76. Borrower's first payment is due October 7, 2006, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 7, 2011, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a pledge and/or security agreement of even date. Rights and obligations with respect to the collateral are stated in the security documents.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses

**PROMISSORY NOTE**
(Continued)

Page 2

and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, accounts, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____ (Seal)
ANNE S. MARCATO, Manager of HIGHWAY
SOLUTIONS, L.L.C.

LASER PRO Lending, Ver. 5.40.40.004 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - AL p:\CFI\LPL\D20.FC TR-44064 PR-342

# WHITNEY

## COMMERCIAL SECURITY AGREEMENT

| Grantor: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000<br>MONTGOMERY, AL  36191 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL  36123-0714 |
|---|---|---|---|

THIS COMMERCIAL SECURITY AGREEMENT dated September 8, 2006, is made and executed between HIGHWAY SOLUTIONS, L.L.C. ("Grantor") and Whitney National Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

>   2004 VOLVO EXCAVATOR C# EC210BLC CRAWLER EXCAVATOR SERIAL  #210B13676, 2005 MISC EQUIPMENT THMBEC210 B- 24X58 EXTREME DUTY MANUAL THUMB: SN:2123605, 2005 ESCO BKTEC210 EXCAVATOR BUCKET S/N: E3510

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

>   (A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

>   (B) All products and produce of any of the property described in this Collateral section.

>   (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

>   (D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

>   (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

>   **Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

>   **Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

>   **No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

>   **Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

>   **Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

>   **Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

>   **Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

>   **Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

>   **Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default In Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 3

collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower has an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian or accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of collateral shall have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**FINANCING STATEMENTS. RATIFICATION OF PREFILING.** Grantor hereby ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any financing statements or amendments thereto if filed prior to the date hereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights-or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, L.L.C. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, L.L.C..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means any amounts Grantor and/or Borrower, or any one of them, owe to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, L.L.C. in the principal amount of $97,702.00 dated September 8, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED SEPTEMBER 8, 2006.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**GRANTOR:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____ (Seal)
    ANNE S. MARCATO, Manager of HIGHWAY
    SOLUTIONS, L.L.C.

COMMERCIAL SECURITY AGREEMENT
(Continued)

Page 5

LENDER:

**WHITNEY NATIONAL BANK**

X _____
   Authorized Signer

LASER PRO Lending, Ver. 5.28.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - AL g\CFI\PL\E50.FC TR-44904 PR-192

# EXHIBIT "15"



**WHITNEY**

RC# 849

**PROMISSORY NOTE** 3499 37JU 000

| Borrower: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000<br>MONTGOMERY, AL 36191 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Landing - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |
|---|---|---|---|

---

**Principal Amount: $64,676.00**          **Interest Rate: 8.500%**          **Date of Note: September 8, 2006**

**PROMISE TO PAY.** HIGHWAY SOLUTIONS, L.L.C. ("Borrower") promises to pay to Whitney National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Sixty-four Thousand Six Hundred Seventy-six & 00/100 Dollars ($64,676.00), together with interest at the rate of 8.500% per annum on the unpaid principal balance from September 8, 2006, until paid in full.

**PAYMENT.** Borrower will pay this loan in 59 payments of $1,330.37 each payment and an irregular last payment estimated at $1,330.06. Borrower's first payment is due October 7, 2006, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 7, 2011, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WHITNEY NATIONAL BANK, MANAGER, SPECIAL CREDITS, EASTERN DIVISION, P. O. BOX 9789, MOBILE, AL 36691.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges that this Note is secured by a pledge and/or security agreement of even date. Rights and obligations with respect to the collateral are stated in the security documents.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses

## PROMISSORY NOTE
### (Continued)

and attorneys' fees, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously Iisted, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accomodation party (or any one of them) on this Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

HIGHWAY SOLUTIONS, L.L.C.

By: _____ (Seal)
ANNE S. MARCATO, Manager of HIGHWAY SOLUTIONS, L.L.C.



## COMMERCIAL SECURITY AGREEMENT

| Grantor: | HIGHWAY SOLUTIONS, L.L.C.<br>P.O. BOX 11000<br>MONTGOMERY, AL 36191 | Lender: | Whitney National Bank<br>Mobile Business / Commercial Lending - Carmichael<br>P. O. Box 230714<br>Montgomery, AL 36123-0714 |

THIS COMMERCIAL SECURITY AGREEMENT dated September 8, 2006, is made and executed between HIGHWAY SOLUTIONS, L.L.C. ("Grantor") and Whitney National Bank ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

FINN MODEL T-330 HYDROSEEDER WITH HYDRUALIC HOSE REEL AND TRUCK SPRING MOUNTING KIT SIN 1582

1987 SOUTHWEST MOBILE SYSTEM M-945 TRUCK 5- TON 6X6 (VIN C545-00367)

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

Location of the Collateral. Grantor, except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

Removal of the Collateral. Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Alabama, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Transactions Involving Collateral. Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

Title. Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

Repairs and Maintenance. Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If any lien is contested, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this

COMMERCIAL SECURITY AGREEMENT
(Continued)

Page 3

Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL MEANING OF THE WORD COLLATERAL.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the word "Collateral" shall include, in addition to and without limiting the definition ascribed to the word "Collateral" herein, all property of Grantor and/or Borrower of every nature or kind whatsoever owned by Grantor and/or Borrower or in which Grantor and/or Borrower has an interest, that is now or hereafter on deposit with, in the possession of, under the control of, or held by Lender in definitive form, book entry form, or in safekeeping, custodian accounts or securities accounts, including, without limitation, deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, insurance policies, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, but excluding IRA, pension, and other tax-deferred accounts. All above types of collateral shall have the meaning provided in UCC Rev. Art. 9, as adopted and revised in the state that governs this Agreement.

**FINANCING STATEMENTS. RATIFICATION OF PREFILING.** Grantor hereby ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any financing statements or amendments thereto if filed prior to the date hereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means HIGHWAY SOLUTIONS, L.L.C. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means HIGHWAY SOLUTIONS, L.L.C..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means any amounts Grantor and/or Borrower, or any one of them, owe to Lender, whether owed now or later, under the Note, this Agreement, the Related Documents, the Cross-Collateralization provision above, and/or otherwise, including all principal, interest, costs, expenses, fees, including attorneys' fees, and all other charges for which Grantor and/or Borrower, or any one of them, are responsible thereunder. The word "Indebtedness" shall include, without limitation, all obligations of Grantor and/or Borrower, or any one of them, to Lender on promissory notes, checks, overdrafts, letter of credit agreements, endorsements and continuing guaranties.

**Lender.** The word "Lender" means Whitney National Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by HIGHWAY SOLUTIONS, L.L.C. in the principal amount of $64,676.00 dated September 8, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED SEPTEMBER 8, 2006.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**JMMERCIAL SECURITY AGREEN T**
**(Continued)**

Page 5

**GRANTOR:**

**HIGHWAY SOLUTIONS, L.L.C.**

By: _____ (Seal)
**ANNE S. MARCATO, Manager of HIGHWAY
SOLUTIONS, L.L.C.**

**LENDER:**

**WHITNEY NATIONAL BANK**

X _____
**Authorized Signer**

LASER PRO Lending, Ver. 5.30.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - AL  p:\CFI\LPL\E40.FC  TR-44507  PR-192

# EXHIBIT "B"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| WHITNEY NATIONAL BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:07-CV-00415-ID |
| | ) |
| HIGHWAY SOLUTIONS, LLC, et al., | ) |
| | ) |
| Defendant. | ) |

**AFFIDAVIT OF GREGORY C. COOK**
**IN SUPPORT OF ATTORNEYS' FEES**

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| JEFFERSON COUNTY | ) |

Gregory C. Cook, being duly sworn, deposes and says:

1.      I am a partner in the law firm of Balch & Bingham LLP ("Balch & Bingham") and an attorney for Whitney National Bank ("Whitney Bank") in the above-styled proceeding and have personal knowledge of the facts set forth in this Affidavit. I am above the age of 19 years and I make the statements contained herein based on my own personal knowledge and/or my review of the business records which are maintained by Whitney Bank and/or Balch & Bingham in the ordinary course of business. I am familiar with the circumstances giving rise to Whitney Bank's claims against Highway Solutions, LLC ("Highway Solutions").

2.      Pursuant to the promissory notes (the "Notes") attached as parts of **Exhibits 2, 6, & 8-15** to the Affidavit of Louis Dubos (the "Dubos Affidavit"), and the Visa Credit Card Applications attached as **Exhibit 7** to the Dubos Affidavit (the "Credit Card Applications") for the opening of the Visa Credit Card Accounts (the "Credit Card Accounts"), Highway Solutions

agrees to pay reasonable attorneys' fees and all other costs and expenses incurred by Whitney Bank in the enforcement of the Notes and the Credit Card Accounts.

3.      Whitney Bank has incurred legal fees in excess of $11,448.00 and costs in excess of $306.38 (the "Balch & Bingham Legal Fees and Costs") as a result of Balch & Bingham's pursuit, on behalf of Whitney Bank, of the amounts owed by Highway Solutions to Whitney Bank pursuant to, without limitation, the Notes and the Credit Card Accounts (the "Lawsuit").

4.      During the course of Balch & Bingham's representation of Whitney Bank, Balch & Bingham has performed, without limitation, the following services: review of all documents relevant to the Lawsuit; correspondence, telephone conversations and conferences with the client; discovery in the Lawsuit; correspondence and telephone conversations with counsel for Highway Solutions; and preparation and filing of the Motion for Summary Judgment and this Affidavit thereto.

5.      In my opinion, all of the Balch & Bingham Legal Fees and Costs are reasonable and necessary in order to pursue the amounts owed by Highway Solutions to Whitney Bank. The Balch & Bingham Legal Fees and Costs are also reasonable in light of the fees charged by professionals for similar services in the local legal community.

Further Affiant sayeth not.

Dated this 10th day of September, 2007.

Gregory C. Cook
Attorney for Whitney National Bank

2

STATE OF ALABAMA    )
                    )
JEFFERSON  COUNTY    )

I, the undersigned notary public in and for said county in said state, hereby certify that Gregory C. Cook, whose name as attorney for Whitney National Bank, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such attorney and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this __10__ day of September, 2007.

[NOTORIAL SEAL]

Kathyn L. Corbin
Notary Public
My Commission Expires: 6-1-2011

# EXHIBIT "C"

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| WHITNEY NATIONAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:07-CV-00415-ID |
| | ) | |
| HIGHWAY SOLUTIONS, LLC, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>AFFIDAVIT OF DENNIS R. BAILEY</u>

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| JEFFERSON COUNTY | ) |

Dennis R. Bailey, being duly sworn, deposes and says:

1.    I am a shareholder in the law firm of Rushton, Stakely, Johnston & Garrett, P.A. ("<u>RSJ&G</u>") and represented Whitney National Bank ("<u>Whitney Bank</u>") in the above-styled proceeding until July 18, 2007. I am above the age of 19 years and I make the statements contained herein based on my own personal knowledge and/or my review of the business records which are maintained by Whitney Bank and/or RSJ&G in the ordinary course of business. I am familiar with the circumstances giving rise to Whitney Bank's claims against Highway Solutions, LLC ("<u>Highway Solutions</u>").

2.    Pursuant to certain of the documents made the subject of the complaint filed on May 11, 2007 by Whitney Bank against Highway Solutions (the "<u>Complaint</u>") including, without limitation, the promissory notes and the Visa Credit Card Applications, Highway Solutions agrees to pay reasonable attorneys' fees and all other costs and expenses incurred by Whitney Bank in the enforcement of the promissory notes and the Visa Credit Cards.

928824.1

3.      Whitney Bank incurred legal fees in excess of **$10,000** and costs in excess of the amount of **$1,000** (the "RSJ&G Legal Fees and Costs") as a result of RSJ&G's pursuit, on behalf of Whitney Bank, of the amounts owed by Highway Solutions to Whitney Bank.

4.      During the course of RSJ&G's representation of Whitney Bank, RSJ&G performed, without limitation, the following services, meetings with client and opposing interests; review of the documents relevant to the above-styled proceeding; correspondence and telephone conversations with the client,; correspondence and telephone conversations with counsel for Highway Solutions; and the preparation and filing of the Complaint.

5.      In my opinion, all of the RSJ&G Legal Fees and Costs are reasonable and necessary in order to pursue the amounts owed by Highway Solutions to Whitney Bank. The RSJ&G Legal Fees and Costs are also reasonable in light of the fees charged by professionals for similar services in the local legal community.

Further affiant sayeth not.

Dated this 7th day of September, 2007.

Dennis R. Bailey

STATE OF ALABAMA )
)
MONTGOMERY COUNTY )

    I, the undersigned notary public in and for said county in said state, hereby certify that Dennis R. Bailey is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such attorney and with full authority, executed the same voluntarily for and as the act of said corporation.

    Given under my hand this 7th day of September, 2007.

[NOTORIAL SEAL]

Notary Public
My Commission Expires: 11-23-10